UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

Date: December 16, 2019
Time: 11:30am

IN RE:

Shane Christopher Buczek

Debtor.

Chapter: 13

Case No. 1-19-11441-CLB

NOTICE OF MOTION

PLEASE TAKE NOTICE that upon the annexed application of KeyBank National

Association., ("Movant"), Secured Creditor, by its attorneys, Fein Such & Crane, LLP., the

undersigned will move before the Honorable Carl L. Bucki, United States Bankruptcy Judge, at

the United States Bankruptcy Court, Western District of New York, Robert H. Jackson U.S.

Courthouse, 2 Niagara Square, Orleans Courtroom, Buffalo, NY 14202, on December 16, 2019

at 11:30 in the forenoon of that day, or as soon thereafter as counsel can be heard for:

(1) an Order modifying the automatic stay pursuant to 11 U.S.C. § 362(a), to exercise all

rights available under applicable law with respect to its interest in certain Property located at

7335 Derby Rd, Derby, NY 14047 (the "Property");

(2) Pursuant to 11 U.S.C §362(d)(4)(B), for *in rem* relief from the automatic stay

imposed in subsequent cases under 11 U.S.C § 362(a), such that any and all future filings under

the Bankruptcy Code during the next two years by the debtor herein, Shane Christopher Buczek,

(the "Debtor"), or any other person or entity with an interest in the Property shall not operate as a

stay to Movant enforcement of its rights in and to the Property;

(3)  Pursuant to 11 U.S.C. §§ 105(a), 362(d) and 1307(c) and Fed. R. Bankr. P. 4001,

Movant hereby submits this motion (the "Motion") seeking entry of an order dismissing the

above-captioned bankruptcy case of debtor, Shane Buczek ("Debtor") with a bar to re-filing, for

Debtor's bad faith or, in the alternative, granting Secured Creditor relief from the automatic stay

to complete ongoing proceedings in New York State County Court related to the foreclosure of

the property as well as commencing any other proceeding that may be required for Movant to protect itself or its interest in response to any non-judicial filings or acts initiated by the debtor; and

(4) further relief as to the Court deems just and proper.

Dated: November 27, 2019

FEIN, SUCH & CRANE, LLP
Attorneys for Movant

By: _____
David P. Case
(DC-1001)
28 EAST MAIN STREET, SUITE 1800
ROCHESTER, NY 14614
585-232-7400

To: Shane Christopher Buczek
Albert J. Mogavero.
U.S. Trustee

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

| IN RE: | Chapter: 13 |
|---|---|
| Shane Christopher Buczek | Case No. 1-19-11441-CLB |
| Debtor. | ATTORNEY AFFIRMATION |

TO THE HONORABLE CARL L. BUCKI,
UNITED STATES BANKRUPTCY JUDGE:

## APPLICATION

I, David P. Case, Esq., am a Partner with the law office of Fein Such & Crane, LLP,

Attorneys for KeyBank National Association ("Secured Creditor", "Creditor", or "Movant"). As

such, based on the information provided by Movant on the circumstances contained herein, I

affirm the following under penalty of perjury:

## I. **RELIEF REQUESTED**

1. I make this affirmation pursuant to:

(a) Federal Bankruptcy Rule of Procedure Rule 11 U.S.C. § 362(d)(1) in support of this

application modifying the automatic stay pursuant to 11 U.S.C. § 362(a), to exercise all rights

available under applicable law with respect to its interest in certain Property located 7335 Derby

Rd, Derby, NY 14047 (the "Property"), and

(b) Pursuant to 11 U.S.C §362(d)(4)(B), for *in rem* relief from the automatic stay

imposed in subsequent cases under 11 U.S.C § 362(a), such that any and all future filings under

the Bankruptcy Code during the next two years by the debtor herein, Shane Christopher Buczek,

(the "Debtor"), or any other person or entity with an interest in the Property shall not operate as a

stay to Movant enforcement of its rights in and to the Property and;

(c) Pursuant to 11 U.S.C. §§ 105(a), 362(d) and 1307(c) and Fed. R. Bankr. P. 4001, Movant hereby submits this motion (the "Motion") seeking entry of an order dismissing the above-captioned bankruptcy case of debtor, Shane Buczek ("Debtor") with a bar to re-filing, for Debtor's bad faith or, in the alternative, granting Secured Creditor relief from the automatic stay to complete ongoing proceedings in New York State County Court related to the foreclosure of the property as well as commencing any other proceeding that may be required for Movant to protect itself or its interest in response to any non-judicial filings or acts initiated by the debtor.

(d) Further relief as to the Court deems just and proper.

## II. BACKGROUND

### A. RELEVANT FORECLOSURE PROCEEDINGS IN STATE COURT.

2.       Movant is a banking corporation with an office for the transaction of business at KeyBank, N.A., 4910 Tiedeman Road, Brooklyn, OH 44144.

3.       On October 7, 2008, Deborah Buczek obtained a home equity line of credit in the amount of $50,000, which was memorialized by Deborah Buczek's execution of a Key Equity Options Agreement (the "HELOC Agreement," a copy of which is attached as Exhibit "A"). To secure repayment of the HELOC Agreement, Deborah Buczek executed a Home Equity Line of Credit Mortgage (the "Mortgage," a copy of which is attached as Exhibit "B") giving KeyBank a security interest in real property known as 7335 Derby Road, Derby, New York ("Property"). The Mortgage was (and shall remain until foreclosure sale) a second mortgage lien on the Property.

4.       Movant, the originator of the loan, continues to be the holder and owner of the aforementioned HELOC Agreement and Mortgage.

5.       Deborah Buczek failed to make payments when due and as required by the HELOC Agreement and Mortgage. As a result, in 2015, KeyBank initiated a foreclosure action

against Deborah Buczek in the Erie County Court (the "State Court") captioned *KeyBank, N.A. v. Deborah A. Buczek, et al.*, Erie County Court Index No. 2015600022 (the "<u>Foreclosure Action</u>").

6.     In response to the Complaint in the foreclosure action, Deborah Buczek moved to dismiss the foreclosure. The Erie County Court (Franczyk, J., presiding) denied the motion. Notice of Entry was served on May 11, 2016. A copy of the County Court's Decision and Order, with Notice of Entry and proof of service thereon, is annexed hereto as Exhibit "C".

7.     While the motion to dismiss was pending, on April 20, 2015, a man representing himself to be Dan Buczek, Deborah Buczek's husband, called and spoke with me on April 17, 2015. Mr. Buczek said that he and his wife were organizing a sale of the premises and that Bank of America was financing the purchase. He told me that Bank of America would not finance the loan unless they knew KeyBank was in possession of the original note and that I had to send him the original note. When I told him that I would not discuss points of law or legal arguments with a non-attorney over the phone and asked him to have the attorney representing Bank of America contact me, he became belligerent, started shouting at me, started shouting profanities at me, threatened to sue my firm, and would not allow me to speak. Despite his shouting over me, I bid him good day and hung up the phone.

8.     On August 21, 2015, a man called on this matter and spoke with a paralegal in my litigation department. He told her that we are all criminals, we were running a "huge scam", that we "will be going to hell", and he encouraged the aforementioned paralegal to get out of this job.

9.     On September 25, 2015, a man representing himself to be Mr. Buczek called our firm and spoke with one of our paralegals. Mr. Buczek initially represented himself as a lender from a bank. He ultimately admitted that he was Buczek's husband, called me and one of my partners "modern crooks" and told our paralegal that "you don't have a brain in your head" and hung up on our paralegal.

10. On October 26, 2015, I came into my office with a message that a "Mr. Seaman" called from the New York State Department of Financial Services (New York's financial regulator) on this matter. I called Mr. Seaman back. He advised me that he did not call my firm nor did he leave a message for me. He advised me that he had not touched this matter since he forwarded a complaint he received from Buczek to the Consumer Finance Protection Bureau. I asked Mr. Seaman if it was possible or likely if one of the Buczeks called my office impersonating him. Mr. Seaman did confirm that he did write them a letter in response to the complaint to the Department of Financial Services so they had his name and the call center's direct phone number. He confirmed that his file was no longer active with the Department of Financial Services.

10. On October 27, 2015, Deborah Buczek filed a Consumer Finance Protection Bureau (hereinafter CFPB) complaint against my firm. A copy of the complaint is annexed hereto as Exhibit "D".

11. Attached to the CFPB complaint was a grievance complaint to the 7th Judicial District's Attorney Grievance Committee. A copy of Buczek's complaint to the Grievance Committee is annexed hereto as Exhibit "E".

12. I responded to the CFPB complaint. Nothing further came of it. Presumably, the CFPB closed its file with no further action required. Also, nothing came from Deborah Buczek's first complaint to the Grievance Committee.

13. While the foreclosure action was pending in State Court, on August 7, 2017, Deborah Buczek executed a quitclaim deed of property (the "Deed," a certified copy of which is

attached as Exhibit "F")[1] to the Debtor for consideration of $1,000 (the "<u>Transfer</u>").[2]  See Doc. 1, 14-16.

16.      The Transfer was for little consideration.  Conveyance records from the Clerk's Office of Erie County, New York, reflect a $1,000.00 "sale" price despite the valuation of $290,000.  See, Exhibit "F".  Indeed, even Debtor recognizes the value of the Property is far in excess of $1,000 and lists the Property with the value of the as $290,000 in his schedules.  *See* Doc. 1, Schedule A/B.

15.      On May 16, 2018, the State Court issued an Order Confirming Referee Report and Judgment of Foreclosure and Sale (the "Foreclosure Judgment," copy of which is attached as Exhibit "G"). The Foreclosure Judgment said, in relevant part: (1) the Property should be sold; and (2) after paying certain other amounts, KeyBank is entitled to payment of $59,965.92 (which included interest from March 6, 2014 to January 14, 2018) together with any advances as provided for in the HELOC Agreement and Mortgage, $2,482 for costs and disbursements, and $4,950 for attorneys' fees. *Id.*

16.      Shortly after granting Judgment of Foreclosure and Sale, Deborah Buczek moved to dismiss the foreclosure action.  A copy of her second motion to dismiss, without voluminous exhibits totaling 157 pages, is annexed hereto as Exhibit "H".  KeyBank, through counsel, opposed the motion.  A copy of the Opposition, without exhibits, is annexed hereto as Exhibit "I".

17.      Contemporaneously, Shane Christopher Buczek sued two attorneys of Counsel's firm[3] in Rochester City Small Claims Court.  The small claims action was dismissed.  A copy of

---

[1] The Deed was recorded on August 14, 2017, in the Office of the Erie County Clerk at Book Type D, Book 11317, Page 2562 and assigned reference number 17140998.

[2] The Property is assigned tax parcel number 144489.206.040-2-22 in the records of Office of the Auditor of Erie County, New York. The legal metes and bounds description of the Property is incorporated within the aforesaid Deed.

the Decision and Order with Notice of Entry and proof of Service thereon is annexed hereto as Exhibit "J".

18.     In response to Deborah Buczek's motion to dismiss and a motion from Shane Christopher Buczek to join the action, the State Court rendered its decision on the record. A copy of the transcript was annexed to the Court's Order denying the motion, which is annexed hereto as Exhibit "K".

19.     The Court, *sua sponte* substituted out the Referee who quit based upon being sued and grieved by the Buczeks. A copy of the Order substituting out the first appointed Referee because he was sued and grieved by the Buczeks is annexed hereto as Exhibit "L".

## B.     PRIOR BANKRUPTCY AND ADVERSARY PROCEEDINGS

20.     Two months after the Foreclosure Judgment, but before the Property went to sale, Deborah Buczek filed a skeleton Chapter 13 Voluntary Petition in the United States Bankruptcy Court for the Western District of New York ("Bankruptcy Court") on July 20, 2018, case number 1-18-11401-CLB ("2018 Petition").[4]

21.     On August 20, 2018, Deborah Buczek filed her schedules. On her Schedule C, she listed the Property as exempt with the value of the claimed exemption as $50,000. 18-11401 Doc. 33. Similarly, she listed the Property as hers on her Schedule A. 18-11401 Doc. 33.

22.     On August 27, 2018, in Deborah Buczek's bankruptcy case, KeyBank filed a proof of claim (the "KeyBank POC," a copy of which is attached as Exhibit "M") in the amount

---

[3] Your Declarant was also advised by an Attorney from Rosicki & Rosicki & Associates, who was prosecuting the foreclosure of the first-lien mortgage at that time, that Shane Christopher Buczek sued one of their attorneys, Christine Fox, Esq., in Batavia City Small Claims Court, which was dismissed. The Court-Appointed Referee, Louis Cacciato, also advised me that Buczek sued him in small claims court one of the Town Courts near Buffalo, Buczek sent a grievance against the Referee to the Grievance Committee, and that he was going to refuse to continue the appointment because as a Court appointed Referee, he should not have to suffer such abuse and harassment.

[4] Citations to the docket of Deborah Buczek's bankruptcy proceeding shall appear as "18-11401 Doc. ___."

of $62,918.93, of which $23,474.79 constituted pre-petition[5] arrearage. *See* Exhibit M. Although Deborah Buczek objected to the KeyBank POC, the Court overruled those objections at a hearing on April 8, 2019. 18-11401 Doc. 139. Deborah Buczek has appealed that decision. 18-11401 Doc. 202. None of the allegations raised by Deborah Buczek in the objection had any merit, and many were attempts to compel this Court to sit in appellate review of the State Court by raising issues decided in the Foreclosure Action.

23.     Deborah Buczek's Chapter 13 Plan (the "DB Plan"; 18-11401 Doc. 42) failed to reference the first mortgage or KeyBank's junior Mortgage on the Property. Instead, in Section 3.2 of the DB Plan, Deborah Buczek requested valuation for purposes only of determining the secured portion of the New York State Department of Taxation's lien. 18-11401 Doc. 42. The DB Plan called for payment of a mere $500 per month, which was insufficient to pay the amount due monthly to the first lienholder, Seterus, Inc. (as sub-servicer for Federal National Mortgage Association) ("Fannie Mae"), let alone KeyBank. Consequently, under the DB Plan, KeyBank would receive nothing on account of its second mortgage lien while any equity in the Property diminished by the growing first lien debt that Deborah Buczek's $500 per month payment would be unable to amortize. Even assuming the Fannie Mae lien were expunged and KeyBank received all of the DB Plan payments, the DB Plan still would fall short of the regular monthly payments due to KeyBank and would fail to cure the arrearage, all at odds with 11 U.S.C. §§ 1322(b)(2) and 1325(a)(5).

24.     After filing the 2018 Petition and the DB Plan, Deborah Buczek continued her years-long pattern of failing to pay KeyBank. As a result, on March 4, 2019, KeyBank filed its Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) & (2) (the "Stay Relief

---

[5] That is, prior to July 20, 2018. Since that time KeyBank has still received absolutely no payments from either debtor and that arrearage has substantially increased.

Motion," 18-11401 Doc. 105) so that KeyBank could exercise its rights under state law and complete the sale of the Property pursuant to the Foreclosure Judgment. On April 1, 2019, the Bankruptcy Court held a hearing on the Stay Relief Motion and issued an Order Terminating the Automatic Stay (the "Order Terminating Stay," 18-11401 Doc. 126).

25.     On April 9, 2019, Deborah Buczek filed the "Emergency Motion for Reconsideration Requiring Emergency Injunction and Temporary Restraining Order (F.R.B.P. 8002 & 9024)" (the "Motion for Reconsideration," 18-11401 Doc. 134 (as amended by 18-11401 Docs. 142 and 144)). On April 22, 2019, the Bankruptcy Court denied the Motion for Reconsideration, prompting another frivolous appeal. *See* 18-11401 Doc. 148. Thereafter, the Property was originally scheduled for foreclosure sale to be held on April 29, 2019. See 18-11401, Transcript of April 22, 2019, Hearing at 21.

26.     While contesting the Order Terminating Stay in her main bankruptcy case, Deborah Buczek also initiated an adversary proceeding on April 8, 2019, Adv. Proc. No. 1-19-01008-CLB.[6] On May 7, 2019, she filed the "First Amended Adversarial Complaint (Jury Trial Demanded) FRCP Rule 38 & FRBP Rules 9015 & 7001" (the "Complaint," 19-01008 Doc. 7) alleging ill-defined wrongdoing on the part of various individuals and entities including KeyBank. Lacking clarity, the Complaint failed to delineate the actual causes of action asserted against KeyBank. Nonetheless, it was clear from the face of the Complaint that Deborah Buczek was attempting to re-litigate the issues that had already been fully and finally resolved by the State Court in the Foreclosure Action.

27.     On June 21, 2019, this Court dismissed the Complaint. 19-01008 Doc. 61. Deborah Buczek has appealed that decision as well. 19-01008 Doc. 85.

C.     **THE ABUSE CONTINUES WITH THIS LATEST PROCEEDING**

28.    On the eve of the rescheduled foreclosure sale, and as the next step in the Buczek family scheme to wrongfully delay the exercise of KeyBank's rights, Debtor, Shane Christopher Buczek, filed for bankruptcy on July 19, 2019.

29.    The skeletal voluntary petition (Doc. 1) and largely blank Schedules and Statement of Financial Affairs ("SOFA") (Docs. 46 and 48, respectively) are indicative of Debtor's true intentions.  For example, Debtor's SOFA reports no sources of income from employment or operating a business, calling into question his eligibility for filing chapter 13 in the first place. *See* 11 U.S.C. § 109(e) ("[o]nly an individual with regular income . . . may be a debtor under chapter 13 of this title.") On Schedule I, Debtor reports only $572.12 in other government assistance.

30.    The only secured creditor listed on Schedule D is "Shane-Christopher Buczek, of 435 Creekside Drive Suite 200" purportedly holding an unliquidated claim secured by 7335 Derby Road in the amount of $1,000,000.  Doc. 43.  There are only four unsecured creditors appearing on Schedule F: the Erie County Water Authority for $300, the U.S. Department of Justice for $8,411.96, Discover Financial Services for $17,331.35, and Credit First National Association for $1,460.42.  Doc. 46.

31.    The Debtor's proposed plan (the "SB Plan") proposes monthly payments of $95 for 60 months.  Doc. 50.  Like the facially defective DB Plan, no secured claims will be paid through the SB Plan either. *Id.*

32.    It is plain from the Schedules, SOFA, and SB Plan that KeyBank's progress in the Deborah Buczek bankruptcy litigation and the Foreclosure Judgment, particularly the impending sale, prompted this filing. Certainly, no good faith basis for the bankruptcy can be discerned from the Schedules, SOFA, or SB Plan. The entire intention is not to restructure the obligations

---

[6] Citations to the docket of this adversary proceeding shall appear as "19-01008 Doc. ___."

owed to legitimate creditors like KeyBank; rather the intention is to subject those creditors to expensive and wasteful litigation[7] in the hopes of avoiding paying those creditors anything at all.

33.     After Shane Christopher Buczek filed the current Bankruptcy, Deborah Buczek sent a second grievance complaint against me to the Grievance Committee for the Seventh Judicial District.  On this second time, the Grievance Committee sent me a copy of the complaint with a confidential letter stating that Staff Counsel was unable to determine any basis for involvement by the Grievance Committee.  A copy of Buczek's second attempt to grieve me is annexed hereto as Exhibit "N".

34.     Also, around the same time, Debtor and/or his cohorts made a series of harassing phone calls leaving voicemails sufficient to completely fill my voicemail started around July 5, 2019.  The first voicemail was left at 2:15pm.  Then ten voicemails (each approximately 5-10 minutes) were left from 11:51pm through 12:59am.  Then, a twelfth such voicemail was left at 11:56pm on July 6.

35.     Another round of voicemails (five in total) of an internet-based radio program were left starting from July 13, 2019, at 12:20am through the last one starting at 12:57am.

36.     While, at first, I could only suspect that the lengthy and irrelevant excerpts from an internet-based radio show was from debtor or his cohorts, my suspicion was confirmed when, on the voicemail left on July 13, 2019 at 12:49am, the internet radio show was discussing subject matter jurisdiction, clearly heard in the background and caught by the microphone: "Hear that, Shane?"

---

[7] Indeed, Shane Buczek's most recent filing, suggesting that a KeyBank employee should go to prison for twenty years because she filed a notice of payment change in this case solely as a result of the confusion the Buczek family itself created with its fraudulent transfers of the Property (*see* 18-11401 Doc. 58, p. 16), is the type of patently frivolous and abusive conduct this Court and KeyBank may continue to expect if this case is not dismissed.

37.     These sorts of harassing voicemails continued on July 20, 2019, when three more messages of the same internet radio program were left starting at 12:42am.  On August 3, 2019, another two voicemails of the same internet radio program were left at 12:24am and 12:30am.

38.     Even when mailing our firm copies of papers, that Shane Christopher Buczek filed in this bankruptcy in relation to the first-in-position mortgagee's application to lift the stay, Shane Christopher Buczek continued to harass and malign my firm and/or its attorneys by adding into the mailing in a picture of the Three Stooges where your declarant's first name is written on Curly's forehead, Craig Beideman's first name is written on Moe's cheek, and Mark Broyles's first name is written on Larry's forehead.  The self-evident implication and *ad hominem* attack upon this firm and its lawyers compound the bad faith behavior of the Buczek family.  A copy of the full mailing received from Shane Christopher Buczek is annexed hereto as Exhibit "Q".

## LEGAL ANALYSIS

A.     GROUNDS TO DISMISS CHAPTER 13 BANKRUPTCY PROCEEDING

### 1. THE GOOD FAITH STANDARD

39.     A Chapter 13 case may be dismissed, after notice and hearing, "for cause, including" several enumerated factors.  11 U.S.C. § 1307(c).  The Bankruptcy Code requires a debtor proposing a plan for confirmation to exercise "good faith" in filing.  11 U.S.C. § 1325(a)(3).  A good faith determination focuses on the "totality of the circumstances" in determining whether the debtor displayed "honesty of intention," and "requires a bankruptcy court to 'inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise [filed] his Chapter 13 [petition or] plan in an inequitable manner.'"  *In re Klevorn,* 181 B.R. 8, 10 (Bankr. N.D.N.Y. 1995); *see In re Johnson,* 708 F.2d 865, 868 (2d Cir. 1983) (citations omitted).  A bankruptcy court's determination of "bad faith" is a question of fact which the bankruptcy court may determine in the first instance.  *See In re*

*Barbieri,* 226 B.R. 531, 535 (Bankr. E.D.N.Y. 1998), *rev'd on other grounds,* 199 F.3d 616 (2d Cir. 1999); *United States Fidelity & Guar. Co. v. DJF Realty & Suppliers,* 58 B.R. 1008, 1011 (Bankr. N.D.N.Y. 1986).

40.     Pursuant to 11 U.S.C. § 1307(c), a bankruptcy court may dismiss a Chapter 13 case "for cause." Courts have held that bad faith in filing for Chapter 13 relief constitutes "cause" under § 1307 sufficient to warrant a dismissal. *See In re Setzer,* 47 B.R. 340, 347 (Bankr. E.D.N.Y. 1985) (holding that Debtor's failure to present a confirmable Chapter 13 plan evidenced bad faith and provided grounds for dismissal with cause); *In re Charles D. Eatman,* 182 B.R. 386, 392 (Bankr. S.D.N.Y. 1995) ("although 11 U.S.C. § 1307(c) does not expressly equate bad faith with 'cause,' the bankruptcy court can also dismiss the petition or convert the case under section 1307(c) if the debtor files his petition in bad faith"); *In re Prud'Homme,* 161 B.R. 747, 749 (1993).

41.     Courts have found bad faith in Chapter 13 cases in the following circumstances: 1) the debtor has few or no unsecured creditors; 2) the debtor has previously filed for bankruptcy; 3) the debtor's pre-petition conduct was improper; 4) the debtor's petition allows him or her to evade court orders; 5) the debtor has few debts to non-moving creditors; 6) the petition was filed on the eve of foreclosure; 7) the foreclosed property was the sole or major asset of the debtor; 8) no possibility exists for reorganization; 9) the debtor's income is insufficient to operate; 10) there is no pressure from non-moving creditors; 11) reorganization essentially involves the resolution of a two-party dispute; and 12) the debtor filed solely to obtain an automatic stay. *See In re Patricia Jean Powers,* 135 B.R. 980, 981 (Bankr. C.D. Cal. 1991) (citing *In re Grieshop,* 63 B.R. 657 (Bankr. N.D. Ind. 1986)). Courts also consider whether: 1) the petition contains deficiencies or inaccuracies meant to mislead the court; 2) payments are fundamentally unfair in timing or amount; 3) debtor had an improper motive in seeking relief;

and 4) under the "totality of the circumstances," the debtor has abused the provisions, purposes, and/or spirit of Chapter 13. *See In re Prud'Homme,* 161 B.R. 747, 749-50 (Bankr. E.D.N.Y. 1993); *In re Powers,* 135 B.R. at 992-93 (citations omitted); *In re Johnson,* 708 F.2d at 868.

42. The debtor bears the burden of proving that the bankruptcy filing was made in good faith. 11 U.S.C. § 362(g).

## 2. DEBTOR CANNOT MEET THE GOOD FAITH STANDARD

43. The facts set forth *supra* provide ample evidence of Debtor's bad faith. The Debtor's petition allows him and his mother to evade the Foreclosure Judgment. The foreclosed Property is the only major asset of the Debtor—an asset he only acquired for (supposedly) $1,000 while Deborah Buczek's foreclosure proceeding was in progress. The Debtor's income is insufficient to fund any plan that would be fair to parties holding an interest in the Property. The fundamental issue in Debtor's case, and Deborah Buczek's case, and all the related frivolous litigation they have jointly worked to spawn, the abusive and intimidating behavior directed to attorneys of this firm and the Court-Appointed Referee, is whether the Buczeks are entitled to continue to live in the Property, as they have for years now, without paying a penny to bona fide creditors despite having borrowed substantial sums secured with valid mortgages against the Property.

44. The dispute is, in essence, two-party (secured creditor versus Buczek family) that the State Court has already resolved. Debtor is merely Deborah Buczek's proxy—a repository for the Property that she has used here in the hopes of frustrating KeyBank's Foreclosure Judgment. Deborah Buczek's and the Debtor's conduct consists of a pattern and practice of: frivolous litigation; unsupported (and unsupportable) allegations of a broad conspiracy among lenders and the state and federal governments to wrongfully deprive the Buczeks of a house they think they are entitled to have for free; efforts to re-litigate unfavorable decisions and spread

their abusive litigation tactics to appellate proceedings; and at least one fraudulent—that is nevertheless still subject to KeyBank's mortgage[8]—transfer among insiders to hamper and evade KeyBank's foreclosure efforts.

45.     The conduct in Deborah Buczek's bankruptcy evidences the pattern.   After KeyBank was granted relief from stay, Deborah Buczek filed "emergency" papers, seeking temporary restraining orders without offering any bond and no less than three appeals without posting a supersedeas bond.  She repeated, unsuccessfully, a multitude of arguments and theories lacking support in fact and law.  The entire purpose of this proceeding is to simply repeat the wasteful process seen in the Deborah Buczek bankruptcy case.

## C.  GROUNDS FOR RELIEF FROM STAY

### 1. GROUNDS FOR *IN REM* RELIEF UNDER 11 U.S.C. § 362(d)(4)

46.     KeyBank also seeks *in rem* relief under 11 U.S.C. § 362(d)(4).  A lack of good faith is also "cause" sufficient to annul the automatic stay under § 362(d).  *In re Burton*, 195 B.R. 588, 592 (Bankr. W.D.N.Y. 1996).

47.     The State Court and Bankruptcy Court litigation and the unauthorized transfer of the Property provides a reasonable basis for this Court to infer that this bankruptcy petition filed pro se was part of a scheme to delay, hinder or defraud KeyBank.

48.     11 U.S.C. § 362(d)(4) provides in pertinent part:

. . . after notice and a hearing, the court shall grant relief from stay.

. . .

---

[8] The New York law codifying *lis pendens* provides that a plaintiff in an action "in which the judgment demanded would affect the title to, or the possession, use or enjoyment of real property, "may file a notice of pendency with respect to the real property that is the subject of the action. *See* N.Y. C.P.L.R. 6501. Filing of the notice of pendency effects constructive notice of the action: "A person whose conveyance or incumbrance is recorded after the filing of the notice is bound by all proceedings taken in the action after such filing to the same extent as a party." *Id.*; *see also Diaz v. Paterson*, 547 F.3d 88, 90 (2nd Cir. 2008).  As at common law, "[t]he notice of pendency does not itself actually restrain transfer of the property, as an incumbrance or a lien: it merely provides notice that an action is pending that may affect title to the property." *Diaz*, 547 F.3d at 90.

(4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—

    (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

    (B) multiple bankruptcy filings affecting such real property.

If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

11 U.S.C. § 362(d)(4).

49.     To obtain relief under § 362(d)(4), the moving party has the burden of proving that the current filing by the Debtor "is part of a scheme, that the scheme involved the transfer of real property or multiple filings, and that the object of the scheme is to hinder, delay, or defraud" the moving party. *In re Lemma*, 394 B.R. 315, 323 (Bankr. E.D.N.Y. 2008).

50.     Courts have considered several factors in determining whether multiple filings raise an inference of intent to hinder, delay or defraud secured creditors, including (1) debtor's failure to make post-petition payments on the loan, (2) debtor's failure to file the required documents and information necessary to prosecute the bankruptcy, and (3) the timing and the sequence of the filings. *See In re Montalvo*, 416 B.R. 381, -386-87 (Bankr. E.D.N.Y. 2009).

51.     When evaluating whether to grant relief under § 362(d)(4), "the mere timing and filing of several bankruptcy cases is an adequate basis from which a court can draw a reasonable inference that the filing of a subsequent case was part of a scheme to hinder, delay, and defraud creditors." *In re Blair*, 2009 Bankr. LEXIS 4195, 63 Collier Bankr. Ca. 2d (MB) 513 (noting that each filing occurred on the eve or shortly before significant events affecting the property at

issue and consequently granting *in rem* relief). In addition, when debtors "have evinced no true intention to reorganize their financial affairs . . . but [r]ather they have engaged in serial filings to thwart the efforts of [a secured creditor] to exercise its lawful rights under state law . . . [t]he serial filings are evidence of bad faith, and evidence of the fact that [the debtors] are abusing the bankruptcy process." *In re Montalvo*, 416 B.R. 381, 385-86 (Bankr. E.D.N.Y. 2009) (granting *in rem* relief while observing that the various cases filed between the present debtor and co-obligor were dismissed for failure to comply with filing requirements).

52.     The timing and sequence of the unauthorized transfer of the Property, the pro se filing of Deborah Buczek's petition and the pro se filing of the Debtor's petition "allows the Court to draw a permissible inference . . . that the instant petition [is] part of a scheme of Debtor to delay, hinder, and defraud" KeyBank. *In re Montalvo*, 416 B.R. at 387; *In re Everton Aloysius Sterling*, 543 B.R. 385 (Bankr. S.D.N.Y. 2015).

### 2. IN THE ALTERNATIVE, GROUNDS FOR RELIEF, WITH PREJUDICE, PURSUANT TO 11 U.S.C. § 105(a)

53.     In the alternative, if this Court finds that the fact pattern outlined herein is not the kind of conduct that would meet the pre-requisites as outlined in 11 U.S.C. § 362(d)(4), then it is respectfully submitted that based on the foregoing facts that KeyBank asks this Court not only to modify and terminate the automatic stay, but, in accordance with Section 105(a), order that in the event of any future filing under Title II of the U.S. Code by the Debtor and/or any other person or entity either with an interest and/or claiming an interest in the Property within a period of the next 180 days, measured from the entry date of an order granting KeyBank the relief sought herein, shall not operate as an automatic stay against KeyBank.

54.     As set forth in detail above, KeyBank's enforcement of its rights in the Property have been unnecessarily protracted by litigation in the State Action, by the Transfer of the

Property, by Deborah Buczek's bankruptcy filed pro se, and by the instant bankruptcy petition filed pro se and litigation causing KeyBank to suffer severe prejudice.

55. Therefore, it is respectfully requested that this Court enter an order which provides that any future bankruptcy filings by the Debtor, Deborah Buczek, and/or any other person or entity either with an interest and/or claiming an interest in the Property within a period of the next 180 days, measured from the entry date of an order granting KeyBank the relief sought herein, shall not operate as an automatic stay against KeyBank, its successors and/or assigns.

56. Further, insofar as the ramblings of the Buczeks have implicated a possible abuse of non-judicial filings including but not limited to unilateral UCC-1[9] filings, it is respectfully requested that relief from the stay extend to KeyBank and their attorneys taking judicial action to nullify or invalidate any other extra-judicial actions that the debtor had taken or takes against KeyBank or any of its attorneys.

57. This is not a garden-variety chapter 13 case, filed for the purpose of obtaining a fresh start. Rather, this is an orchestrated effort to needlessly increase the expense of KeyBank in enforcing its rights and attempt to harass and intimidate KeyBank's attorneys in an attempt to drive a wedge into that attorney-client relationship. Deborah Buczek has, over the course of the last several years, used assorted means of passive resistance, fraudulent transfer and delay tactics to avoid the inevitable, lawful outcome of her failure to pay her mortgage. This bankruptcy is just the latest, logical step in an ongoing progression of misconduct, but it is an abuse of the legal system that this Court should not countenance. No legitimate objective is accomplished with this bankruptcy; the aim is merely to slow and injure KeyBank. Consequently, dismissal of the Debtor's bankruptcy case for bad faith is warranted.

58.    Under BAPCPA, a new section of 362(d) was added with the intent "to reduce abusive filings." *In re Muhaimin,* 363 B.R. 159 (Bankr. D. Maryland 2006) *citing* H.R. Rep. 109-31 (I) at 59 (2005).  11 U.S.C § 362 (d)(4)(B) provides that

> "The court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved... multiple bankruptcy filings affecting such real property."

59.    This provision also provides that relief under this section "shall be binding in any other case under this title purporting to affect such real property filed not later then 2 years after the date of the entry of such order by the court...." 11 U.S.C. § 362(d)(4)(B) is appropriate and the automatic stay should be terminated with respect to the Secured Creditor's interest in the Mortgaged Premises.

### 3.    IN THE ALTERNATIVE, THE STAY SHOULD BE LIFTED AS TO KEYBANK BECAUSE IT HAS NOT RECEIVED ANY POST-PETITION PAYMENTS ON THE MORTGAGE, NOR IS THERE ADEQUATE PROTECTION OF KEYBANK'S SECURED POSITION.

60.    The April 6, 2014, payment and all subsequent payments are due.   Your Affirmant is advised that the last payment tendered was on March 6, 2014, but that payment was reversed due the non-sufficient funds.

61.    The total amount due and owing on the loan, as of November 4, 2019, was $66,970.04 and the sum remains due together with interest which continues to accrue from that date plus any other sums advanced by Movant to protect its security in the Property.

62.    As evidenced ion the Claims Register, listed as Claim 2-1, additional liens exist against the Property including a first-lien mortgage in the amount of $159,101.09.

---

[9] See part of Exhibit "A" in Debtor's Form 101 addendum, annexed hereto as Exhibit "P"

63.     No post-petition payment has been tendered to KeyBank since the bankruptcy petition was filed in this matter.

64.     Please also note that a BPO dated June 27, 2019, attached hereto as Exhibit "O," demonstrates that the Property has an assessed fair market value of $220,000.00. Evident from the record before this Court, there is no equity in the Property for the Estate because the secured liens (totaling in excess of $226,000.00) and costs of selling the Property (estimated at 10% of the value, or $22,000.00) exceed the value of the Property.

WHEREFORE, it is respectfully requested this Court dismiss this Chapter 13 proceeding in its entirety pursuant to 11 U.S.C. §§ 105(a), 362(d), and 1307(c) and Fed. R. Bankr. P. 4001, with a bar to re-filing, or, in the alternative issue an Order Confirming the absence of the Stay pursuant to 11 U.S.C § 362(c)(4)(A)(ii) with additional relief pursuant to 11 U.S.C. § 362(d)(4)(B) so KeyBank may prosecute its interest in the premises and protect itself from non-judicial filings made by or on behalf of the debtor, wherein any future or subsequent bankruptcy petition filed by or against any person or entity with an interest in the property shall not create or impose an automatic stay as to Movant, its successors, and or assigns with regard to the Property for a period of two (2) years from the entry of the Order and for such other and further relief as the Court may deem just and proper.

Dated: November 27, 2019

FEIN, SUCH & CRANE, LLP
Attorneys for Movant

By: _____
David P. Case, Esq.
(DC-1001)
28 EAST MAIN STREET, SUITE 1800
ROCHESTER, NY 14614
585-232-7400