

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

In re:

Shane Christopher Buczek                    **CASE NO. 1-19-11441-CLB**

## NOTICE OF MOTION OF VACATE ORDER OF DECEMBER 16, 2019

**PLEASE TAKE NOTICE** that upon the **NOTICE OF MOTION SEEKING TO VACATE ORDER OF DECEMBER 16, 2019** the undersigned will move at a hearing to be at the **United States Bankruptcy Court, Western District of New York, Robert H. Jackson U.S. Courthouse, 2 Niagara Square, 5th Floor Buffalo, New York** set for 11:30 AM **January 27, 2020**. Buffalo Orleans **Courtroom Honorable Carl L. Bucki** for an Order DEBTOR'S **MOTION TO VACATE ORDER OF DECEMBER 16, 2019 proposed by Attorney Dave P. Case.**

DATED: January 10th, 2020

/s/: By: _Shane Christopher Buczek_

Shane Christopher Buczek, Debtor Pro-Se

NOTICE OF MOTION SEEKING TO VACATE ORDER OF DECEMBER 16, 2019
CASE NO. 1-19-11441-CLB

To:

Trustee-Chapter 13
The Dunn Building
110 Pearl Street, 6th Floor
Buffalo New York [14202-4111]

**Michael J. Chatwin**
Shapiro, DiCaro & Barak, LLC
175 Mile Crossing Blvd.
Rochester, NY 14624

Office of the United States Trustee
**Joseph W. Allen, Esq**
Olympic Towers
300 Pearl Street, Suite 401
Buffalo, New York 14202

**Dave P. Case**
**Mark K. Broyles**
Fein, Such & Crane LLP
28 East Main Street Suite 1800
Rochester, New York 14614
585-325-6202
585-325-6201 (fax)
mkbroyles@rgcattys.com

**NOTICE OF MOTION SEEKING TO VACATE ORDER OF DECEMBER 16, 2019**
CASE NO. 1-19-11441-CLB

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

In re:                                    **CASE NO. 19-11441-CLB**

Shane Christopher Buczek

**DEBTOR'S MOTION TO**
                    **VACATE COURT ORDER DATED**
Debtor                    **DECEMBER 16, 2019**

---

### DEBTOR'S MOTION TO VACATE ORDER OF DECEMBER 16, 2019 AND MUTUAL CONSENT SETTLEMENT AGREEMENT

**VERIFIED FACTS and MUTUAL CONSENT SETTLEMENT AGREEMENT**

**1.**     COMES NOW the Debtor, Shane Christopher Buczek, appearing pro-se, for and on the record, the Debtor Shane Christopher Buczek hereby solemnly **declares the following irrefutable verified facts, objections, offers, statements, and stipulated terms as being complete, true, and correct under oath and penalty of perjury for introduction and admissibility into the Court's evidence record.**

2.     The following irrefutable **verified facts** go **straight to the heart** of the matter of the Debtor's lawful affirmative defenses against purported creditor KeyBank's lack of legal standing and incompetency to assert its unverified claim(s) and therefore Debtor's lawful affirmative defenses must be considered as admissible evidence in this threshold matter for the intended purpose of this Chapter 13 Bankruptcy Court to even begin to consider and to perceive purported creditor KeyBank as taking on the appearance of a legitimate claimant/creditor if KeyBank is

without lawful standing to do so within this Chapter 13 Bankruptcy Case for the purpose of the Court in issuing a Court Order for Relief from Automatic Stay in favor of purported creditor KeyBank's unverified and unsupported claim(s).

3.     On **January 6, 2020,** Debtor, Shane Christopher Buczek filed a **MOTION IN REPLY AND MUTUAL CONSENT SETTLEMENT AGREEMENT** dated **January 6, 2020 (See Exhibit "A"**... **Debtor's MOTION IN REPLY dated January 6, 2020**) in opposition to purported creditor KeyBank's **MOTION FOR RELIEF FROM AUTOMATIC STAY dated November 27, 2019 (See Exhibit "B"**... **KeyBank's MOTION FOR RELIEF FROM STAY dated November 27, 2019**) which was previously heard by this Chapter 13 Bankruptcy Court on **December 16, 2019** whereby Bankruptcy Judge Bucki **mistakenly** issued an **ORDER** dated **December 16, 2019 (See Exhibit "C"**... **Court's ORDER dated 16, 2019**) mistakenly granting relief from STAY.

| | | | |
|---|---|---|---|
| | | <u>182</u><br>(352 pgs;<br>8 docs) | Debtor's Reply Motion to Keybank's Objection Motion and Mutual Consent Settlement Agreement (RE: related document(s)<u>168</u> Generic Motion filed by Debtor Shane Christopher Buczek, <u>179</u> Objection filed by Notice of Appearance Creditor KEYBANK NATIONAL ASSOCIATION). (Attachments: # <u>1</u> Exhibit A # <u>2</u> Exhibit B-F # <u>3</u> Exhibit G # <u>4</u> Exhibit H-I # <u>5</u> Exhibit J-O # <u>6</u> Exhibit P-R # <u>7</u> Certificate of Service) Filed on behalf of Debtor Shane Christopher Buczek (Nieves, J.) (Entered: 01/06/2020) |
| 01/06/2020 | | | |

4.     This motion in addition to Debtor's **MOTION IN REPLY AND MUTUAL CONSENT SETTLEMENT AGREEMENT** dated **January 6, 2020 (See Exhibit "A"**... **Debtor's MOTION IN REPLY dated January 6, 2020**) **and all other prior:** affidavits, allegations, assertions, declarations, exhibits, facts, information, case cites, motions, and applicable laws

which were previously cited and raised within Debtor's filings, motions, and pleadings which were filed by the Debtor into the court and received by this Chapter 13 Bankruptcy Court as of today January 10, 2020 are hereby expressly referenced as if actually and specifically incorporated and reiterated herein in their entirety in this motion dated **January 10, 2020**.

5.      On **January 6, 2020**, during the Court Hearing of **January 6, 2020,** Debtor Shane Christopher Buczek pointed out to Judge Bucki **the false and incorrect statements** of purported creditor KeyBank's proposed **ORDER** dated **December 16, 2019 (See Exhibit "C"**… **Court's ORDER dated December 16, 2019**) which Judge Bucki mistakenly signed on **December 16, 2019** mistakenly granting relief from **STAY.**

6.      Purported creditor KeyBank's aforesaid **false and incorrect** statements are in violation of law pursuant to **18 USC 1001 (a)(1),(a)(2),(a)(3)** and **18 USC 1623…**

**18 USC 1001**

>  **(a)** Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
>
>  **(1)** falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
>
>  **(2)** makes any materially false, fictitious, or fraudulent statement or representation; or
>
>  **(3)** makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
>
>  shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense under chapter 109A, 109B, 110, or 117, or section 1591, then the term of imprisonment imposed under this section shall be not more than 8 years.

**18 USC 1623(a)**

**(a)**

Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding

before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined under this title or imprisoned not more than five years, or both.

7.      On **January 6, 2020**, during the Court Hearing of **January 6, 2020, Judge Bucki agreed with Debtor regarding the false and incorrect statements of purported creditor KeyBank's proposed ORDER** dated **December 16, 2019** (<u>**See Exhibit "C"**</u>… <u>**Court's ORDER dated December 16, 2019**</u>) and **ordered** KeyBank **to correct said false and incorrect statements** and for KeyBank **to re-present the revised PROPOSED ORDER to** Judge Bucki **for final review, authorization, and re-issuance.**

8.      On **January 7, 2020,** purported creditor KeyBank **disregarded and ignored** Judge Bucki's **ORDER** of January 6, 2020 and **failed, neglected,** and/or **refused to revise said Court ORDER dated December 16, 2019 pursuant to Judge Bucki's ORDER of January 6, 2020** and proceeded to record **said Court ORDER** dated **December 16, 2019** (<u>**See Exhibit "C"**</u>… <u>**Court's ORDER dated December 16, 2019**</u>) with the Erie County Clerk with the intention of <u>**causing future harm against the Debtor by stealing the Debtor's real property and also with the intention of being in complete disrespect and disregard**</u> for **Judge Bucki's ORDER of January 6, 2020** instructing **purported creditor KeyBank** to revise **said ORDER.**

9.      Further issues addressed during the **January 6, 2020 Court Hearing**… Judge Bucki pointed out to Debtor that according to **FRBP RULE 9011** that a verified pleading was not necessary which the Debtor acknowledges the Judge's statement as being correct. However, the Debtor hereby asserts that the Judge **is mistaken in presuming in thinking that** the Debtor (in all of the Debtors prior pleadings and motions, with regard to requesting that purported creditor

KeyBank provide this court with **"verified evidence"** and/or **"verified proof"** of KeyBank's purported **"standing"** to make a claim upon which relief may be granted that the Debtor) was asking for a **verified Affidavit** / Statement to be executed and signed under oath and penalty of perjury. When in fact, if one **carefully reads paragraphs #18 and #19** of the Debtor's **MOTION** dated **January 6, 2020** the Debtor is **specifically requesting** for purported creditor KeyBank to prove its purported "standing" **by producing the original promissory note** in order to prove that KeyBank (in this day and age of securitization of financial instruments whereby the financial instruments are sold and traded several times in the Over The Counter Financial Markets of the world) is to be considered as the Holder-In-Due-Course in actual possession of said original promissory note entitling purported creditor KeyBank to enforce said original promissory note. For a true creditor may only enforce financial instrument upon proving that it is in fact the **Holder-In-Due-Course** in actual possession of the original promissory note entitling the true creditor to enforce said note.

10.     **WHEREFORE**, based upon the above solemnly stated irrefutable verified facts the Debtor hereby respectfully requests that said Court **ORDER** dated December 16, 2019 is hereby RESCINDED and VACATED.

11.     The Debtor hereby respectfully requests that the Court ORDER dated December 16, 2019 which was recorded with the Erie County Clerk by purported creditor KeyBank also be **STRICKEN** from the Erie County Public Record.

12.     The Debtor hereby respectfully requests that a Court Order be issued ordering that any and all prior judgments and orders previously issued by this Chapter 13 Bankruptcy Court with regard to purported creditor KeyBank are hereby rescinded and vacated.

19-11441-CLB  DEBTOR'S MOTION TO VACATE ORDER OF DECEMBER 16, 2019

13.     The Debtor hereby respectfully requests that a Court Order be issued ordering that

purported **KeyBank produce the original promissory note within 14 Days as verified proof**

and admissible evidence proving that purported creditor KeyBank is in fact the true claimant as

**Holder-In-Due-Course** in actual possession of said original promissory note entitling KeyBank

as the true creditor with the right to state a claim upon which relief may be granted.

14.     The Debtor hereby respectfully requests that a Court Order be issued ordering that if

KeyBank fails, neglects, and/or fails to produce said original promissory note that KeyBank will

be liable to compensate the Debtor pursuant to the stipulated terms provided in Debtor's

MOTION dated January 6, 2020.

**15.**     All aforementioned irrefutable facts and stipulated terms heretofore stated in good faith

are being solemnly introduced for being entered into the evidence file of this Chapter 13

Bankruptcy Court Case by the Debtor, I, Shane Christopher Buczek **under oath and penalty of**

**perjury as being complete, true, and correct.**


                                          Solemnly introduced into the record,

DATE: January 10, 2020,          /s/: By: _Shane Christopher Buczek_

                                          Shane Christopher Buczek, Debtor Pro-Se

# Exhibit "A"

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

In re:　　　　　　　　　　　　　　**CASE NO. 19-11441-CLB**

Shane Christopher Buczek　　　　**DEBTOR'S REPLY MOTION TO**
**KEYBANK'S OBJECTION**
**MOTION**

Debtor　　　　　　　　　　　**AND**

**MUTUAL CONSENT SETTLEMENT**
**AGREEMENT**

## DEBTOR'S REPLY MOTION AND MUTUAL CONSENT SETTLEMENT AGREEMENT

**VERIFIED FACTS and MUTUAL CONSENT SETTLEMENT AGREEMENT**

**1.**　　　COMES NOW the Debtor, Shane Christopher Buczek, appearing pro-se, for and on the

record, the Debtor Shane Christopher Buczek hereby solemnly declares the following irrefutable

verified facts, objections, offers, statements, and stipulated terms as being complete, true, and

**correct under oath and penalty of perjury for introduction and admissibility into the**

**Court's evidence record.**

**2.**　　　The following irrefutable verified facts go straight to the heart of the matter of the

Debtor's lawful affirmative defenses against purported claimant KeyBank's lack of legal

standing and incompetency to assert its unverified claim(s) and therefore Debtor's lawful

affirmative defenses must be considered as admissible evidence in this threshold matter for the

intended purpose of this Chapter 13 Bankruptcy Court to even begin to consider and to perceive

purported claimant KeyBank as taking on the appearance of a legitimate claimant/creditor if

**KeyBank is without lawful standing to do so within this Chapter 13 Bankruptcy Case for the purpose of the Court in issuing a Court Order for Relief from Automatic Stay in favor of purported claimant KeyBank's unverified claim(s).**

3.      On **October 7, 2008,** Debtor, Shane Christopher Buczek's mother Deborah Ann Buczek executed a secured loan extended to Deborah in the amount of $50,000.00 by secured-creditor KeyBank in which Deborah's real property (7335 DERBY ROAD, DERBY, NY 14047) was named as security for the loan (**See Exhibit "A" Loan Agreement dated October 7, 2008 Pages 29-37 of 61**).

4.      On **October 15, 2014,** due to the financial scheme of the "securitization" of Real Estate Mortgage Backed Securities (RMBS) (**See Exhibit "B"… "ABCs of Legal Analysis of RMBS Securitizations" by NAIC 'National Association of Insurance Commissioners 2014**), Debtor Shane Christopher Buczek's mother Deborah Ann Buczek having learned that many banks and other financial institutions were fraudulently foreclosing on real property mortgage loans for which said banks were not entitled to foreclose upon due to the fact that said banks were no longer the Holder-In-Due-Course of the original promissory note because of the securitization scheme to immediately sell their mortgage loan contracts to third-party investors… thereby Deborah Ann Buczek served purported secured-creditor KeyBank with a **Qualified Written Request (QWR) (See Exhibit "C"… QWR #1 dated October 15, 2014**) pursuant to 15 USC 1692(g)(b) requesting that KeyBank provide proof of its status as Holder-In-Due-Course of the original promissory note with the right to enforce the original promissory note.

**15 USC 1692(g)(b) provides as follows:**

**"(b)Disputed debts**

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

5.     On **February 19, 2015**, Deborah Ann Buczek served a follow-up **second notice of the QWR (See Exhibit "D"… QWR #2 NOTICE dated February 19, 2015)** upon purported secured-creditor KeyBank due to the fact that KeyBank failed, neglected, or refused to respond to **the first QWR NOTICE** served by Deborah Ann Buczek upon KeyBank on **October 15, 2014.**

6.     On **April 15, 2015** Debtor, Shane Christopher Buczek's mother Deborah Ann Buczek served purported secured-creditor KeyBank with **a third QWR NOTICE OF DEFAULT (NOD) (See Exhibit "E"… QWR #3 NOTICE OF DEFAULT dated April 15, 2015)** for

failing to provide to Deborah Anne Buczek the verified proof requested via **the first two QWRs** previously served upon purported secured-creditor KeyBank that would prove that purported secured-creditor KeyBank is or was in fact the lawful secured-creditor entitled to enforce the original promissory note at that time.

7.    Pursuant to **15 USC 1692(g)(b)** purported secured-creditor KeyBank, because of its DEFAULT with respect to Deborah Ann Buczek's third **QWR NOTICE OF DEFAULT (NOD)** served upon purported secured-creditor KeyBank per **15 USC 1692(g)(b)**, was now mutually and rightfully construed by both Deborah Ann Buczek and by purported claimant KeyBank's self-confession due to its own DEFAULT to be an unsecured creditor and/or a third-party debt collector with respect to the applicable loan account and its original promissory note and security agreement in question.

8.    Pursuant to **15 USC 1692(g)(b)**, because of KeyBank's DEFAULT with respect to Deborah Ann Buczek's **QWR NOTICE OF DEFAULT (NOD)**, KeyBank now constructively resulting as the purported claimant and/or as a purported third-party debt collector was barred from pursuing any further debt collection action(s) and/or further legal foreclosure action(s) against the original promissory note and its security agreement and against the real property listed as its security.

9.    On **January 21, 2015**, in violation of **15 USC 1692(g)(b)**, KeyBank, as purported claimant and/or as a purported third-party debt collector, by and through its representative Law Firm FEIN, SUCH & CRANE, LLP and its representative Attorneys intentionally filed an unlawful and wrongful **FORECLOSURE ACTION LAWSUIT (See Exhibit "A"...**

**KeyBank's Complaint Pages 9-24 of 61 filed with Erie County Court on January 21, 2015)**

in the Erie County Court against Deborah Ann Buczek and her real property at that time.

10.     As of the date of the intentionally unlawful and wrongful filing of the Foreclosure Action

Lawsuit filed by purported claimant KeyBank and/or by purported third-party debt collector

KeyBank on **January 21, 2015**... KeyBank and its representative Attorney(s) have yet to

produce the previously requested verified proof of KeyBank's purported legal and rightful

standing to enforce the original promissory note and thus KeyBank remains in contempt and in

dishonor of its obligation to do so as required by **15 USC 1692(g)(b)** upon Deborah Ann Buczek

serving KeyBank with **a third QWR NOTICE OF DEFAULT (NOD)** (See Exhibit "E"...

QWR #3 NOTICE OF DEFAULT dated April 15, 2015).

11.     On **August 14, 2017,** Deborah Ann Buczek lawfully executed and recorded a

QUITCLAIM DEED (See Exhibit "F"... QUITCLAIM DEED recorded August 14, 2017)

with the Erie County Clerk's Office thereby transferring all rights, title and interest of the real

property in question to her son Shane Christopher Buczek free of encumbrances of any type due

to the fact that KeyBank had never, as of the date of the recording of the QUITCLAIM DEED,

properly produced verified evidence of KeyBank's purported claim and neither did any other

subsequent financial institutions nor investors as assignees nor as successors produce such

requested verified proof of claim with regard to the loan account in question.

12.     On **April 4, 2018,** Debtor Shane Christopher Buczek, as a the new bona fide owner of the

real property, filed a **MOTION FOR JOINDER** (See Exhibit "G"... MOTION FOR

JOINDER dated April 4, 2018) with the Erie County Court for the purpose of Shane

Christopher Buczek to be joined as a real party in interest in KeyBank's Foreclosure Action

against Deborah Ann Buczek in order for Shane Christopher Buczek to properly defend his

ownership claim of the real property against the intended purported claim of KeyBank.

13.     At the Erie County Court hearing held on **April 26, 2018 (See Exhibit "H"… COURT HEARING TRANSCRIPT dated April 26, 2018 Page 7 of 11, Lines 14 – 25 and Page 8 of 11, Lines 1 – 3)** Judge DiTullio shockingly and unexpectedly issued a Court Order denying Shane's Motion For Joinder and a Court Order for Summary Judgment and for Foreclosure and Sale in favor of KeyBank without KeyBank ever filing a Motion For Summary Judgment nor a Motion For Foreclosure and Sale to be addressed by the Debtor and to be heard by the Erie Count Court on that particular hearing date.

14.     Due to the confusion and panic caused by Judge DiTullio's shocking, unexpected, and wrongful decision to inequitably deny Shane Christopher Buczek's Motion for Joinder and to wrongfully issue an unexpected Court Order inequitably granting Summary Judgment and Foreclosure and Sale in favor of KeyBank on **April 26, 2018 (See Exhibit "I"… Erie County Court Order dated April 26, 2018 and entered May 16, 2018 (Also see Exhibit "H"… COURT HEARING TRANSCRIPT dated April 26, 2018 Page 7 of 11, Lines 14 – 25 and Page 8 of 11, Lines 1 – 3)**… Deborah Ann Buczek and Shane Christopher Buczek felt that there was no other choice but to hurriedly and urgently file for **Chapter 13 Bankruptcy** in order to seek the Automatic Stay bankruptcy protection against KeyBank purported Foreclosure Action **(See Exhibit "J"… Deborah Ann Buczek's Bankruptcy Petition For Ch13 Bankruptcy dated July 20, 2018)**.

15.     Furthermore, Judge DiTullio's aforesaid wrongful Court Orders which completely imposed shock and panic upon Deborah and her son Shane caused the Buczek's to think that their only remedy was to proceed with the filing of a Chapter 13 Bankruptcy protection and in the midst of such confusion, panic, and shock both Deborah Ann Buczek and Shane Christopher

Buczek inadvertently forgot and overlooked the procedural option of being able to appeal Judge DiTullio's wrongful Court Orders.

16. Even so, by the filing of the Chapter 13 Bankruptcy protection by both Deborah Ann Buczek and by Shane Christopher Buczek, all lower Erie County Court proceedings commenced by purported claimant and/or purported third-party debt collector KeyBank against Deborah Ann Buczek and against Shane Christopher Buczek's real property have been automatically stayed by Erie County Court Judge DiTullio's **ORDER OF NO FURTHER ACTIVITY** dated **July 31, 2019, (See Exhibit "L"**... **Erie County Court Order dated July 31, 2019**) until the completion and settlement of all bankruptcy proceedings of both Deborah Ann Buczek's and Shane Christopher Buczek's Bankruptcy cases.

17. On **July 20, 2018**, Deborah Ann Buczek filed her Chapter 13 Bankruptcy Court Petition with the United States Bankruptcy Court Western District of New York (**See Exhibit "J"** ... **Deborah Ann Buczek's Bankruptcy Petition for Ch13 Bankruptcy dated July 20, 2018**).

18. On **July 27, 2018,** purported claimant and/or purported third-party debt collector KeyBank, **without** proper verified proof and lawful standing filed into Deborah Ann Buczek's Chapter 13 Bankruptcy Case a **PROOF OF CLAIM dated July 27, 2018**, (as determined by KeyBank's failure to produce its verified evidence of its legal standing as Holder-In-Due-Course of the original promissory note to Deborah Ann Buczek per Deborah Ann Buczek's **third QWR NOTICE OF DEFAULT (NOD)) (See Exhibit "E"**... **QWR #3 NOTICE OF DEFAULT dated April 15, 2015**) thereby KeyBank inappropriately, illegally, and maliciously intentionally filed its wrongful **PROOF OF CLAIM** dated **July 27, 2018 (See Exhibit "K"**... **KeyBank's PROOF OF CLAIM dated July 27, 2018**) into Debtor Deborah Buczek's Chapter 13 Bankruptcy Court Case.

19.     On **March 4, 2019,** purported claimant and/or purported third-party debt collector KeyBank inappropriately, illegally, and maliciously intentionally filed a **MOTION FOR RELIEF FROM AUTOMATIC STAY dated March 4, 2019, (**<u>See Exhibit "M"</u>… **<u>KeyBank's MOTION FOR RELIEF FROM STAY dated March 4, 2019</u>**) into Deborah Ann Buczek's Chapter 13 Bankruptcy Case without first producing verified evidence of the original promissory note as proof of KeyBank's legal and rightful standing to enforce said original promissory note and KeyBank's purported interest thereof such original promissory note with the intent to cause harm, injury, and loss to Debtor Deborah Ann Buczek with the intent of confiscating, seizing, and in essence unlawfully stealing the Buczek's real property (family home) with the intended standard agency practice and assistance of the Erie County Court and with the intended standard agency practice and assistance of the United States Western District Bankruptcy Court and with the intended standard agency practice and assistance of the Courts' armed police enforcement officers thereby resulting in attempted conspiracy to commit armed robbery and theft by deception against the Buczek family members and the Buczeks' real property under violations of the R.I.C.O. Act.

20.     Ironically on **April 1, 2019** the Chapter 13 Bankruptcy Court Judge Bucki wrongfully considered purported claimant KeyBank's Motion For Relief From the Automatic Stay in Deborah Ann Buczek's Chapter 13 Bankruptcy Case having not been supported by any admissible verified proof and thereby mistakenly and/or wrongfully issued an inequitable Court **ORDER dated April 1, 2019 (See Exhibit "N"**… **<u>COURT ORDER TERMINATING STAY dated April 1, 2019</u>**) in error thus granting Relief from the Automatic Stay in favor of purported claimant KeyBank.

21.     On **July 19, 2019**, Shane Chrisopher Buczek filed his **CHAPTER 13 BANKRUPTCY COURT PETITION** with the United States Bankruptcy Court Western District of New York (**See Exhibit "O"** ... **Shane Christopher Buczek's CHAPTER 13 BANKRUPTCY COURT PETITION dated July 19, 2019**)

22.     On **September 16, 2019,** purported claimant and/or purported third-party debt collector KeyBank, **without** proper verified proof and lawful standing filed into Shane Christopher Buczek's Chapter 13 Bankruptcy Case a **PROOF OF CLAIM dated September 16, 2019**, (as determined by KeyBank's failure to produce its verified evidence of its legal standing as Holder-In-Due-Course of the original promissory note to Deborah Ann Buczek per Deborah Ann Buczek's **third QWR NOTICE OF DEFAULT (NOD)**) (**See Exhibit "E"**... **QWR #3 NOTICE OF DEFAULT dated April 15, 2015**) thereby KeyBank inappropriately, illegally, and maliciously intentionally filed its wrongful **PROOF OF CLAIM** dated (**See Exhibit "P"**... **PROOF OF CLAIM dated September 16, 2019**) into Debtor Shane Christopher Buczek's Chapter 13 Bankruptcy Court Case.

23.     On **November 27, 2019**, purported claimant and/or purported third-party debt collector KeyBank inappropriately, illegally, and maliciously intentionally filed a **MOTION FOR RELIEF FROM AUTOMATIC STAY dated November 27, 2019**, (**See Exhibit "Q"**... **KeyBank's MOTION FOR RELIEF FROM STAY dated November 27, 2019**) into Shane Christopher Buczek's Chapter 13 Bankruptcy Case without first producing verified evidence of the original promissory note as proof of KeyBank's legal and rightful standing to enforce said original promissory note and KeyBank's purported interest thereof such original promissory note with the intent to cause harm, injury, and loss to Debtor Deborah Ann Buczek with the intent of confiscating, seizing, and in essence unlawfully stealing the Buczek's real property (family

home) with the intended standard agency practice and assistance of the Erie County Court and with the intended standard agency practice and assistance of the United States Western District Bankruptcy Court and with the intended standard agency practice and assistance of the Courts' armed police enforcement officers thereby resulting in attempted conspiracy to commit armed robbery and theft by deception against the Buczek family members and the Buczek's' real property under violations of the R.I.C.O. Act.

24.     Ironically on **December 16, 2019** the Chapter 13 Bankruptcy Court Judge Bucki wrongfully considered purported claimant KeyBank's Motion For Relief From the Automatic Stay in Shane Christopher Buczek's Chapter 13 Bankruptcy Case having not been supported by any admissible verified proof and thereby mistakenly and/or wrongfully issued an inequitable Court **ORDER dated December 16, 2019 (See Exhibit "R"… <u>COURT ORDER</u> <u>TERMINATING STAY dated December 16, 2019</u>)** in error thus granting Relief from the Automatic Stay in favor of purported claimant KeyBank.

25.     To wit any and all statements made by purported claimant KeyBank's counsel FEIN, SUCH & CRANE, LLP's Attorneys whether by oral argument and/or by written brief presented at any time past, present, or future to this Chapter 13 Bankruptcy Court and to the Erie County Court are considered as insufficient for Summary Judgment pursuant to the holding of the <u>Trinsey v. Pagliaro, 229 F. Supp. 647 (E.D. Pa. 1964)</u> case holding as follows…

**"The defendants' motion to dismiss for failure to state a claim unsupported by affidavits or depositions is incomplete because it requests this Court to consider facts outside the record which have not been presented in the form required by Rules 12(b)(6) and 56(c). Statements of counsel in their briefs or argument while enlightening to the Court are not sufficient for purposes of granting a motion to dismiss or summary judgment."** …

and therefore, I Shane Christopher Buczek as the Debtor hereby solemnly object to any and all such arguments, statements, and pleadings made by KeyBank via its representative Attorneys from the FEIN, SUCH & CRANE LLP law firm in both this Chapter 13 Bankruptcy Court Case and in the Erie County Court Case.

## MUTUAL CONSENT SETTLEMENT AGREEMENT AND STIPULATED TERMS

26.     Pursuant to FRCP Rule 67 and 28 USC 2041 and via the Debtor's future filing of a special Motion For Deposit I, Shane Christopher Buczek, the Debtor in this Chapter 13 Bankruptcy Case hereby solemnly proposes to offer in good faith the Debtor's acceptance and tender of special payment for settlement of KeyBank's purported claim... either upon the condition that KeyBank produces a verified proof of claim showing KeyBank being the Holder-In-Due-Course of the original promissory note via the presentment of the original promissory note to be deposited into this Chapter 13 Bankruptcy Court Case under oath and penalty of perjury within 14 Days of receipt of this Motion..., or upon the condition that KeyBank, via its DEFAULT (whether by denial, neglect, or refusal) of failing to produce said requested verified proof, hereby knowingly and voluntarily admits, agrees, and consents to the following stipulated terms.

27.     The Debtor and KeyBank both knowingly and voluntarily mutually agree and consent to admitting that the reason KeyBank has not produced the original promissory note as requested by the Debtor and by the Debtor's Mother Deborah Buczek is because KeyBank is in fact no longer the Holder-In-Due-Course entitled to enforce said original promissory note which is irrefutable evidence of KeyBank's further admission that KeyBank is also no longer the secured creditor of the original promissory note and its security instrument in question;

28.     The Debtor and KeyBank both knowingly and voluntarily mutually agree and consent to KeyBank waiving any and all past, present, and future purported claims related to said original promissory note whether said purported claims have been previously judicially adjudicated in a court of competent jurisdiction or not such as being previously adjudicated in the Erie County Court;

29.     The Debtor and KeyBank both knowingly and voluntarily mutually agree and consent to admitting that Shane Christopher Buczek is the legal and lawful owner of said real property via the lawfully issued and recorded QUITCLAIM DEED;

30.     The Debtor and KeyBank both knowingly and voluntarily mutually agree and consent to admitting that Shane Christopher Buczek, as the legal and lawful owner of said real property, was mistakenly excluded by Judge DiTullio from appropriately joining KeyBank's Foreclosure Action via Shane Christopher Buczek's MOTION FOR JOINDER;

31.     The Debtor and KeyBank both knowingly and voluntarily mutually agree and consent to admitting that at the very same Erie County Court hearing held on **April 26, 2018 (See Exhibit "H"... COURT HEARING TRANSCRIPT dated April 26, 2018 Page 7 of 11, Lines 14 – 25 and Page 8 of 11, Lines 1 – 3)** at which Judge DiTullio wrongfully and inequitably denied Shane Christopher Buczek's Motion For Joinder that Judge DiTullio also mistakenly issued an order for Summary Judgment and for Foreclosure and Sale in favor of KeyBank without KeyBank even filing a Motion For Summary Judgment for it to be considered by the Debtor nor by the Court at said court hearing;

32.     The Debtor and KeyBank both knowingly and voluntarily mutually agree and consent to waiving any and all time limitations for the Debtor and his mother Deborah Ann Buczek to file

an Appeal for the Court Orders previously and wrongfully issued by Judge DiTullio for the Erie

County Court on **April 26, 2018 (See Exhibit "H"... COURT HEARING TRANSCRIPT**

**dated April 26, 2018 Page 7 of 11, Lines 14 – 25 and Page 8 of 11, Lines 1 – 3)** should it be

necessary for either/or both Deborah Ann Buczek and/or Shane Christopher Buczek to proceed

with filing such an appeal;

33.     The Debtor and KeyBank both knowingly and voluntarily mutually agree and consent to

admitting that both Deborah Ann Buczek and the Debtor Shane Christopher Buczek have

devoted and invested a great amount of their personal time in defending against purported

claimant KeyBank's wrongfully filed a FORECLOSURE ACTION against Deborah Ann

Buczek's real property commenced on **January 21, 2015 (See Exhibit "A"... KeyBank's**

**Complaint Pages 9-24 of 61 filed with Erie County Court on January 21, 2015)**;

34.     The Debtor and KeyBank both knowingly and voluntarily mutually agree and consent to

admitting that the Compensatory Use Fee Rate Schedule for the use of the personal time of both

Deborah Ann Buczek and of the Debtor Shane Christopher Buczek is deemed to be at the

scheduled rate of $50.00 per hour and thus far both Deborah and Shane have each invested 5

years @ 2,000 hours per year totaling 10,000 hours total for Deborah and 10,000 hours total for

Shane thus arriving at a present cumulative total of 20,000 hours and a cumulative total

compensatory use fee of $1,000,000.00 (One-Million Dollars);

35.     The Debtor and KeyBank both knowingly and voluntarily mutually agree and consent to

admitting and accepting that the cumulative total of 20,000 personal hours invested by both

Deborah Ann Buczek and by Shane Christopher Buczek and the applicable resulting cumulative

total compensatory use fee of $1,000,000.00 (One-Million Dollars) which is hereby deemed to

be lawfully due, owing, and payable to both Deborah Ann Buczek and to Shane Christopher

Buczek via these stipulated terms is to be forgiven by Deborah Ann Buczek and by Shane

Christopher Buczek upon KeyBank's filing with this Chapter 13 Bankruptcy Court Case and

with the Erie County Court Foreclosure Action a NOTICE OF MISTAKE AND WITHDRAWL

OF UNVERIFIED CLAIM of its mistaken Foreclosure Action and a MUTUAL CONSENT

SETTLEMENT AGREEMENT reflecting the stipulated terms herein and which both notices are

to be executed and signed by KeyBank's authorized Officer and by KeyBank's representative

Attorney(s) from the FEIN, SUCH & CRANE, LLP law firm;

36.     The Debtor and KeyBank both knowingly and voluntarily mutually agree and consent to

admitting that all facts stated herein by the Debtor Shane Christopher Buczek are complete, true,

and correct thusly constituting all such mutually stipulated conditions, facts, and terms as the

MUTUAL CONSENT SETTLEMENT AGREEMENT between the Debtor and KeyBank;

37.     The Debtor and KeyBank both knowingly and voluntarily mutually agree and consent to

admitting that the Debtor may bring this MUTUAL CONSENT SETTLEMENT AGREEMENT

before a Court of competent jurisdiction (Federal or State Court) for the ultimate enforcement of

its stipulated terms if necessary should KeyBank fail to produce within 14 Days KeyBank's

verified evidence of its lawful and rightful standing as Holder-In-Due-Course with the right to

enforce the original promissory note…, or should KeyBank breach or dishonor this MUTUAL

CONSENT SETTLEMENT AGREEMENT in any way, shape, or form;

38.     The Debtor and KeyBank both knowingly and voluntarily mutually agree and consent to

admitting that if the Debtor is forced to bring this MUTUAL CONSENT SETTLEMENT

AGREEMENT before a Court of Competent jurisdiction for its proper adjudication that

KeyBank will pay for all Court, Attorney, Document Preparation, Document Mailing, Document

Service of Process, Legal Research, Compensatory Use Fees, Lodging, Parking, and Travel:

costs, fees, fines, penalties, and other applicable and relevant expenses incurred by all parties for such adjudicative litigation;

39.     The Debtor and KeyBank both knowingly and voluntarily mutually agree and consent to admitting that should KeyBank fail to produce to this Chapter 13 Bankruptcy Court within 14 Days KeyBank's verified evidence of its lawful and rightful standing as Holder-In-Due-Course with the right to enforce the original promissory note…, or should KeyBank breach or dishonor this MUTUAL CONSENT SETTLMENT AGREEMENT in any way, shape, or form that KeyBank and each of KeyBank's Attorney(s) jointly and severally all and/or each further agree to pay both Deborah Ann Buczek and Shane Christopher Buczek treble the amount of the cumulative total balance of compensatory use fees as of today **January 6, 2020** which said compensatory use fees are hereby deemed to be lawfully due, owing and payable to Deborah Ann Buczek and to Shane Christopher Buczek respectively as prescribed herein.

40.     **WHEREFORE,** based upon the above solemnly stated irrefutable verified facts and mutual consent settlement agreement and its stipulated terms it is hereby respectfully requested by the Debtor that a Court Order be issued as follows…

41.     The Debtor hereby respectfully requests that a Court Order be issued ordering that all prior judgments and orders previously issued by this Chapter 13 Bankruptcy Court with regard to KeyBank are rescinded and vacated.

42.     The Debtor hereby respectfully requests that a Court Order be issued ordering that this mutual consent settlement agreement and its stipulated terms constitutes the entirety of the agreement between the Debtor and KeyBank.

43.     The Debtor hereby respectfully requests that a Court Order be issued ordering that

KeyBank is to submit to this Chapter 13 Bankruptcy Court and to the Erie County Court

KeyBank's own **NOTICE OF MISTAKE AND WITHDRAWAL OF UNVERIFIED**

**CLAIM** and KeyBank's own NOTICE OF ACCEPTANCE of this MUTUAL CONSENT

SETTLEMENT AGREEMENT and further ordered that all of these notices are to be signed by

both KeyBank's authorized Officer(s) and by KeyBank's representative Attorney(s) and that

therefore KeyBank's purported claims shall be dismissed with prejudice unless KeyBank

produces it's verified proof of claim within 14 days as requested by the Debtor herein.

44.     All aforementioned irrefutable facts and stipulated terms heretofore stated in good faith

are being solemnly introduced for being entered into the evidence file of this Chapter 13

Bankruptcy Court Case by the Debtor, I, Shane Christopher Buczek under oath and penalty of

perjury as being complete, true, and correct.


                                        Solemnly introduced into the record,

DATE: January 6, 2020              /s/: By:  Shane Christopher Buczek

                                        Shane Christopher Buczek, Debtor Pro-Se

**Your CUSIP Results are as follows:**

**SHANE CHRISTOPHER (DL 120-540-000 [NY])**
**Fidelity Advisor Corporate Bond Fund**
Symbol:                          FCBAX
CUSIP:                           **316146588**

Inception Date:                  5/11/2010
Net Assets:                      $1,529,703,000.00 as of
                                 6/28/2019
Portfolio Assets:                $1,529,703,000.00 as of
                                 6/28/2019

**A little about the Fund:**

Fidelity Advisor Corporate Bond Fund seeks a high level of current income by investing in investment-grade corporate bonds and other corporate debt securities and repurchase agreements for those securities. The Fund's benchmark is Bloomberg Barclays U.S. Credit Bond Index.



# Exhibit "B"

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

| IN RE: | Chapter: 13 |
|---|---|
| Shane Christopher Buczek | Case No. 1-19-11441-CLB |
| Debtor. | ATTORNEYAFFIRMATION |

TO THE HONORABLE CARL L. BUCKI,
UNITED STATES BANKRUPTCY JUDGE:

## APPLICATION

I, David P. Case, Esq., am a Partner with the law office of Fein Such & Crane, LLP,

Attorneys for KeyBank National Association ("Secured Creditor", "Creditor", or "Movant"). As

such, based on the information provided by Movant on the circumstances contained herein, I

affirm the following under penalty of perjury:

## I. **RELIEF REQUESTED**

1. I make this affirmation pursuant to:

(a) Federal Bankruptcy Rule of Procedure Rule 11 U.S.C. § 362(d)(1) in support of this

application modifying the automatic stay pursuant to 11 U.S.C. § 362(a), to exercise all rights

available under applicable law with respect to its interest in certain Property located 7335 Derby

Rd, Derby, NY 14047 (the "Property"), and

(b) Pursuant to 11 U.S.C §362(d)(4)(B), for *in rem* relief from the automatic stay

imposed in subsequent cases under 11 U.S.C § 362(a), such that any and all future filings under

the Bankruptcy Code during the next two years by the debtor herein, Shane Christopher Buczek,

(the "Debtor"), or any other person or entity with an interest in the Property shall not operate as a

stay to Movant enforcement of its rights in and to the Property and;

the property as well as commencing any other proceeding that may be required for Movant to

protect itself or its interest in response to any non-judicial filings or acts initiated by the debtor;

and

    (4) further relief as to the Court deems just and proper.

Dated: November 27, 2019

                                       FEIN, SUCH & CRANE, LLP
                                       Attorneys for Movant

                        By: _____
                            David P. Case
                            (DC-1001)
                            28 EAST MAIN STREET, SUITE 1800
                            ROCHESTER, NY 14614
                            585-232-7400

To: Shane Christopher Buczek
Albert J. Mogavero.
U.S. Trustee

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

Date: December 16, 2019
Time: 11:30am

IN RE:

Shane Christopher Buczek

Debtor.

Chapter: 13

Case No. 1-19-11441-CLB

NOTICE OF MOTION

PLEASE TAKE NOTICE that upon the annexed application of KeyBank National Association., ("Movant"), Secured Creditor, by its attorneys, Fein Such & Crane, LLP., the undersigned will move before the Honorable Carl L. Bucki, United States Bankruptcy Judge, at the United States Bankruptcy Court, Western District of New York, Robert H. Jackson U.S. Courthouse, 2 Niagara Square, Orleans Courtroom, Buffalo, NY 14202, on December 16, 2019 at 11:30 in the forenoon of that day, or as soon thereafter as counsel can be heard for:

(1) an Order modifying the automatic stay pursuant to 11 U.S.C. § 362(a), to exercise all rights available under applicable law with respect to its interest in certain Property located at 7335 Derby Rd, Derby, NY 14047 (the "Property");

(2) Pursuant to 11 U.S.C §362(d)(4)(B), for *in rem* relief from the automatic stay imposed in subsequent cases under 11 U.S.C § 362(a), such that any and all future filings under the Bankruptcy Code during the next two years by the debtor herein, Shane Christopher Buczek, (the "Debtor"), or any other person or entity with an interest in the Property shall not operate as a stay to Movant enforcement of its rights in and to the Property;

(3) Pursuant to 11 U.S.C. §§ 105(a), 362(d) and 1307(c) and Fed. R. Bankr. P. 4001, Movant hereby submits this motion (the "Motion") seeking entry of an order dismissing the above-captioned bankruptcy case of debtor, Shane Buczek ("Debtor") with a bar to re-filing, for Debtor's bad faith or, in the alternative, granting Secured Creditor relief from the automatic stay to complete ongoing proceedings in New York State County Court related to the foreclosure of

(c) Pursuant to 11 U.S.C. §§ 105(a), 362(d) and 1307(c) and Fed. R. Bankr. P. 4001, Movant hereby submits this motion (the "Motion") seeking entry of an order dismissing the above-captioned bankruptcy case of debtor, Shane Buczek ("Debtor") with a bar to re-filing, for Debtor's bad faith or, in the alternative, granting Secured Creditor relief from the automatic stay to complete ongoing proceedings in New York State County Court related to the foreclosure of the property as well as commencing any other proceeding that may be required for Movant to protect itself or its interest in response to any non-judicial filings or acts initiated by the debtor.

(d) Further relief as to the Court deems just and proper.

## II. BACKGROUND

### A. RELEVANT FORECLOSURE PROCEEDINGS IN STATE COURT.

2. Movant is a banking corporation with an office for the transaction of business at KeyBank, N.A., 4910 Tiedeman Road, Brooklyn, OH 44144.

3. On October 7, 2008, Deborah Buczek obtained a home equity line of credit in the amount of $50,000, which was memorialized by Deborah Buczek's execution of a Key Equity Options Agreement (the "HELOC Agreement," a copy of which is attached as Exhibit "A"). To secure repayment of the HELOC Agreement, Deborah Buczek executed a Home Equity Line of Credit Mortgage (the "Mortgage," a copy of which is attached as Exhibit "B") giving KeyBank a security interest in real property known as 7335 Derby Road, Derby, New York ("Property"). The Mortgage was (and shall remain until foreclosure sale) a second mortgage lien on the Property.

4. Movant, the originator of the loan, continues to be the holder and owner of the aforementioned HELOC Agreement and Mortgage.

5. Deborah Buczek failed to make payments when due and as required by the HELOC Agreement and Mortgage. As a result, in 2015, KeyBank initiated a foreclosure action

against Deborah Buczek in the Erie County Court (the "State Court") captioned *KeyBank, N.A. v. Deborah A. Buczek, et al.*, Erie County Court Index No. 2015600022 (the "Foreclosure Action").

6.     In response to the Complaint in the foreclosure action, Deborah Buczek moved to dismiss the foreclosure. The Erie County Court (Franczyk, J., presiding) denied the motion. Notice of Entry was served on May 11, 2016. A copy of the County Court's Decision and Order, with Notice of Entry and proof of service thereon, is annexed hereto as Exhibit "C".

7.     While the motion to dismiss was pending, on April 20, 2015, a man representing himself to be Dan Buczek, Deborah Buczek's husband, called and spoke with me on April 17, 2015. Mr. Buczek said that he and his wife were organizing a sale of the premises and that Bank of America was financing the purchase. He told me that Bank of America would not finance the loan unless they knew KeyBank was in possession of the original note and that I had to send him the original note. When I told him that I would not discuss points of law or legal arguments with a non-attorney over the phone and asked him to have the attorney representing Bank of America contact me, he became belligerent, started shouting at me, started shouting profanities at me, threatened to sue my firm, and would not allow me to speak. Despite his shouting over me, I bid him good day and hung up the phone.

8.     On August 21, 2015, a man called on this matter and spoke with a paralegal in my litigation department. He told her that we are all criminals, we were running a "huge scam", that we "will be going to hell", and he encouraged the aforementioned paralegal to get out of this job.

9.     On September 25, 2015, a man representing himself to be Mr. Buczek called our firm and spoke with one of our paralegals. Mr. Buczek initially represented himself as a lender from a bank. He ultimately admitted that he was Buczek's husband, called me and one of my partners "modern crooks" and told our paralegal that "you don't have a brain in your head" and hung up on our paralegal.

10.     On October 26, 2015, I came into my office with a message that a "Mr. Seaman" called from the New York State Department of Financial Services (New York's financial regulator) on this matter. I called Mr. Seaman back. He advised me that he did not call my firm nor did he leave a message for me. He advised me that he had not touched this matter since he forwarded a complaint he received from Buczek to the Consumer Finance Protection Bureau. I asked Mr. Seaman if it was possible or likely if one of the Buczeks called my office impersonating him. Mr. Seaman did confirm that he did write them a letter in response to the complaint to the Department of Financial Services so they had his name and the call center's direct phone number. He confirmed that his file was no longer active with the Department of Financial Services.

10.     On October 27, 2015, Deborah Buczek filed a Consumer Finance Protection Bureau (hereinafter CFPB) complaint against my firm. A copy of the complaint is annexed hereto as Exhibit "D".

11.     Attached to the CFPB complaint was a grievance complaint to the 7th Judicial District's Attorney Grievance Committee. A copy of Buczek's complaint to the Grievance Committee is annexed hereto as Exhibit "E".

12.     I responded to the CFPB complaint. Nothing further came of it. Presumably, the CFPB closed its file with no further action required. Also, nothing came from Deborah Buczek's first complaint to the Grievance Committee.

13.     While the foreclosure action was pending in State Court, on August 7, 2017, Deborah Buczek executed a quitclaim deed of property (the "Deed," a certified copy of which is

attached as Exhibit "F")[1] to the Debtor for consideration of $1,000 (the "Transfer").[2]  See Doc. 1, 14-16.

15. The Transfer was for little consideration. Conveyance records from the Clerk's Office of Erie County, New York, reflect a $1,000.00 "sale" price despite the valuation of $290,000. See, Exhibit "F". Indeed, even Debtor recognizes the value of the Property is far in excess of $1,000 and lists the Property with the value of the as $290,000 in his schedules. *See* Doc. 1, Schedule A/B.

15. On May 16, 2018, the State Court issued an Order Confirming Referee Report and Judgment of Foreclosure and Sale (the "Foreclosure Judgment," copy of which is attached as Exhibit "G"). The Foreclosure Judgment said, in relevant part: (1) the Property should be sold; and (2) after paying certain other amounts, KeyBank is entitled to payment of $59,965.92 (which included interest from March 6, 2014 to January 14, 2018) together with any advances as provided for in the HELOC Agreement and Mortgage, $2,482 for costs and disbursements, and $4,950 for attorneys' fees. *Id.*

16. Shortly after granting Judgment of Foreclosure and Sale, Deborah Buczek moved to dismiss the foreclosure action. A copy of her second motion to dismiss, without voluminous exhibits totaling 157 pages, is annexed hereto as Exhibit "H". KeyBank, through counsel, opposed the motion. A copy of the Opposition, without exhibits, is annexed hereto as Exhibit "I".

17. Contemporaneously, Shane Christopher Buczek sued two attorneys of Counsel's firm[3] in Rochester City Small Claims Court. The small claims action was dismissed. A copy of

---

[1] The Deed was recorded on August 14, 2017, in the Office of the Erie County Clerk at Book Type D, Book 11317, Page 2562 and assigned reference number 17140998.
[2] The Property is assigned tax parcel number 144489.206.040-2-22 in the records of Office of the Auditor of Erie County, New York. The legal metes and bounds description of the Property is incorporated within the aforesaid Deed.

the Decision and Order with Notice of Entry and proof of Service thereon is annexed hereto as Exhibit "J".

18.     In response to Deborah Buczek's motion to dismiss and a motion from Shane Christopher Buczek to join the action, the State Court rendered its decision on the record. A copy of the transcript was annexed to the Court's Order denying the motion, which is annexed hereto as Exhibit "K".

19.     The Court, *sua sponte* substituted out the Referee who quit based upon being sued and grieved by the Buczeks. A copy of the Order substituting out the first appointed Referee because he was sued and grieved by the Buczeks is annexed hereto as Exhibit "L".

## B.     PRIOR BANKRUPTCY AND ADVERSARY PROCEEDINGS

20.     Two months after the Foreclosure Judgment, but before the Property went to sale, Deborah Buczek filed a skeleton Chapter 13 Voluntary Petition in the United States Bankruptcy Court for the Western District of New York ("Bankruptcy Court") on July 20, 2018, case number 1-18-11401-CLB ("2018 Petition").[4]

21.     On August 20, 2018, Deborah Buczek filed her schedules. On her Schedule C, she listed the Property as exempt with the value of the claimed exemption as $50,000. 18-11401 Doc. 33. Similarly, she listed the Property as hers on her Schedule A. 18-11401 Doc. 33.

22.     On August 27, 2018, in Deborah Buczek's bankruptcy case, KeyBank filed a proof of claim (the "KeyBank POC," a copy of which is attached as Exhibit "M") in the amount

---

[3] Your Declarant was also advised by an Attorney from Rosicki & Rosicki & Associates, who was prosecuting the foreclosure of the first-lien mortgage at that time, that Shane Christopher Buczek sued one of their attorneys, Christine Fox, Esq., in Batavia City Small Claims Court, which was dismissed. The Court-Appointed Referee, Louis Cacciato, also advised me that Buczek sued him in small claims court one of the Town Courts near Buffalo, Buczek sent a grievance against the Referee to the Grievance Committee, and that he was going to refuse to continue the appointment because as a Court appointed Referee, he should not have to suffer such abuse and harassment.

[4] Citations to the docket of Deborah Buczek's bankruptcy proceeding shall appear as "18-11401 Doc. ___."

of $62,918.93, of which $23,474.79 constituted pre-petition[5] arrearage. *See* Exhibit M. Although Deborah Buczek objected to the KeyBank POC, the Court overruled those objections at a hearing on April 8, 2019. 18-11401 Doc. 139. Deborah Buczek has appealed that decision. 18-11401 Doc. 202. None of the allegations raised by Deborah Buczek in the objection had any merit, and many were attempts to compel this Court to sit in appellate review of the State Court by raising issues decided in the Foreclosure Action.

23. Deborah Buczek's Chapter 13 Plan (the "DB Plan"; 18-11401 Doc. 42) failed to reference the first mortgage or KeyBank's junior Mortgage on the Property. Instead, in Section 3.2 of the DB Plan, Deborah Buczek requested valuation for purposes only of determining the secured portion of the New York State Department of Taxation's lien. 18-11401 Doc. 42. The DB Plan called for payment of a mere $500 per month, which was insufficient to pay the amount due monthly to the first lienholder, Seterus, Inc. (as sub-servicer for Federal National Mortgage Association) ("Fannie Mae"), let alone KeyBank. Consequently, under the DB Plan, KeyBank would receive nothing on account of its second mortgage lien while any equity in the Property diminished by the growing first lien debt that Deborah Buczek's $500 per month payment would be unable to amortize. Even assuming the Fannie Mae lien were expunged and KeyBank received all of the DB Plan payments, the DB Plan still would fall short of the regular monthly payments due to KeyBank and would fail to cure the arrearage, all at odds with 11 U.S.C. §§ 1322(b)(2) and 1325(a)(5).

24. After filing the 2018 Petition and the DB Plan, Deborah Buczek continued her years-long pattern of failing to pay KeyBank. As a result, on March 4, 2019, KeyBank filed its Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) & (2) (the "Stay Relief

---

[5] That is, prior to July 20, 2018. Since that time KeyBank has still received absolutely no payments from either debtor and that arrearage has substantially increased.

Motion," 18-11401 Doc. 105) so that KeyBank could exercise its rights under state law and complete the sale of the Property pursuant to the Foreclosure Judgment. On April 1, 2019, the Bankruptcy Court held a hearing on the Stay Relief Motion and issued an Order Terminating the Automatic Stay (the "Order Terminating Stay," 18-11401 Doc. 126).

25.     On April 9, 2019, Deborah Buczek filed the "Emergency Motion for Reconsideration Requiring Emergency Injunction and Temporary Restraining Order (F.R.B.P. 8002 & 9024)" (the "Motion for Reconsideration," 18-11401 Doc. 134 (as amended by 18-11401 Docs. 142 and 144)).     On April 22, 2019, the Bankruptcy Court denied the Motion for Reconsideration, prompting another frivolous appeal. *See* 18-11401 Doc. 148. Thereafter, the Property was originally scheduled for foreclosure sale to be held on April 29, 2019. See 18-11401, Transcript of April 22, 2019, Hearing at 21.

26.     While contesting the Order Terminating Stay in her main bankruptcy case, Deborah Buczek also initiated an adversary proceeding on April 8, 2019, Adv. Proc. No. 1-19-01008-CLB.[6] On May 7, 2019, she filed the "First Amended Adversarial Complaint (Jury Trial Demanded) FRCP Rule 38 & FRBP Rules 9015 & 7001" (the "Complaint," 19-01008 Doc. 7) alleging ill-defined wrongdoing on the part of various individuals and entities including KeyBank. Lacking clarity, the Complaint failed to delineate the actual causes of action asserted against KeyBank. Nonetheless, it was clear from the face of the Complaint that Deborah Buczek was attempting to re-litigate the issues that had already been fully and finally resolved by the State Court in the Foreclosure Action.

27.     On June 21, 2019, this Court dismissed the Complaint. 19-01008 Doc. 61. Deborah Buczek has appealed that decision as well. 19-01008 Doc. 85.

C.     **THE ABUSE CONTINUES WITH THIS LATEST PROCEEDING**

28. On the eve of the rescheduled foreclosure sale, and as the next step in the Buczek family scheme to wrongfully delay the exercise of KeyBank's rights, Debtor, Shane Christopher Buczek, filed for bankruptcy on July 19, 2019.

29. The skeletal voluntary petition (Doc. 1) and largely blank Schedules and Statement of Financial Affairs ("SOFA") (Docs. 46 and 48, respectively) are indicative of Debtor's true intentions. For example, Debtor's SOFA reports no sources of income from employment or operating a business, calling into question his eligibility for filing chapter 13 in the first place. *See* 11 U.S.C. § 109(e) ("[o]nly an individual with regular income . . . may be a debtor under chapter 13 of this title.") On Schedule I, Debtor reports only $572.12 in other government assistance.

30. The only secured creditor listed on Schedule D is "Shane-Christopher Buczek, of 435 Creekside Drive Suite 200" purportedly holding an unliquidated claim secured by 7335 Derby Road in the amount of $1,000,000. Doc. 43. There are only four unsecured creditors appearing on Schedule F: the Erie County Water Authority for $300, the U.S. Department of Justice for $8,411.96, Discover Financial Services for $17,331.35, and Credit First National Association for $1,460.42. Doc. 46.

31. The Debtor's proposed plan (the "SB Plan") proposes monthly payments of $95 for 60 months. Doc. 50. Like the facially defective DB Plan, no secured claims will be paid through the SB Plan either. *Id.*

32. It is plain from the Schedules, SOFA, and SB Plan that KeyBank's progress in the Deborah Buczek bankruptcy litigation and the Foreclosure Judgment, particularly the impending sale, prompted this filing. Certainly, no good faith basis for the bankruptcy can be discerned from the Schedules, SOFA, or SB Plan. The entire intention is not to restructure the obligations

---

[6] Citations to the docket of this adversary proceeding shall appear as "19-01008 Doc. __."

owed to legitimate creditors like KeyBank; rather the intention is to subject those creditors to expensive and wasteful litigation[7] in the hopes of avoiding paying those creditors anything at all.

33.     After Shane Christopher Buczek filed the current Bankruptcy, Deborah Buczek sent a second grievance complaint against me to the Grievance Committee for the Seventh Judicial District. On this second time, the Grievance Committee sent me a copy of the complaint with a confidential letter stating that Staff Counsel was unable to determine any basis for involvement by the Grievance Committee. A copy of Buczek's second attempt to grieve me is annexed hereto as Exhibit "N".

34.     Also, around the same time, Debtor and/or his cohorts made a series of harassing phone calls leaving voicemails sufficient to completely fill my voicemail started around July 5, 2019. The first voicemail was left at 2:15pm. Then ten voicemails (each approximately 5-10 minutes) were left from 11:51pm through 12:59am. Then, a twelfth such voicemail was left at 11:56pm on July 6.

35.     Another round of voicemails (five in total) of an internet-based radio program were left starting from July 13, 2019, at 12:20am through the last one starting at 12:57am.

36.     While, at first, I could only suspect that the lengthy and irrelevant excerpts from an internet-based radio show was from debtor or his cohorts, my suspicion was confirmed when, on the voicemail left on July 13, 2019 at 12:49am, the internet radio show was discussing subject matter jurisdiction, clearly heard in the background and caught by the microphone: "Hear that, Shane?"

---

[7] Indeed, Shane Buczek's most recent filing, suggesting that a KeyBank employee should go to prison for twenty years because she filed a notice of payment change in this case solely as a result of the confusion the Buczek family itself created with its fraudulent transfers of the Property (*see* 18-11401 Doc. 58, p. 16), is the type of patently frivolous and abusive conduct this Court and KeyBank may continue to expect if this case is not dismissed.

37.     These sorts of harassing voicemails continued on July 20, 2019, when three more messages of the same internet radio program were left starting at 12:42am. On August 3, 2019, another two voicemails of the same internet radio program were left at 12:24am and 12:30am.

38.     Even when mailing our firm copies of papers, that Shane Christopher Buczek filed in this bankruptcy in relation to the first-in-position mortgagee's application to lift the stay, Shane Christopher Buczek continued to harass and malign my firm and/or its attorneys by adding into the mailing in a picture of the Three Stooges where your declarant's first name is written on Curly's forehead, Craig Beideman's first name is written on Moe's cheek, and Mark Broyles's first name is written on Larry's forehead. The self-evident implication and *ad hominem* attack upon this firm and its lawyers compound the bad faith behavior of the Buczek family. A copy of the full mailing received from Shane Christopher Buczek is annexed hereto as Exhibit "Q".

## LEGAL ANALYSIS

A.      GROUNDS TO DISMISS CHAPTER 13 BANKRUPTCY PROCEEDING

### 1. THE GOOD FAITH STANDARD

39.     A Chapter 13 case may be dismissed, after notice and hearing, "for cause, including" several enumerated factors. 11 U.S.C. § 1307(c). The Bankruptcy Code requires a debtor proposing a plan for confirmation to exercise "good faith" in filing. 11 U.S.C. § 1325(a)(3). A good faith determination focuses on the "totality of the circumstances" in determining whether the debtor displayed "honesty of intention," and "requires a bankruptcy court to 'inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise [filed] his Chapter 13 [petition or] plan in an inequitable manner.'" *In re Klevorn,* 181 B.R. 8, 10 (Bankr. N.D.N.Y. 1995); *see In re Johnson,* 708 F.2d 865, 868 (2d Cir. 1983) (citations omitted). A bankruptcy court's determination of "bad faith" is a question of fact which the bankruptcy court may determine in the first instance. *See In re*

*Barbieri*, 226 B.R. 531, 535 (Bankr. E.D.N.Y. 1998), *rev'd on other grounds*, 199 F.3d 616 (2d Cir. 1999); *United States Fidelity & Guar. Co. v. DJF Realty & Suppliers*, 58 B.R. 1008, 1011 (Bankr. N.D.N.Y. 1986).

40.      Pursuant to 11 U.S.C. § 1307(c), a bankruptcy court may dismiss a Chapter 13 case "for cause." Courts have held that bad faith in filing for Chapter 13 relief constitutes "cause" under § 1307 sufficient to warrant a dismissal. *See In re Setzer*, 47 B.R. 340, 347 (Bankr. E.D.N.Y. 1985) (holding that Debtor's failure to present a confirmable Chapter 13 plan evidenced bad faith and provided grounds for dismissal with cause); *In re Charles D. Eatman*, 182 B.R. 386, 392 (Bankr. S.D.N.Y. 1995) ("although 11 U.S.C. § 1307(c) does not expressly equate bad faith with 'cause,' the bankruptcy court can also dismiss the petition or convert the case under section 1307(c) if the debtor files his petition in bad faith"); *In re Prud'Homme*, 161 B.R. 747, 749 (1993).

41.      Courts have found bad faith in Chapter 13 cases in the following circumstances: 1) the debtor has few or no unsecured creditors; 2) the debtor has previously filed for bankruptcy; 3) the debtor's pre-petition conduct was improper; 4) the debtor's petition allows him or her to evade court orders; 5) the debtor has few debts to non-moving creditors; 6) the petition was filed on the eve of foreclosure; 7) the foreclosed property was the sole or major asset of the debtor; 8) no possibility exists for reorganization; 9) the debtor's income is insufficient to operate; 10) there is no pressure from non-moving creditors; 11) reorganization essentially involves the resolution of a two-party dispute; and 12) the debtor filed solely to obtain an automatic stay. *See In re Patricia Jean Powers*, 135 B.R. 980, 981 (Bankr. C.D. Cal. 1991) (citing *In re Grieshop*, 63 B.R. 657 (Bankr. N.D. Ind. 1986)). Courts also consider whether: 1) the petition contains deficiencies or inaccuracies meant to mislead the court; 2) payments are fundamentally unfair in timing or amount; 3) debtor had an improper motive in seeking relief;

and 4) under the "totality of the circumstances," the debtor has abused the provisions, purposes, and/or spirit of Chapter 13. *See In re Prud'Homme,* 161 B.R. 747, 749-50 (Bankr. E.D.N.Y. 1993); *In re Powers,* 135 B.R. at 992-93 (citations omitted); *In re Johnson,* 708 F.2d at 868.

42.     The debtor bears the burden of proving that the bankruptcy filing was made in good faith. 11 U.S.C. § 362(g).

## 2.     DEBTOR CANNOT MEET THE GOOD FAITH STANDARD

43.     The facts set forth *supra* provide ample evidence of Debtor's bad faith. The Debtor's petition allows him and his mother to evade the Foreclosure Judgment. The foreclosed Property is the only major asset of the Debtor—an asset he only acquired for (supposedly) $1,000 while Deborah Buczek's foreclosure proceeding was in progress. The Debtor's income is insufficient to fund any plan that would be fair to parties holding an interest in the Property. The fundamental issue in Debtor's case, and Deborah Buczek's case, and all the related frivolous litigation they have jointly worked to spawn, the abusive and intimidating behavior directed to attorneys of this firm and the Court-Appointed Referee, is whether the Buczeks are entitled to continue to live in the Property, as they have for years now, without paying a penny to bona fide creditors despite having borrowed substantial sums secured with valid mortgages against the Property.

44.     The dispute is, in essence, two-party (secured creditor versus Buczek family) that the State Court has already resolved. Debtor is merely Deborah Buczek's proxy—a repository for the Property that she has used here in the hopes of frustrating KeyBank's Foreclosure Judgment. Deborah Buczek's and the Debtor's conduct consists of a pattern and practice of: frivolous litigation; unsupported (and unsupportable) allegations of a broad conspiracy among lenders and the state and federal governments to wrongfully deprive the Buczeks of a house they think they are entitled to have for free; efforts to re-litigate unfavorable decisions and spread

their abusive litigation tactics to appellate proceedings; and at least one fraudulent—that is nevertheless still subject to KeyBank's mortgage[8]—transfer among insiders to hamper and evade KeyBank's foreclosure efforts.

45.     The conduct in Deborah Buczek's bankruptcy evidences the pattern.     After KeyBank was granted relief from stay, Deborah Buczek filed "emergency" papers, seeking temporary restraining orders without offering any bond and no less than three appeals without posting a supersedeas bond.  She repeated, unsuccessfully, a multitude of arguments and theories lacking support in fact and law.  The entire purpose of this proceeding is to simply repeat the wasteful process seen in the Deborah Buczek bankruptcy case.

### C. GROUNDS FOR RELIEF FROM STAY

### 1. GROUNDS FOR *IN REM* RELIEF UNDER 11 U.S.C. § 362(d)(4)

46.     KeyBank also seeks *in rem* relief under 11 U.S.C. § 362(d)(4).  A lack of good faith is also "cause" sufficient to annul the automatic stay under § 362(d). *In re Burton*, 195 B.R. 588, 592 (Bankr. W.D.N.Y. 1996).

47.     The State Court and Bankruptcy Court litigation and the unauthorized transfer of the Property provides a reasonable basis for this Court to infer that this bankruptcy petition filed pro se was part of a scheme to delay, hinder or defraud KeyBank.

48.     11 U.S.C. § 362(d)(4) provides in pertinent part:

. . . after notice and a hearing, the court shall grant relief from stay.

. . .

---

[8] The New York law codifying *lis pendens* provides that a plaintiff in an action "in which the judgment demanded would affect the title to, or the possession, use or enjoyment of real property, "may file a notice of pendency with respect to the real property that is the subject of the action. *See* N.Y. C.P.L.R. 6501. Filing of the notice of pendency effects constructive notice of the action: "A person whose conveyance or incumbrance is recorded after the filing of the notice is bound by all proceedings taken in the action after such filing to the same extent as a party." *Id.*; *see also Diaz v. Paterson*, 547 F.3d 88, 90 (2nd Cir. 2008).  As at common law, "[t]he notice of pendency does not itself actually restrain transfer of the property, as an incumbrance or a lien: it merely provides notice that an action is pending that may affect title to the property." *Diaz*, 547 F.3d at 90.

(4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—

(A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

(B) multiple bankruptcy filings affecting such real property.

If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

11 U.S.C. § 362(d)(4).

49.     To obtain relief under § 362(d)(4), the moving party has the burden of proving that the current filing by the Debtor "is part of a scheme, that the scheme involved the transfer of real property or multiple filings, and that the object of the scheme is to hinder, delay, or defraud" the moving party. *In re Lemma*, 394 B.R. 315, 323 (Bankr. E.D.N.Y. 2008).

50.     Courts have considered several factors in determining whether multiple filings raise an inference of intent to hinder, delay or defraud secured creditors, including (1) debtor's failure to make post-petition payments on the loan, (2) debtor's failure to file the required documents and information necessary to prosecute the bankruptcy, and (3) the timing and the sequence of the filings. *See In re Montalvo*, 416 B.R. 381, -386-87 (Bankr. E.D.N.Y. 2009).

51.     When evaluating whether to grant relief under § 362(d)(4), "the mere timing and filing of several bankruptcy cases is an adequate basis from which a court can draw a reasonable inference that the filing of a subsequent case was part of a scheme to hinder, delay, and defraud creditors." *In re Blair*, 2009 Bankr. LEXIS 4195, 63 Collier Bankr. Ca. 2d (MB) 513 (noting that each filing occurred on the eve or shortly before significant events affecting the property at

issue and consequently granting *in rem* relief). In addition, when debtors "have evinced no true intention to reorganize their financial affairs . . . but [r]ather they have engaged in serial filings to thwart the efforts of [a secured creditor] to exercise its lawful rights under state law . . . [t]he serial filings are evidence of bad faith, and evidence of the fact that [the debtors] are abusing the bankruptcy process." *In re Montalvo*, 416 B.R. 381, 385-86 (Bankr. E.D.N.Y. 2009) (granting *in rem* relief while observing that the various cases filed between the present debtor and co-obligor were dismissed for failure to comply with filing requirements).

52.     The timing and sequence of the unauthorized transfer of the Property, the pro se filing of Deborah Buczek's petition and the pro se filing of the Debtor's petition "allows the Court to draw a permissible inference . . . that the instant petition [is] part of a scheme of Debtor to delay, hinder, and defraud" KeyBank. *In re Montalvo*, 416 B.R. at 387; *In re Everton Aloysius Sterling*, 543 B.R. 385 (Bankr. S.D.N.Y. 2015).

### 2. IN THE ALTERNATIVE, GROUNDS FOR RELIEF, WITH PREJUDICE, PURSUANT TO 11 U.S.C. § 105(a)

53.     In the alternative, if this Court finds that the fact pattern outlined herein is not the kind of conduct that would meet the pre-requisites as outlined in 11 U.S.C. § 362(d)(4), then it is respectfully submitted that based on the foregoing facts that KeyBank asks this Court not only to modify and terminate the automatic stay, but, in accordance with Section 105(a), order that in the event of any future filing under Title II of the U.S. Code by the Debtor and/or any other person or entity either with an interest and/or claiming an interest in the Property within a period of the next 180 days, measured from the entry date of an order granting KeyBank the relief sought herein, shall not operate as an automatic stay against KeyBank.

54.     As set forth in detail above, KeyBank's enforcement of its rights in the Property have been unnecessarily protracted by litigation in the State Action, by the Transfer of the

Property, by Deborah Buczek's bankruptcy filed pro se, and by the instant bankruptcy petition filed pro se and litigation causing KeyBank to suffer severe prejudice.

55.     Therefore, it is respectfully requested that this Court enter an order which provides that any future bankruptcy filings by the Debtor, Deborah Buczek, and/or any other person or entity either with an interest and/or claiming an interest in the Property within a period of the next 180 days, measured from the entry date of an order granting KeyBank the relief sought herein, shall not operate as an automatic stay against KeyBank, its successors and/or assigns.

56.     Further, insofar as the ramblings of the Buczeks have implicated a possible abuse of non-judicial filings including but not limited to unilateral UCC-1[9] filings, it is respectfully requested that relief from the stay extend to KeyBank and their attorneys taking judicial action to nullify or invalidate any other extra-judicial actions that the debtor had taken or takes against KeyBank or any of its attorneys.

57.     This is not a garden-variety chapter 13 case, filed for the purpose of obtaining a fresh start. Rather, this is an orchestrated effort to needlessly increase the expense of KeyBank in enforcing its rights and attempt to harass and intimidate KeyBank's attorneys in an attempt to drive a wedge into that attorney-client relationship. Deborah Buczek has, over the course of the last several years, used assorted means of passive resistance, fraudulent transfer and delay tactics to avoid the inevitable, lawful outcome of her failure to pay her mortgage. This bankruptcy is just the latest, logical step in an ongoing progression of misconduct, but it is an abuse of the legal system that this Court should not countenance. No legitimate objective is accomplished with this bankruptcy; the aim is merely to slow and injure KeyBank. Consequently, dismissal of the Debtor's bankruptcy case for bad faith is warranted.

58.     Under BAPCPA, a new section of 362(d) was added with the intent "to reduce abusive filings." *In re Muhaimin,* 363 B.R. 159 (Bankr. D. Maryland 2006) *citing* H.R. Rep. 109-31 (I) at 59 (2005). 11 U.S.C § 362 (d)(4)(B) provides that

> "The court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved... multiple bankruptcy filings affecting such real property."

59.     This provision also provides that relief under this section "shall be binding in any other case under this title purporting to affect such real property filed not later then 2 years after the date of the entry of such order by the court...." 11 U.S.C. § 362(d)(4)(B) is appropriate and the automatic stay should be terminated with respect to the Secured Creditor's interest in the Mortgaged Premises.

### 3. IN THE ALTERNATIVE, THE STAY SHOULD BE LIFTED AS TO KEYBANK BECAUSE IT HAS NOT RECEIVED ANY POST-PETITION PAYMENTS ON THE MORTGAGE, NOR IS THERE ADEQUATE PROTECTION OF KEYBANK'S SECURED POSITION.

60.     The April 6, 2014, payment and all subsequent payments are due. Your Affirmant is advised that the last payment tendered was on March 6, 2014, but that payment was reversed due the non-sufficient funds.

61.     The total amount due and owing on the loan, as of November 4, 2019, was $66,970.04 and the sum remains due together with interest which continues to accrue from that date plus any other sums advanced by Movant to protect its security in the Property.

62.     As evidenced ion the Claims Register, listed as Claim 2-1, additional liens exist against the Property including a first-lien mortgage in the amount of $159,101.09.

---

[9] See part of Exhibit "A" in Debtor's Form 101 addendum, annexed hereto as Exhibit "P"

63. No post-petition payment has been tendered to KeyBank since the bankruptcy petition was filed in this matter.

64. Please also note that a BPO dated June 27, 2019, attached hereto as Exhibit "O," demonstrates that the Property has an assessed fair market value of $220,000.00. Evident from the record before this Court, there is no equity in the Property for the Estate because the secured liens (totaling in excess of $226,000.00) and costs of selling the Property (estimated at 10% of the value, or $22,000.00) exceed the value of the Property.

WHEREFORE, it is respectfully requested this Court dismiss this Chapter 13 proceeding in its entirety pursuant to 11 U.S.C. §§ 105(a), 362(d), and 1307(c) and Fed. R. Bankr. P. 4001, with a bar to re-filing, or, in the alternative issue an Order Confirming the absence of the Stay pursuant to 11 U.S.C § 362(c)(4)(A)(ii) with additional relief pursuant to 11 U.S.C. § 362(d)(4)(B) so KeyBank may prosecute its interest in the premises and protect itself from non-judicial filings made by or on behalf of the debtor, wherein any future or subsequent bankruptcy petition filed by or against any person or entity with an interest in the property shall not create or impose an automatic stay as to Movant, its successors, and or assigns with regard to the Property for a period of two (2) years from the entry of the Order and for such other and further relief as the Court may deem just and proper.

Dated: November 27, 2019

FEIN, SUCH & CRANE, LLP
Attorneys for Movant

By: _____
David P. Case, Esq.
(DC-1001)
28 EAST MAIN STREET, SUITE 1800
ROCHESTER, NY 14614
585-232-7400

# Exhibit "C"

ERIE COUNTY CLERK'S OFFICE



County Clerk's Recording Page

Return to:
WEB TITLE
755 JEFFERSON RD STE 300
ROCHESTER, NY 14623

Party 1:
BUCZEK SHANE CHRISTOPHER

Party 2:
WDNY BANKRUPTCY COURT

**Book Type: D  Book: 11355  Page: 2094**
Page Count:    3
Doc Type:      CC ORDER/DECREE
Rec Date:      01/07/2020
Rec Time:      12:47:05 PM
Control #:     2020004220
UserID:        Kristin
Trans #:       20203446
Document Sequence Number

Recording Fees:

| | |
|---|---|
| RECORDING | $35.00 |
| COE CO $1 RET | $1.00 |
| COE STATE $14.25 GEN | $14.25 |
| COE STATE $4.75 RM | $4.75 |

**Consideration Amount:**

| | |
|---|---|
| BASIC MT | $0.00 |
| SONYMA MT | $0.00 |
| ADDL MT/NFTA | $0.00 |
| SP MT/M-RAIL | $0.00 |
| NY STATE TT | $0.00 |
| ROAD FUND TT | $0.00 |

**Total: $55.00**

STATE OF NEW YORK
ERIE COUNTY CLERK'S OFFICE

WARNING – THIS SHEET CONSTITUTES THE CLERK'S ENDORSEMENT REQUIRED
BY SECTION 319&316-a (5) OF THE REAL PROPERTY LAW OF THE STATE OF NEW
YORK. DO NOT DETACH. THIS IS NOT A BILL.

Michael P. Kearns
Erie County Clerk

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------x

IN RE:

Shane Christopher Buczek

                                        Chapter 13

            Debtor.                     Case No.: 1-19-11441-CLB

------------------------------------------------------x

### ORDER GRANTING *IN REM* RELIEF FROM THE AUTOMATIC STAY

Upon the motion (the "Motion") of KeyBank National Association, (with any subsequent successor or assign, the "Movant"), (a) pursuant to 11 U.S.C. §§ 105(a), 362(d), and 1307(c) and Fed. R. Bankr. P. 4001, with a bar to re-filing; or, in the alternative (b) issue an Order confirming the absence of the stay pursuant to 11 U.S.C § 362(c)(4)(A)(ii) with additional relief pursuant to 11 U.S.C. § 362(d)(4)(B) for *in rem* relief from the automatic stay imposed in subsequent cases under 11 U.S.C. § 362(a), such that any and all future filings under the Bankruptcy Code during the next two years by the debtor herein, Shane Christopher Buczek, or any other person or entity with an interest in the Property shall not operate as a stay as to Movant's enforcement of its rights in and to the Property and protect itself from non-judicial filings made by or on behalf of the debtor, wherein any future or subsequent bankruptcy petition filed by or against any person or entity with an interest in real property commonly known as <u>7335 Derby Rd, Derby NY 14047</u> (the "Property") shall not create or impose an automatic stay as to Movant, its successors, and or assigns with regard to the Property for a period of two (2) years from the entry of the Order and for such other and further relief as the Court may deem just and proper; or in the alternative (c) pursuant to 11 U.S.C. § 362(d)(1), from the automatic stay imposed in this case under 11 U.S.C. § 362(a) as to Movant's interest in; and, after due and sufficient service and notice, the Court having held a hearing on the Motion on December 16, 2019, and no opposition having been submitted; and, after due deliberation, the Court having determined that the filing of the Debtor's bankruptcy petition was part of a scheme to delay, hinder, and defraud creditors that has

R + R.
Web Title
755 Jefferson Rd.
        Suite 300
Rochester, N.Y 14623

762-2
004220

involved multiple bankruptcy filings by the Debtor affecting the Property; and good and sufficient cause appearing, including the failure of the Debtor to perform their duties as debtors under the Bankruptcy Code in good faith in multiple bankruptcy cases affecting the Property, it is

~~ORDERED that this bankruptcy is dismissed,~~ *crb*

ORDERED that the automatic stay under 11 U.S.C. § 362(a) is vacated under 11 U.S.C. § 362(d)(1) as to Movant's interest in the Property, to permit Movant to pursue its rights in and remedies in and to the Property as well as for Movant or its attorneys to bring judicial actions to protect themselves from non-judicial filings made by or on behalf of the debtor; and it is further

ORDERED that, under 11 U.S.C. § 362(d)(4), and *provided* that this order is recorded in conformity therewith, this order terminating the automatic stay under 11 U.S.C. § 362(a) as to Movant's interest in the Property shall be binding in any other case filed under the Bankruptcy Code purporting to affect the Property that is filed not later than two years after the date of this order, such that the automatic stay under 11 U.S.C. § 362(a) shall not apply to Movant's interest in the Property.

Dated: DEC 1 0 2019
       Buffalo, New York

                            Honorable Carl L. Bucki
                            United States Bankruptcy Judge, W.D.N.Y

F I L E D
DEC 1 6 2019
BANKRUPTCY COURT
BUFFALO, NY

CERTIFIED COPY
ATTEST: A TRUE COPY
LISA BERTINO BEASER
CLERK OF COURT
By
Deputy Clerk
Original Filed DEC 1 6 2019
SEAL

STATE OF NEW YORK, COUNTY OF ERIE, SS.

I, Michael P. Kearns, Clerk of said County, and also Clerk
of Supreme and County Courts of said County, do hereby
certify that I have compared the annexed copy with the original

Copy of CC order /Decree

filed in my office and that the same is a correct transcript there-
from and of the whole of said original.

WITNESS my hand and seal of said County and Courts on

____7____ day of ___January___ 20_20_

/s/

Michael P. Kearns
County Clerk



**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

In re:

Case No. **1-19-11441- CLB**
Chapter 13

Shane Christopher Buczek
Debtor(s)

## CERTIFICATE OF SERVICE

I, Shane Christopher Buczek certify that on, **January 10th ,2020**, I served true correct copies of:
**NOTICE OF MOTION OF VACATE ORDER OF DECEMBER 16, 2019** To the Office of
the United States Trustee Joseph W. Allen, Esq AND Trustee Albert J. Mogavero Chapter 13
Trustee to the following party in the manner specified for each party below:

**Name and Address of Party**

**Method of Service**

**Trustee**
Albert J. Mogavero
Chapter 13 Trustee
The Dunn Building
110 Pearl Street, 6th Floor
Buffalo, New York 14202-4111
(716) 854-5636

Served by US mail in a postage paid
envelope placed in the care and custody
of the United States Postal Service

Office of the United States Trustee
Joseph W. Allen, Esq
Olympic Towers
300 Pearl Street, Suite 401
Buffalo, New York 14202
Phone: (716) 551-5541
Facsimile: (716) 551-5560

**Mark K. Broyles**
**Dave P. Case**
Non-Party- **disinterest Party**
Fein, Such & Crane LLP
28 East Main Street
Suite 1800
Rochester, New York 14614
585-325-6202

representing

**KEYBANK NATIONAL
ASSOCIATION**
c/o Fein, Such & Crane, LLP
28 East Main Street
Suite 1800
Rochester, NY 14614
(Notice of **disinterest Party**)

**Michael J. Chatwin**
**disinterest Party**
**Nationstar Mortgage LLC d/b/a Mr.**
**Cooper**
Shapiro, DiCaro & Barak, LLC
175 Mile Crossing Blvd.
Rochester, New York 14624
585-247-9000
585-247-7390 (fax)
mchatwin@logs.com
*Assigned: 09/06/2019*

Shapiro, DiCaro & Barak, LLC
175 Mile Crossing Boulevard
Rochester, NY 14624
585-247-9000
585-247-7380 (fax)
ROCbkcourt@logs.com
(Notice of **disinterest Party**)

**Dated: January 10ᵗʰ, 2020**

**Shane Christopher Buczek**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

In re:

**CASE NO. 1-19-11441- CLB**

**Shane Christopher Buczek**

(Filed 07/19/2019)

## ORDER

The Court, having considered the debtors DEBTOR'S MOTION TO VACATE ORDER OF

DECEMBER 16, 2019 AND MUTUAL CONSENT SETTLEMENT AGREEMENT filed by

Shane Christopher Buczek, hereby grants the motion. Where the Debtor has demonstrated good

cause in this matter.

GRANTED

So, ordered.

**Dated:** _____

**BY THE COURT**

_____

Honorable Judge Carl L. Bucki
United States Bankruptcy Court
For the Western District of New York