

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

In re:

Shane Christopher Buczek                    **CASE NO. 1-19-11441-CLB**

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that upon the application of Shane Christopher Buczek ("Movant") will move the Court Hon. Carl L. Bucki on a MOTION SEEKING SANCTIONS AGAINST

Dave P. Case pursuant to the (1) sanctioning Dave P. Case, pursuant to Federal Rules Bankr. Pro. 9011(c) (2) Federal Rules of Civil Procedure Rule 11 (b) and (c) (2) Federal Rules Civil Procedure Rule 5 (3) (enjoying Dave P. Case **for filing a fraudulent notice of mortgage payment (Doc.44) and fraudulent proof of claim (Doc. Claim (1) September 16,2019)**

(4) further relief as to the Law Firm name change to <u>Relin. Goldstein & Crane LLP</u> and to the Court deems just and proper.

Served by CERTIFIED MAIL 7019 1640 0000 8514 6514 PS Form 3811 the undersigned will move at a hearing to be at the United States Bankruptcy Court, Western District of New York, Robert H. Jackson U.S. Courthouse, 2 Niagara Square, 5th Floor Buffalo, New York set for 10:00 AM  July 27, 2020. Buffalo Orleans Courtroom Honorable Carl L. Bucki for an Order DEBTOR'S MOTION FOR SANCTION DECEMBER 16, 2020 proposed by Attorney Dave P. Case. See Federal Rules of Civil Procedure Rule 11 and (c) (2) to Correct and remove the fraudulent proof of claim within (21) days after service CERTIFIED MAIL 7019 1640 0000 8514 6514 PS Form 3811

DATED: May 19th, 2020

/s/: By: _Shane Christopher Buczek_

Shane Christopher Buczek, Debtor Pro-Se

1

**The Following will be served after the (21) Expires from May 18,2020**

See Federal Rules of Civil Procedure Rule 11 (b) and (c) (2) Federal Rules Civil Procedure Rule 5 BY CERTIFIED MAIL 7019 1640 0000 8514 6514 PS Form 3811

To:

Trustee-Chapter 13
The Dunn Building
110 Pearl Street, 6th Floor
Buffalo New York [14202-4111]

**Michael J. Chatwin**
Shapiro, DiCaro & Barak, LLC
175 Mile Crossing Blvd.
Rochester, NY 14624

Office of the United States Trustee
**Joseph W. Allen, Esq**
Olympic Towers
300 Pearl Street, Suite 401
Buffalo, New York 14202

**Dave P. Case**
**Mark K. Broyles**
Fein, Such & Crane LLP
28 East Main Street Suite 1800
Rochester, New York 14614
585-325-6202
585-325-6201 (fax)
mkbroyles@rgcattys.com

**Donald J. Trump**
**45th President of the United States**
**The White House**
**1600 Pennsylvania Avenue NW**
**Washington, DC 20500**

**U.S. Department of Justice**
**William Pelham Barr**
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

**Director Christopher Wray**
FBI Headquarters
935 Pennsylvania Avenue, NW
Washington, D.C. 20535-0001
(202) 324-3000

# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF NEW YORK

In re:                                    **CASE NO. 1-19-11441-CLB**

Shane Christopher Buczek

## MOTION SEEKING SANCTIONS AGAINST Dave P. Case the LAW FIRM OF Relin, Goldstein & Crane LLP 28 East Main St. Ste 1800 Rochester, New York PURSUANT Federal Rules of Civil Procedure Rule 11 (b) and (c) (2) Federal Rules Civil Procedure Ru

1

## Table of Authorities

9 U.S. Code §10 ............................................................................................... 19

9 U.S.C. § 1, 2). Title 18 ................................................................................. 21

9 U.S.C. § 7, 9 .................................................................................................. 20

9 U.S.C. § 9 ...................................................................................................... 20

9 U.S.C. § 10 .................................................................................................... 20

9 U.S.C. § 1-16 ................................................................................................. 19

9 U.S.C. § 10 .................................................................................................... 20

11 USC Section 102 ......................................................................................... 18

11 USC § 101 ......................................................................................... 4, 9, 18

11 USC § 362 ..................................................................................................... 7

11 USCS § 502 ................................................................................................. 12

28 U.S. Code § 1746 ........................................................................................ 22

564 B.R. 190 Un .............................................................................................. 13

888 F.2d 1376 (2d Cir. 1989) .......................................................................... 17

*Credit Corp. v. Yasparro*,
122 F.R.D. 33 (M.D. Fla. 1988) .................................................................. 18

*CTC Imports & Exports v. Nigerian Petroleum Corp.*,
951 F.2d 573 (3d Cir. 1991) ....................................................................... 17

Federal Rules of Civil Procedure Rule 11 ....................................................... 1

*Golden Eagle Distrib. Corp. v. Burroughs Corp.*,
103 F.R.D. 124 (N.D. Cal. 1984) ............................................................... 17

*Green Tree Servicing, LLC v. Wilson*
(In re Wilson), 532 B.R. 486 (S.D.N.Y. 2015) ........................................... 6

*Haines v. Kerner*,
404 US 519, 92 S.Ct. 594,596 30 L.Ed.2d 652 (1972) ............................... 5

*Hall St. Assoc., LLC v. Mattel*,
552 US 576 (2008) ...................................................................................... 19

*HON. ARTHUR M. SCHACKJ. S. C   IndyMac Fed. Bank, FSB v Meisels*
2012 NY Slip Op 51902(U) ....................................................................... 10

*Ideal Instrs., Inc. v. Rivard Instrs., Inc.*,
243 F.R.D. 322 (N.D. Iowa2007) .............................................................. 16

*In re Aiolova, No. 11-10503*
(BRL), 2013 Bankr. LEXIS 4504, 2013 WL 5818893 (Bankr. S.D.N.Y. 2013) ............... 18

*In re Cruse, No. 12-8154-RLM-13*,
2013 Bankr. LEXIS 360, 2013 WL 323275 (Bankr. S.D. Ind. 2013) ................... 6

2

*Itel Containers Int'l Corp. v. Puerto Rico Marine Mgmt., Inc.*,
    108 F.R.D. 96 (D.N.J. 1985) ................................................................................................. 17

*Judin v. United States*,
    110 F.3d 780 (Fed. Cir. 1997) ............................................................................................. 17

*Keating*,
    465 US 1 (1984) .................................................................................................................... 19

*Long v. Quantex Resources, Inc.*,
    108 F.R.D. 416 (S.D.N.Y. 1985) ......................................................................................... 17

*Pavelic & LeFlore v. Marvel Entm't Group*,
    493 U.S. 120 (1989) ............................................................................................................. 15

*Polar Int'l Brokerage Corp. v. Reeve*,
    120 F. Supp. 2d 267 (S.D.N.Y. 2000) ................................................................................. 15

*Poole v. Textron, Inc.*,
    192 F.R.D. 494 (D. Md. 2000) ............................................................................................ 15

Rule 5 .............................................................................................................................................. 5

RULE 11 ....................................................................................................................................... 14

Rule 11 .................................................................................................. 4, 5, 14, 15, 16, 17

Rule 3001 ........................................................................................... 4, 5, 9, 18, 18, 22

Rule 9014 .............................................................................................................................. 7, 11

Rules 37 ......................................................................................................................................... 15

*Schottenstein v. Schottenstein*,
    230 F.R.D. 355 (S.D.N.Y.2005) .................................................................................. 15-16

*Schweitzer v. Testaverde, No. 86 Civ. 2498*,
    1990 U.S. Dist. LEXIS 1672 (S.D.N.Y. Feb.15, 1990) ................................................ 17-18

section 303 ................................................................................................................................... 21

*Southland, 465 US at 10: Prima Paint Corp. v. Food & Conklin Mfg. Co.*,
    388 US 395 (1967) ............................................................................................................... 19

*Turner v. Sungard Bus. Sys., Inc.*,

    91 F.3d 1418 (11th Cir. 1996) ............................................................................................. 17

U.C.C. § 9-208 ............................................................................................................................. 19

*United States v. Kirksey*,

    639 F. Supp. 634 (S.D.N.Y. 1986) ..................................................................................... 17

*Val-Land Farms, Inc. v. Third Nat'l Bank*,

    937 F.2d 1110 (6th Cir. 1991) ........................................................................................ 16-17

§ 157 .............................................................................................................................................. 21

3

COMES NOW Shane Christopher Buczek, the Debtor, appearing pro se, and respectfully moves this court for an order granting sanctions against KeyBank (hereinafter "Key"), a **disinterested person** in this case as defined under 11 USC § 101(14), pursuant to FRBP Rule 3001(c)(2)(C) and (D)(i) and (ii).

In support of this Motion, the Debtor respectfully submits the following for consideration by this honorable court:

## See Rule 11. Signing Pleadings, Motions, and Other Papers; Representations to the Court; Sanctions

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper whether by signing, filing, submitting, or later advocating it an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

(3) the factual contentions have evidentiary support or, if specifically, so identified, will likely have evidentiary **support after a reasonable opportunity for further investigation or discovery; and**

**(4) the denials of factual contentions are warranted on the evidence or, if specifically, so identified, are reasonably based on belief or a lack of information.**

4

**(c) Sanctions.**

**(2) *Motion for Sanctions*.** A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates **Rule 11(b)**. **The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service** or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

1. Debtor is a pro se filer in the above captioned case. As such Debtor requests that this court construe this motion liberally in order that it raises the strongest arguments suggested herein, pursuant to the standards established in **Haines v. Kerner**, 404 US 519, 520, 92 S.Ct. 594,596 30 L.Ed.2d 652 (1972); and, **Burgos v. Hopkins**, 14 F.3d 787, 790(2nd Cir. 1994).

2. If a Proof of Claim is not supported by the requisite documentation, the claim is not presumed to be prima facie valid. In re aiolova, supra at *3.

3. Based upon KeyBank's failure to comply with the requirements of **FRBP Rule 3001** before the filing of the KeyBank's Motions causes a failure in the part of KeyBank to establish to this court that KeyBank's claim is secured.

4. Therefore, it is proper and appropriate that this court deem KeyBank's claims as **invalid** and **unsecured**. (SEE: Sawson v. Western Capital Partners (In re Blixsith) B.R. 154, 202 (Bankr. D. Mont. 2013) (finding a claim should be designated as **unsecured** where other than vague testimony and unoriginal documentation the creditor had not proved the

5

validity of the claim; Also, See: [*22] In re Cruse, No. 12-8154-RLM-13, 2013 Bankr. LEXIS 360, 2013 WL 323275, at *2 (Bankr. S.D. Ind. 2013).

5. KeyBank's "**failure** to provide the documentation required under **Rule 3001** has result in the loss of the prima facie validity of the claim". **Green Tree Servicing, LLC v. Wilson** (In re Wilson), 532 B.R. 486, 490 (S.D.N.Y. 2015).

6. On July 19, 2019, Shane Christopher Buczek (the "Debtor") was forced to file a Voluntary Petition in this Bankruptcy Case under Chapter 13 of the Bankruptcy Code to protect the property. **See Exhibit (A)** Letter from Evelyn A. Gawronski July 31,2019

7. KeyBank as a "**disinterested person**" was selling the property on July 24, 2019 with no proper notice nor any ruling on three outstanding motions with Judge Sheila A. DiTullio Erie County Court nor any notice from David P. Case's law firm Relin, Goldstein and Crane, LLP. **See Exhibit (B)**

8. Shane Christopher Buczek, (the "Debtor") having no mortgage on the property having not been brought into the foreclosure by joiner nor any lawsuit filed by David P. Case lacking any notice is attempting to sell my property as the true own. The location of the private property in care of 7335 Derby Road Derby New York. See Exhibit (C) Shane Quite Claim Erie County Clerk's Office Book Type: D Book 11317 Page: 2562 QUITCLAIM DEED

9. On August 14,2019 KeyBank filed a **fraudulent** notice of Mortgage Payment with no valid proof of claim by Senior Specialist Giovanna Sainato in this case **Doc. 44. See Exhibit (C)**

10. On November 27, 2019 Dave P. Case filed a Motion for In rem Relief from the automatic stay invoked by **11 USC § 362(d)(1) & (4)**,(hereinafter "KeyBank Motion")

6

Subsequently, KeyBank scheduled a hearing upon the KeyBank's Motion for December 16,2019 at 11:30AM. See **Doc.146** (255 Pages & 20 docs)

11. On December 9th,2019 Shane Christopher Buczek SEEKING RESCHEDULING OF HEARING ORIGINALLY SCHEDULED FOR DECEMBER. 16, 2019 AND REQUESTING EVIDENTIARY HEARING pursuant to **BK Rule 9014**. See Doc.

12. The Court was given notice that failure to grant this Motion will result in the denial of due process, since Debtor's prior commitments and other previously scheduled court appearances and deadlines that conflict with the December 16, 2019 date are beyond his control, and will prevent him from being heard in this court at a proper time and place.

13. Dave P. Case filed an Objection to Debtor's Notice of Motion Seeking Rescheduling of Hearing set for December 16, 2019 and Requesting Evidentiary Hearing with no standing in the interests of justice and judicial economy and those similarly situated. See **Doc. 149** filed on December 11, 2019

14. Hearing held on December 16, 2019 over objection by Shane Christopher Buczek Hearing Continued (BK Motion) Granted in part; denied in part. See **Doc. 150** filed December 16,2019

15. Notice of Appeal to District Court filed on December 26, 2019. See **Doc. 159** on December 26, 2019.

16. Notice of Motion of Rehearing of Hearing Scheduled for January 6, 2020 and Requesting Evidentiary Hearing. Filed on behalf of Debtor Shane Christopher Buczek. See **Doc. 168** filing date December 30, 2019.

17. The Hearing was held and DENIED; Appearances: Michael Weishaar, Debtor Shane Christopher Buczek. See **Doc.181** on January 6th, 2020.

7

18. The Corrective Order Granting In Rem Relief from the Automatic Stay re: 7335 Derby Rd, Derby, NY. (RE: related **doc(s) 146** Motion for Relief from Stay. See Doc. 189 filed January 13, 2020 By Judge Bucki

19. On January 14, 2020 **Doc.190** Clerk's Note: The District Court Judge assigned to the Notice of Appeals has changed from Judge Wolford to Judge Sinatra Jr.

20. On January 10, 2020 **Doc. 187** Notice of Motion of Vacate Order of December 16, 2019, Filed on behalf of Debtor Shane Christopher Buczek.

21. On January 15, 2020 **Doc. 191** Supplemental Appellant Designation of Contents for Inclusion in Record on Appeal, Statement of Issues on Appeal, Filed by Debtor Shane Christopher Buczek (RE: related document(s)**100** Notice of Appeal).

22. On January 27, 2020 Doc.212 Hearing Held - Denied in all respects; objection and cross motion granted in part. Appearances: Michael Weishaar, Debtor Shane Christopher Buczek (TEXT ONLY EVENT) (re: related document(s)**187** Motion to Vacate filed by Debtor Shane Christopher Buczek; **197** Objection).

23. On February 7, 2020 **Doc. 221** Hearing Set (BK Motion) (TEXT ONLY EVENT) (re: related document(s)**220** Motion for Sanctions filed by Notice of Appearance KEYBANK.

24. On February 24,2020 Doc.233 Hearing Held Imposition of sanctions is denied but the Court was given notice of the **fraudulent active of Dave P. Case.**

25. On May 1, 2020 **Doc. 259** Notice of Emergency Motion for Hearing on May 11, 2020 at 11:30 a.m. Emergency Motion for an Injunction and Temporary Restraining Order Courtroom by Telephone Only. Filed on behalf of Debtor Shane Christopher Buczek.

**26.** On May 7th,2020 **Doc.264** Dave P Case filed a frivolous and vexatious Opposition to Debtors Motion for Temporary Restraining Order including many statements of "Alternative Facts," lacking candor with the Court. **See Exhibit (E) see page (2) point 3 Document does not verify or sign under the penalty of perjury**

27. The Affidavit in Support of the Opposition contained an excessive and exorbitant amount of "Alternative Facts" that are the opposite of what is true and is easily provable.

28. Counsel Dave P. Case lacks candor with the Court.

29. Counsel Dave P. Case has made accusations of **"fraud,"** without stating or proving any elements of fraud.

30. Counsel Dave P Case has made self-serving statements that are contradicted by facts and evidence.

31. Counsel Dave P. Case is a **disinterested person** as define under **11 USC § 101(14)** and without standing to proceed here under **FRBP Rule 3001** for failure to provide a valid Proof of Claim.

32. Shane Christopher Buczek obtained an arbitration award on November 4th,2019 and it was cured by the (90) days on this Feb.2, 2020 entered it as an asset in docket number 213 filed on January 27,2020 Exhibit C.

| | | | |
|---|---|---|---|
| 01/27/2020 | | 213<br>(146 pgs;<br>4 docs) | Amended Schedules and/or Statements filed: Schedule A-B. on behalf of Debtor Shane Christopher Buczek . (Attachments: # 1 Exhibit A&B # 2 Exhibit C # 3 Certificate of Service) (Nieves, J.) (Entered: 01/27/2020) |

9

33. The Arbitration Award ("the Award") by Anthony O'Quinn dated November 4, 2019, was made in the State of Pennsylvania.

**34.** Applicant sent a copy of the Award and an invoice which was received by United States PRIORITY MAIL 2-DAY Tracking Number: 9410803699300114940164 and was delivered at 8:43 am on November 4, 2019 in CLEVELAND, OH 44144 as shown by the priority mail receipts. **See Exhibit (F)** See United States PRIORITY MAIL 2 DAY and Financing Statement will lapse on 01/01/9999 2013122007706329 before KeyBank filed the fraudulent notice of NOTICE OF LIS PENDENS back in January of 2015 which was never served to the owner of the property.

35. It is believed that the Respondents and Attorney's would have already properly filed an application to vacate the Award in the United States District Court for the Eastern District of Pennsylvania many months ago.

### Material Facts in controversy Presented to Dalwickman Arbitration

36. Since KeyBank has decided they file a fraudulent proof of claim and a fraudulent notice of mortgage payment they have consented to a arbitration controversy into an arbitration contract which was presented to the panel and has ruled in the favor of Shane Christopher Buczek on October 31,2019.

37. Mr. Case and his co-conspirators at the firm Fein, Such and Crane are already considered by jurists in the state of New York to be **"petty thieves"** and **"fraudsters"** pursuant to an opinion issued by the he Hon. Arthur Scheck because of a continuous pattern of **misrepresentations** in both federal and state courts. See HON. ARTHUR M. SCHACKJ. S. C  IndyMac Fed. Bank, FSB v Meisels 2012 NY Slip Op 51902(U) Decided on October 4, 2012 Published by New York State Law Reporting Bureau

10

**https://www.youtube.com/watch?v=gRwFnlJYAk8**

38. KeyBank has not proven that it has a final judgment of Foreclosure and Sale where the Debtor has never been served of the Foreclosure sale. The Action does <u>not</u> name Shane Christopher Buczek, who is the owner of record, but seeks to **steal** the house from this Debtor by circumventing him without fair notice, and stealing the house from the former owner, Deborah Ann Buczek. While Case continues to rant about this Debtor continuously seeking to defer the sale of the property, this is the first circumstance involving the disputed rights of KeyBank to foreclose upon a house that is owned by someone else other than on their **forged**, **altered** and non-original security instruments.

39. KeyBank does not and will never prove standing and continues more fraud upon the Bankruptcy Court where the Debtor has proven many times to this Court why we must have an Evidentiary Hearing. **See BK Rule 9014**

    (a) The purpose of an evidentiary hearing is to present evidence in the form of documentation, testimony and demonstrative exhibits that are relevant to the factual matters before the court.

    (b) This court will ultimately prepare an order that will include "findings of fact" and related "conclusions of law".

    (c) Because the law does not mean much in the abstract, the bankruptcy court must first determine the facts that are relevant to the legal issues now before this court.

40. KeyBank is a party to the contract of arbitration initiated by your certified mail receipt **#70182290000082413432** via **USPS CERTIFIED MAIL** delivered on September 9, 2019. PS Form 3811 Green Card Signed (see enclosed proof of delivery). Your item was delivered at 8:40 am on September 9, 2019 in CLEVELAND, OH 44144. See Exhibit (F)

11

41. Shane Christopher Buczek, who is the owner of record, was never given any notice by KeyBank nor Dave P. Case which has been trying to **steal** the house from this Debtor by circumventing him without fair notice.

42. The altered, forged, inaccurate records, documents and suppositions offered by Mr. Case shows KeyBank was never be damaged lacking any statement of account or affidavit by KeyBank. See **11 USCS § 502 (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;**

43. KeyBank an **interloping third party** never served any foreclose case upon Shane Christopher Buczek the real party and true own of the private property.

44. KeyBank has **forged**, **altered** and non-original security instruments against the private property at 7335 Derby Road Derby New York.

45. KeyBank an **interloping third party** does not have an original document and has been **altered a forged** by Fein, Such & Crane, LLP law firm Attorney Dave P. Case lacking Standing in this matter since January 5th ,2015.

46. That the Note and all other security instruments alleged to be binding against this Debtor's property in this case by the **disinterested person** alleged creditor KeyBank are **inauthentic.**

12

47. That the Note and all other security instruments alleged to be binding against this Debtor's property by **disinterested person** alleged creditor KeyBank are **forged** and **altered.**

48. That the Note and all other security instruments alleged to be binding against this Debtor's property in this case by an **interloping third party** alleged creditor KeyBank are neither original, **authentic**, or **enforceable documents**.

49. That an **interloping third party** alleged creditor KeyBank is truly wholly **unsecured** disinterested party in this case.

50. That an **interloping third party** alleged creditor KeyBank does not retain any security in this debtor's property.

51. That KeyBank and David P. Case have acted in **bad faith** by **misrepresenting** to this court any valid security interest in this Debtor's real property.

52. That the note and Security instruments presented to this court filed by **disinterested person** KeyBank constitute **fraud** upon this court, **fraud** against the United States Trustee and **fraud** against the Debtor.

53. That, despite the lies set forth to this court by an **interloping third party** attorney David P. Case, the issues above have never been adjudicated in this or any other court, and that since these issues have never been raised or resolved by a court or through any hearing and therefore the principle of res judicata does not apply in this case regarding these issues. See **564 B.R. 190 United States Bankruptcy Court, W.D. New York In re Sadigursky**

54. The fact that the resolution of the issue of the submission by alleged creditor KeyBank of false documents in a Federal Court are a Federal Issue and not in any way governed or

13

restricted by the Rooker-Feldman doctrine because they have never been raised or adjudicated previously in any state court.

55. That an **interloping third party** alleged creditor KeyBank is not the owner, in due course or otherwise, of any enforceable security interest in this case in name of Shane Christopher Buczek.

56. KeyBank is indeed **unsecured** and are **an interloping third party**, as **proven** at the Arbitration hearing with Dalwickman Arbitration Services.

57. KeyBank purported debt "**charge off**" and is unsecured junior lien see FORM 10-K ANNUAL REPORT -CUSIP results show the loan was sold SYMBOL FOMCX Net Assets $994,967,000.00 and sold once again **CUSIP 44977C423** Net Assets $880,394,000.00 from the old owner Before it was transfer on August 14,2017 to Shane Christopher Buczek the record will reflex that there is no liens nor any debt attach to the private property at 7335 Derby Road Derby New York before the QUITCLAIM DEED was recorded on August 14,2017 Book 11317 Page: 2562 [NO LIENS ATTACH TO PROPERTY]

58. All aforementioned irrefutable facts and stipulated terms heretofore stated in good faith are being solemnly introduced for being entered into the evidence file of this Arbitration hearing with Dalwickman Arbitration Services in favor of Shane Christopher Buczek.

## MEMORANDUM OF POINTS AND AUTHORITIES SANCTIONS UNDER RULE 11

Before its 1993 amendment, Rule 11's literal language stated that the attorney who signed a pleading or motion was the attorney who certified that the filing complied with the rule. In Pavelic & LeFlore v. Marvel Entm't Group, 493 U.S. 120 (1989), the Supreme Court held that only the attorney who actually signed the pleadings was liable. In Pavelic, the Court stated that

14

the language of Rule 11 was explicit, and referred only to liability for "'the person who signed [the paper], a represented party, or both.'" Id. at 125 (quoting the 1983 Rule 11).

As discussed above, the 1993 amendment overturns Pavelic by adding language allowing courts to "sanction [] the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." Rule 11(c). See also Poole v. Textron, Inc., 192 F.R.D. 494, 511 n.24 (D. Md. 2000) (noting that Rule 11, unlike Rules 37 and 26, allows sanctions against law firms). Thus, the 1993-amended Rule 11 still covers attorneys signing papers, but the scope is now much broader. The rule states that anyone who presents to the court, by signing, filing, submitting, or later advocating, a pleading, written motion, or other paper, certifies compliance with Rule 11. Rule 11(b). Thus, the current rule now gives courts broad power to decide who should bear the burden of sanctions.

A signing attorney faces sanctions for violating Rule 11, regardless of whether the attorney played a limited role in filing the pleading or motion with the court. In Polar Int'l Brokerage Corp. v. Reeve, 120 F. Supp. 2d 267, 269-70 (S.D.N.Y. 2000), the court considered to what extent it should impose sanctions against a law firm that acted primarily at the discretion of lead counsel in filing frivolous claims with the court. The court held that the firm could not escape sanctions, even though it neither received nor had knowledge of various warning letters from defense counsel indicating that the claims were frivolous, because it signed its name to the filings. However, the court reduced the amount of sanctions to reflect the limited role of the firm in bringing the frivolous claims. Id. See also Schottenstein v. Schottenstein, 230 F.R.D. 355, 361-62 (S.D.N.Y.2005) (sanctioning attorney who signed and filed a frivolous complaint for a colleague who was not admitted to practice in the district, but apportioning only 5% of the sanction to the signing attorney and the remainder to the attorney who authored the complaint).

15

## Local Counsel

The expansion of Rule 11 to cover anyone who files a pleading, regardless of whether it is the same person who signs it, has a clear impact on local counsel. See Ideal Instrs., Inc. v. Rivard Instrs., Inc., 243 F.R.D. 322, 348 (N.D. Iowa2007) (local counsel has a nondelegable responsibility under Rule 11). Under the language of the 1993 rule, local counsel may be held liable simply for filing or submitting a frivolous paper, even though he or she did not sign it. Ultimately, however, the emphasis on identifying the party responsible for the violation may favor local counsel. See de la Fuente v. DCI Telecomms., Inc., 269F. Supp. 2d 229, 232-35 (S.D.N.Y. 2003) (declining to award sanctions against local counsel who performed an "essentially administrative" role; "[n]ot only does this Court not expect that local liaison counsel will independently confirm the assertions made in pleadings or research the arguments made in briefs, but I would be unlikely to award attorneys' fees for such duplication."). Cf. Pannonia Farms, Inc. v. USA Cable, No. 03 Civ. 7841 (NRB), 2006 U.S. Dist. LEXIS73519, n.26 (S.D.N.Y. Oct. 5, 2006) (sanctioning local counsel who signed complaint without identifying himself as local counsel and who received the safe harbor letter and attended a conference at which the problems with the claims were discussed, but did nothing to prevent the Rule 11 violation).Under the pre-1993 Rule 11, courts found that the rule's obligations reached local counsel who signed and submitted a pleading or motion even when another attorney was "responsible. "See Val-Land Farms, Inc. v. Third Nat'l Bank, 937 F.2d 1110, 1118 (6th Cir. 1991) (expressly rejecting notion that sanctions are inappropriate for local counsel who rely on primary outside counsel if local attorneys "signed complaint relying entirely on the representations of [outside counsel], so much the worse for them"); Long v. Quantex Resources, Inc., 108 F.R.D. 416, 418 (S.D.N.Y. 1985), aff'd without op.,888 F.2d 1376 (2d Cir.

16

1989); Itel Containers Int'l Corp. v. Puerto Rico Marine Mgmt., Inc., 108 F.R.D. 96 (D.N.J. 1985). But cf. CTC Imports & Exports v. Nigerian Petroleum Corp., 951 F.2d 573, 579 (3d Cir. 1991) (in assessing sanctions, court considered that local counsel was not on equal footing as to knowledge, access to information, and time constraints); Golden Eagle Distrib. Corp. v. Burroughs Corp., 103 F.R.D. 124 (N.D. Cal. 1984) (declining to require local counsel to pay fee award in the absence of active participation in the preparation of, or the decision to file, a pleading or motion), rev'd on other grounds, 801 F.2d 1531 (9th Cir. 1986).

### Substitute Counsel

Courts have held that counsel who substitute into a case have an independent duty to evaluate their client's position, particularly where they sign additional pleadings in the case. See Turner v. Sungard Bus. Sys., Inc., 91 F.3d 1418, 1421 (11th Cir. 1996) (sanctioning substitute counsel, who had submitted only notice of appearance, but not sanctioning original counsel); Judin v. United States, 110 F.3d 780, 785 (Fed. Cir. 1997) (interpreting Rule 11 of the Court of Federal Claims, patterned after the 1983 federal Rule 11, and stating that some circumstances may justify substitute attorneys' reliance on forwarding counsel, but substitute attorney cannot simply delegate duty of reasonable inquiry); United States v. Kirksey, 639 F. Supp. 634, 636-37 (S.D.N.Y. 1986) (successor counsel sanctioned for failure to conduct his own "reasonable inquiry"); cf. Schweitzer v. Testaverde, No. 86 Civ. 2498, 1990 U.S. Dist. LEXIS 1672, at *4 (S.D.N.Y. Feb.15, 1990) (refusing to sanction original counsel, who had since withdrawn from practice, or substitute counsel); General Elec. Credit Corp. v. Yasparro, 122 F.R.D. 33, 34 (M.D. Fla. 1988) (court will not consider failure of successor counsel to defend or prosecute motion for summary judgment as proof that original counsel violated Rule 11). attachment(1)

17

59. KeyBank is a disinterested person as define under **11 USC § 101(14)** and without standing to proceed here under **FRBP Rule 3001** for failure to provide a Proof of Claim with my signature of the original note.

60. Pursuant to **11 USC Section 102(2)**, the term "claim against the debtor" shall be interpreted to include a claim against property of the debtor where the record shows no claim with KeyBank and repeatedly filings by Shane Christopher Buczek that KeyBank has no standing.

61. **FRBP Rule 3001(a)** provides that if a claimant contends that he has a security interest in the debtor's property, as claimed in the KeyBank's Motions, that evidence that the security instrument has been perfected MUST accompany a Real Proof of Claim in official form. Further, **HN10 FRBP Rule 3001** "requires that a claimant attach supporting documentation to a Real Proof of Claim". In re Aiolova, No. 11-10503 (BRL), 2013 Bankr. LEXIS 4504, 2013 WL 5818893, at 2 (Bankr. S.D.N.Y. 2013); Also, **FRBP Rule 3001(c)(1):** "When a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with a Proof of Claim".

62. This Arbitration Panel has created and executed the attached Arbitration Award, was on the date thereof the duly qualified Arbitrators for Dalwickman Arbitration Services whose official acts as such should be given full faith and credit in all Courts of Justice and elsewhere.

63. There is no legitimate reason to initiate an Application to Vacate the Arbitration Award under **9 U.S. Code §10** in this Bankruptcy Court.

64. This court "must follow the Act as written and the Act requires the contract to be followed as written." The court lacked the jurisdiction to challenge the contract, the

arbitration clause, the party's intentions, and/or the application of the provisions as the parties elected to have an arbitrator determine the contract was a performance contract per **U.C.C. § 9-208**

65. **The Federal Arbitration Act, (F.A.A.) 9 U.S.C. § 1-16; 201-216**; and **301-316**; sets out the legislative intent and framework for the enforcement of arbitration agreements and arbitration awards in the United States. See 'The Arbitration Act creates a body of Federal Substantive Law ...applicable to state and federal court' Southland Corp. v, Keating, 465 US 1, 14 (1984). See Southland, 465 US at 10: Prima Paint Corp. v. Food & Conklin Mfg. Co., 388 US 395 (1967). The Supreme Court continues to hold 'that courts may only consider a party's specific challenge that the agreement was procured by **fraud**, any general challenge was to be decided by the arbitrator.' See:  Prima, 388 US at 395 (1967). The Supreme Court has reinforced the F.A.A.'s 'liberal policy favoring arbitration,' when considering a court's **limited powers to vacate an arbitration award**. See Hall St. Assoc., LLC v. Mattel, 552 US 576, 588 (2008).  'Noting that 'the national policy favoring arbitration,' requires just the limited review needed to maintain arbitrations essential value of resolving disputes straightaway. In 2008, the Supreme Court confirmed the four (4) extremely limited grounds listed in the F.A.A. for vacating an arbitral award and therefore subject to vacatur under the F.A.A.:

a.  Fraud by opposing party in securing the award and fraud must have all elements proved by the party raising the claim **(9 U.S.C. § 10 a) (I)).**

b.  The tribunal's corruption or evident partiality to one of the parties, where the contract has the party's agreeing to arbitrator, proof of actual corruption and/or partiality must be

19

readily present by factual evidence, a hearing and opportunity to confront such evidence, present witnesses, etc., (9 U.S.C. § 10 (a)(2));

c. Misconduct by the tribunal in granting and/or issuing the award. This also shifts the burden of proof on the party bringing forth the claim (9 U.S.C. § 10 (a)(4)).

d. That the arbitrator exceeded its powers, acted outside the scope of the authority delegated in the arbitration agreement.

If an award is issued, the parties have ninety (90) days to contest such an award as prescribed by the F.A.A. **(9 U.S.C. § 7, 9).**

Should the parties allow and/or permit the ninety (90) days to elapse they are then **time-barred** from any future challenges, the Plaintiffs and the court is time barred and the opinion of the court violates the F.A.A. Time-barred is time-barred.

Accordingly, **9 U.S.C. § 9** permits the parties to apply to the court (named in agreement) to confirm the award, at which time "the court must confirm the award." **The court may not aid a wrong doer**. The opposing party **failed** to participate in the arbitration process, after receipt of proper notification.

The court is without jurisdiction to hear any challenge to the contractor the award due to the opposing party's waivers and is **time barred**.

the Federal Arbitration Act and the contract between the parties. The arbitrator held, as ordained by the agreement's arbitration clause; that the contract is "valid," "binding," and "irrevocable" (9 U.S.C. § 1, 2).

## Title 18 USC § 157 Bankruptcy fraud provides that:

A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so

20

(1) files a petition under title 11, including a fraudulent involuntary petition under section 303 of such title.

(2) files a document in a proceeding under title 11; or

(3) **makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition, or in relation to a proceeding falsely asserted to be pending under such title, shall be fined under this title, imprisoned not more than 5 years, or both.**

66.The Debtor has a Binding **arbitration contract** in order to remove the controversy started by David P Case in his response that the parties Nationstar and KeyBank failed to respond it is now time barred in the abstract of the arbitration award as attach. **See Exhibit (G) UCC**

**FINANCIAL STATEMENT CERTIFIED COPY 202003020129068 WILL BE AMENDED IN May of 2020**

WHEREFORE, having validly demonstrated his entitlement to the relief he seeks, based upon the foregoing, this debtor respectfully moves the court to deny the KeyBank objection to debtor's TRO pending appeal and granting further an ORDER that:

(1) KeyBank is forever banned from presenting, in any form, including the filing of any future Proof of Claim or any information as evidence in any contested matter, including any adversary proceeding in this case, as set forth and specified in **FRBP Rule 3001(c)**, pursuant **to FRBP Rule 3001(c)(2)(D)(i),** with prejudice; and,

(2) The court awards the debtor the sum of $5000.00 towards reasonable expenses for the research time, appearance time, postage, copying, mailing, printing, preparing, editing and review by other professionals, related to the preparation of this motion and the related to the defense of the frivolous KeyBank Motion for relief from stay that was filed by disinterested person KeyBank through and by their attorney Dave P. Case, to be charged to KeyBank, pursuant to **FRBP Rule 3001(c)(2)(D)(ii);** and,

21

(3) The court makes declaration that KeyBank is a disinterested person, without any valid claim or interest in these proceedings, with prejudice.

The granting of this Motion for sanctions against Dave P. Case in favor of the Debtor is in the interests of justice and judicial economy.

Respectfully submitted this 19th day of May 2020, I Shane Christopher Buczek, appearing pro se, do hereby affirm that the foregoing motion is truthful and correct to the best of my knowledge and belief, under penalty of perjury. See 28 U.S. Code § 1746 (1)

BY: _____

Shane Christopher Buczek

CC:

**Donald J. Trump**
**45th President of the United States**
**The White House**
**1600 Pennsylvania Avenue NW**
**Washington, DC 20500**

**U.S. Department of Justice**
**William Pelham Barr**
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

**Director Christopher Wray**
FBI Headquarters
935 Pennsylvania Avenue, NW
Washington, D.C. 20535-0001
(202) 324-3000

22

# Attactment (1)

## PART (2) TO MEMORANDUM OF LAW PRESENTED TO ARBITRATION

"An attorney cannot admit evidence into the court. He is either an attorney or a witness" **(Trinsey v. Pagliaro,** DC Pa. 1964, 229 F. Supp. 647) Two maxims in law that are opposite sides of the same coin: Truth is expressed in the Form of an Affidavit, and an unrebutted Affidavit stands as truth in the matter. **Now. while keeping these in mind, think about how an attorney, like Dave P. Case, comes forward and states that Mr. Case with the Law firm of Relin, Goldstein & Crane LLP 28 East Main St. Ste 1800 Rochester claims there a debt with no debt!**

**KeyBank has filed a fraudulent notice of mortgage payment (Doc.44) and fraudulent proof of claim (Doc. Claim (1) September 16,2019) that KeyBank had the mortgage against private property of Shane Christopher Buczek with no proof!**

**Evidence sent to will be sent to FBI, IRS CID DEPARTMENT FORM 211 & 3949A and DOJ in Washington D.C. See Exhibit (D)**

Whether in **Federal or States Rules of Evidence, a competent first-hand witness must exist to make the claims** made here. "Manifestly [such statements] cannot be properly considered by us in the disposition of [a] case".

(United States v. Lovasco, 431 US 783, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977)). "Under no possible view, however, of the findings we are considering can they be held to constitute a compliance with the statute, since they merely embody conflicting statements of counsel concerning facts as they suppose them to be and their appreciation of the law which they deem applicable, there being, therefore, no attempt whatever to state the ultimate facts by a consideration of which we would be able to conclude whether or not judgment was warranted".

(Gonzales v. Buist, 224 us 126, 56 L.Ed. 693, 32 S.Ct. 463 (2012)). **"The judge told the jury they were to regard only the evidence admitted by him, not statements of counsel"** (Holt v. United States, 218 US 245, 54 L.Ed. 1021, 31 S.Ct. 2 (2010)).

**"Statements of Counsel in brief or in argument are not sufficient for motion to dismiss or for summary judgment"**, (Trinsey v. Pagliaro, DC Pa. 1964, 229 F Supp. 647). "Factual statements or documents appearing only in briefs shall not be deemed to be a part of the record in the case, unless specifically permitted by the court", (Trinsey v. Pagliano, supra)."Professional statements of attorneys are treated as affidavits, and attorneys making them may be cross-examined regarding substance of statement." Frunzar v. Allied Property and Cas., 548 NW 2d235 (Iowa 1996)). " **The practice of an attorney filing an affidavit on behalf of his client asserting the status of that client is not approved, inasmuch as not only does the affidavit become hearsay, but it places the attorney in a position of witness thus compromising his role as advocate."** (Deyo v. Detroit Creamery Co., 241 NW 2d 244 (N.D. 1979)).

The Court will respectfully take notice hereby that, under the authority of the supremacy and equal protection clauses of the United States Constitution, and the common law authorities of Haines v. Kerner, 404 US 519-521, the pleading standards for pro se litigants are held to a less stringent standard than attorneys. Regardless of the deficiencies in their pleadings, pro se litigants are entitled to the opportunity to submit evidence in support of their claims. A court errs if it dismisses the pro se litigant without instruction of how pleadings are deficient and how to repair them, with the opportunity to do so. (Platsky v. CIA, 953 F.2d 25).

None of the records alluded to by Case in this case have been signed under penalty of perjury, in addition to being faulty, incomplete and untrustworthy and merely embody the opinion of the Dave P. Case not sign under the penalty of perjury and Unsworn statements which are not part of

the record cannot be considered by the court. (United States v. Lovasco, 431 US 783,97 S. Ct. 2044, 52 L.Ed. 2d 752 (1977)).

**18 U.S. Code § 152. Concealment of assets; false oaths and claims; bribery**

A person who

(1) knowingly and fraudulently conceals from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or, in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor;

(2) knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11;

(3) knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, in or in relation to any case under title 11;

(4) knowingly and fraudulently presents any false claim for proof against the estate of a debtor, or uses any such claim in any case under title 11, in a personal capacity or as or through an agent, proxy, or attorney;

(5) knowingly and fraudulently receives any material amount of property from a debtor after the filing of a case under title 11, with intent to defeat the provisions of title 11;

(6) knowingly and fraudulently gives, offers, receives, or attempts to obtain any money or property, remuneration, compensation, reward, advantage, or promise thereof for acting or forbearing to act in any case under title 11;

(7) in a personal capacity or as an agent or officer of any person or corporation, in contemplation of a case under title 11 by or against the person or any other person or corporation, or with intent to defeat the provisions of title 11, knowingly and fraudulently transfers or conceals any of his property or the property of such other person or corporation;

(8) after the filing of a case under title 11 or in contemplation thereof, knowingly and fraudulently conceals, destroys, mutilates, falsifies, or makes a false entry in any recorded information (including books, documents, records, and papers) relating to the property or financial affairs of a debtor; or

(9) after the filing of a case under title 11, knowingly and fraudulently withholds from a custodian, trustee, marshal, or other officer of the court or a United States Trustee entitled to its possession, any recorded information (including books, documents, records, and papers) relating to the property or financial affairs of a debtor, **shall be fined under this title, imprisoned not more than 5 years, or both.**

**18 U.S. Code § 153. Embezzlement against estate**

(a)Offense.

A person described in subsection (b) who knowingly and fraudulently appropriates to the person's own use, embezzles, spends, or transfers any property or secretes or destroys any document belonging to the estate of a debtor **shall be fined under this title, imprisoned not more than 5 years, or both.**

(b)Person to Whom Section Applies.

A person described in this subsection is one who has access to property or documents belonging to an estate by virtue of the person's participation in the administration of the estate as a trustee, custodian, marshal, attorney, or other officer of the court or as an agent, employee, or other person engaged by such an officer to perform a service with respect to the estate.

**18 U.S. Code § 154. Adverse interest and conduct of officers**

A person who, being a custodian, trustee, marshal, or other officer of the court—

(1) knowingly purchases, directly or indirectly, any property of the estate of which the person is such an officer in a case under title 11;

(2) knowingly refuses to permit a reasonable opportunity for the inspection by parties in interest of the documents and accounts relating to the affairs of estates in the person's charge by parties when directed by the court to do so; or

(3) knowingly refuses to permit a reasonable opportunity for the inspection by the United States Trustee of the documents and accounts relating to the affairs of an estate in the person's charge,

**18 U.S. Code § 155. Fee agreements in cases under title 11 and receiverships**

Whoever, being a party in interest, whether as a debtor, creditor, receiver, trustee or representative of any of them, or attorney for any such party in interest, in any receivership or case under title 11 in any United States court or under its supervision, knowingly and fraudulently enters into any agreement, express or implied, with another such party in interest or attorney for another such party in interest, for the purpose of fixing the fees or other compensation to be paid to any party in interest or to any attorney for any party in interest for

services rendered in connection therewith, from the assets of the estate, **shall be fined under this title or imprisoned not more than one year, or both.**

**18 U.S. Code § 156. Knowing disregard of bankruptcy law or rule**

(a)Definitions. —In this section

(1) the term "bankruptcy petition preparer" means a person, other than the debtor's attorney or an employee of such an attorney, who prepares for compensation a document for filing; and

(2) the term "document for filing" means a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under title 11.

(b)Offense.

If a bankruptcy case or related proceeding is dismissed because of a knowing attempt by a bankruptcy petition preparer in any manner to disregard the requirements of title 11, United States Code, or the Federal Rules of Bankruptcy Procedure, **the bankruptcy petition preparer shall be fined under this title, imprisoned not more than 1 year, or both.**

**18 U.S. Code § 157. Bankruptcy fraud**

A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so—

(1) files a petition under title 11, including a fraudulent involuntary petition under section 303 of such title;

(2) files a document in a proceeding under title 11; or

(3) makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition, or in relation to a proceeding falsely asserted to be pending under such title, **shall be fined under this title, imprisoned not more than 5 years, or both.**

**18 U.S. Code § 1001. Statements or entries generally**

(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—

(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

(2) makes any materially false, fictitious, or fraudulent statement or representation; or

(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense under chapter 109A, 109B, 110, or 117, or section 1591, then the term of imprisonment imposed under this section shall be not more than 8 years.

(b) Subsection (a) does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding.

(c) With respect to any matter within the jurisdiction of the legislative branch, subsection (a) shall apply only to

(1) administrative matters, including a claim for payment, a matter related to the procurement of property or services, personnel or employment practices, or support services, or a document required by law, rule, or regulation to be submitted to the Congress or any office or officer within the legislative branch; or

(2) any investigation or review, conducted pursuant to the authority of any committee, subcommittee, commission or office of the Congress, consistent with applicable rules of the House or Senate.

**18 U.S. Code § 158. Designation of United States attorneys and agents of the Federal Bureau of Investigation to address abusive reaffirmations of debt and materially fraudulent statements in bankruptcy schedules**

(a)In General.

The Attorney General of the **United States** shall designate the individuals described in subsection (b) to have primary responsibility in carrying out enforcement activities in addressing violations of section 152 or 157 relating to abusive reaffirmations of debt. In addition to addressing the violations referred to in the preceding sentence, the individuals described under subsection (b) shall address violations of section 152 or 157 relating to materially fraudulent statements in bankruptcy schedules that are intentionally false or intentionally misleading.

(b)United Attorneys and Agents of the. The individuals referred to in subsection (a) are

(1) the **United States** attorney for each judicial district of the **United States;** and

(2) an agent of the **Federal Bureau of Investigation for each field <u>office</u>** of the Federal Bureau of Investigation.

(c)Bankruptcy Investigations.

Each <u>**United States**</u> attorney designated under this section shall, in addition to any other responsibilities, have primary responsibility for carrying out the duties of a <u>**United States**</u> attorney under section 3057.

(d)Bankruptcy Procedures.

The bankruptcy courts shall establish procedures for referring any case that may contain a materially <u>**fraudulent statement**</u> in a bankruptcy schedule to the individuals designated under this section.

# Exhibit (A)

ERIE COUNTY COURT
25 DELAWARE AVENUE
BUFFALO, N.Y. 14202
CHAMBERS OF
SHEILA A. DiTULLIO

JUDGE

BUFFALO
NY 140
01 AUG '19
PM 1 L



DEBORAH A. BUCZEK
P.O. BOX 73
NORTH EVANS, NY 14112



# Erie County Court

**25 Delaware Avenue**
**Buffalo, New York 14202**
**716-845-9369  FAX 716-845-7509**

(Regular Mail and E-Mail)

**Hon. Sheila A. DiTullio**
Erie County Court Judge
Acting Supreme Court Justice

July 31, 2019

**Evelyn A. Gawronski**
Principal Law Clerk to Judge

DAVID P. CASE. ESQ.
FEIN, SUCH & CRANE, LLP
28 EAST MAIN STREET, SUITE 1800
ROCHESTER, NY 14614

DEBORAH A. BUCZEK
P.O. BOX 73
NORTH EVANS, NY 14112

> Re: **KeyBank National Association v. Deborah A. Buczek, et al.**
> Index No. 600022/2015

Dear Mr. Case and Ms. Buczek:

It is the court's understanding that pursuant to Shane Christopher Buczek's recent Chapter 13 bankruptcy filing, no further activity is permitted with respect to *any* aspect of the above-referenced case, including Ms. Buczek's poor person application, and any motion papers previously filed with the court and rejected by plaintiff's counsel, until such time as the automatic stay has been lifted (*see* 11 U.S.C.A §362).

In the event either party disagrees with this position, please so inform the court in writing and provide legal authority in support of your contentions. Please also promptly inform the court if and when the stay has been lifted.

Thank you for your courtesies and attention.

Very truly yours,

Evelyn A. Gawronski
Principal Law Clerk to Judge

EAG/lda
cc: Craig Beideman, Esq.
   Lynn Higgins, Court Clerk
   File

# Exhibit (B)

# NOTICE OF SALE COUNTY COURT ERIE COUNTY

KEYBANK NATIONAL ASSOCIATION, Plaintiff against

**DEBORAH A. BUCZEK A/K/A DEBORA ANN GALE BUCZEK A/K/A DEBORAH ANN GALL BUCZEK A/K/A DEBORA GALL BUCZEK, et al Defendants**

Attorney for Plaintiff(s) Fein, Such & Crane, LLP, 28 East Main Street, Suite 1800, Rochester, NY 14614 Attorney (s) for Plaintiff (s).

Pursuant to a Judgment of Foreclosure and Sale entered May 16, 2018, I will sell at public auction to the highest bidder at the Foreclosure Alcove 1st Floor, at 92 Franklin St., in the County of Erie, State of New York on July 24, 2019 at 11:30 AM. Premises known as 7335 Derby Rd, Derby, NY 14047. Sec 206.04 Block 2 Lot 22. All that tract or parcel of land, situate in the Town of Evans, County of Erie, State of New York. Approximate Amount of Judgment is $59,965.92 plus interest and costs. Premises will be sold subject to provisions of filed Judgment Index No 2015600022.

Jennifer Persico, Esq., Referee                                     FKNC2913

# Exhibit (C)



ERIE COUNTY CLERK'S OFFICE

County Clerk's Recording Page

Return to:
    SHANE CHRISTOPHER BUCZEK
    PO 73
    N EVANS, NY 14112

Party 1:
BUCZEK DEBORAH ANN

Party 2:
BUCZEK SHANE CHRISTOPHER

Book Type: **D** Book: **11317** Page: **2562**
Page Count:   3
Doc Type:     **DEED**
Rec Date:     08/14/2017
Rec Time:     04:48:27 PM
Control #:    2017162815
UserID:       Kathy
Trans #:      17140998
Document Sequence Number
    TT2017001076

**Recording Fees:**

| | |
|---|---|
| RECORDING | $35.00 |
| COE CO $1 RET | $1.00 |
| COE STATE $14.25 GEN | $14.25 |
| COE STATE $4.75 RM | $4.75 |
| RP5217 CNTY $9 | $9.00 |
| RP5217 ST-RES $116 | $116.00 |
| TP584 | $10.00 |

**Consideration Amount:**    **1000.00**

| | |
|---|---|
| BASIC MT | $0.00 |
| SONYMA MT | $0.00 |
| ADDL MT/NFTA | $0.00 |
| SP MT/M-RAIL | $0.00 |
| NY STATE TT | $0.00 |
| ROAD FUND TT | $0.00 |

**Total: $190.00**

STATE OF NEW YORK
ERIE COUNTY CLERK'S OFFICE

WARNING – THIS SHEET CONSTITUTES THE CLERK'S ENDORSEMENT REQUIRED
BY SECTION 319&316-a (5) OF THE REAL PROPERTY LAW OF THE STATE OF NEW
YORK. DO NOT DETACH. THIS IS NOT A BILL.

Peggy A. Lagree
Acting County Clerk



STATE OF NEW YORK, COUNTY OF ERIE, SS.

I, Peggy A. LaGree, Acting Clerk of said County, and also Acting
Clerk of Supreme and County Courts of said County, do hereby
Certify that I have compared the annexed copy with the original

**DEED**

Filed in my office and that the same is a correct transcript there-
from and of the whole of said original.
WITNESS my hand and seal of said County and Courts on

_____ day of AUG 1 4 2017    20____

                       /s/

Acting County Clerk

Prepared By:
Shane Christopher Buczek
Postal Office 73
North Evans, New York [14112]

After Recording Return To:
Shane Christopher Buczek
Postal Office 73
North Evans, New York [14112]

---

Quitclaim deed by individual (statutory form D)

### QUITCLAIM DEED
### THIS INDENTURE, made August 7th, 2017

**BETWEEN**
DEBORAH ANN BUCZEK Postal Office 73 North Evans New York [14112] %o 7335 Derby Road
Derby new york
Party of the first part, and

Shane Christopher Buczek, a single natural person, in care of 7335 Derby Road, Derby, Erie County,
New York [14047].
Party of the second part,

**WITNESSETH,** that the party of the first part, in consideration of One thousand US Dollars ($1,000.00)
and other valuable consideration paid by the party of the second part, does hereby remise, release and
quitclaim unto the party of the second part, the heirs or successors and assigns of the party of the second
part forever,

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected,
situate, lying and being in the:

State of New York

Legal Description: Town of Evans County of Erie and being part of Lots 20 and 30, Township 8 Range 9,
of Holland Land Company's Survey bounded and described as follows:
BEGINNING at a point in the center of the highway leading from Derby to the Eighteen Mile
Creek, known as Derby road, which point is 635.58 feet northerly from the south line of Lot. No. 30, as
measured along the center line of said Derby Road: in the care of 7335 Derby Road Derby New York
[14047] **4.01ac**

RUNNING THENCE northerly along the center line of said Derby Road 280 feet;

THENCE easterly at right angles 651.7 feet to the lands of Niagara Lockport &
Ontario Power Co.;

THENCE southerly along Che lands of said company 285.20 feet;

THENCE westerly at right angles to the center or the Derby Road, 597.3 feet to the center of the said
Derby Road at the point or place of BEGINNING.
Section:        206.04        Block: 2 Lot:  22

The transferred from Deborah Ann Buczek to Shane Christopher Buczek

EVA – 1,000
DIB - 2

TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever. The word "party" shall be construed as if it reads "parties" whenever the sense of this indenture so requires.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

Tax Parcel Number: 144489.206.040-2-22

Mail Tax Statements To:
Shane Christopher Buczek
Postal Office 73
North Evans, New York [14112]

**Grantor Signatures:**

DATED: August 7th,2017 AD

DEBORAH ANN BUCZEK
care of 7335 Derby Road
Derby, New York, [14112]

STATE OF NEW YORK

               :      ss.

COUNTY OF ERIE

On this 7TH day of August,2017, before me the undersigned, personally appeared **DEBORAH ANN BUCZEK**, personally known to be the natural person or prove to me on the basis of satisfactory evidence to be the individual (s) whose name (s) is (are) subscribed to the within instrument and acknowledged to me that she they executed the same in her capacity (ies), and that by her signature (s) on the instrument the individual (s) , or the natural person upon behalf of which individual (s) acted, executes the instrument, and acknowledged that they executed same as their free act and deed.

_____
Notary Public

_branch manager_
Title (and Rank)

My commission expires _03/02/2019_

MATTHEW J SPENCER
Notary Public - State of New York
No. 01-SP6320313
Qualified in Erie County
My Commission Exp. 03/02/2019

# Exhibit (D)

**Western District of New York**
**Claims Register**

1-19-11441-CLB Shane Christopher Buczek

| | |
|---|---|
| **Judge:** Carl L. Bucki | **Chapter:** 13 |
| **Office:** Buffalo | **Last Date to file claims:** 09/27/2019 |
| **Trustee:** Julie Philippi | **Last Date to file (Govt):** 01/15/2020 |

| | | |
|---|---|---|
| *Creditor:* (21749454) | **Claim No: 1** | *Status:* |
| KeyBank, N.A. | *Original Filed* | *Filed by:* CR |
| 4910 Tiedeman Rd. | *Date:* 09/16/2019 | *Entered by:* Christine |
| Brooklyn, OH 44144 | *Original Entered* | Banaszak |
| | *Date:* 09/16/2019 | *Modified:* |

Amount claimed: $66130.48

Secured claimed: $66130.48

*History:*

doc 11/11/2019 Notice of Mortgage Payment Change (Claim # 1) with Certificate of Service by KEYBANK NATIONAL ASSOCIATION. (Sainato, Giovanna)

doc 10/14/2019 Notice of Mortgage Payment Change (Claim # 1) with Certificate of Service by KEYBANK NATIONAL ASSOCIATION. (Sainato, Giovanna)

Details 1-1 09/16/2019 Claim #1 filed by KeyBank, N.A., Amount claimed: $66130.48 (Banaszak, Christine)

*Description:* (1-1) Acct # 4950

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Shane Christopher Buczek |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Western District of New York |
| Case number | 19-11441 |

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:  Identify the Claim

| | |
|---|---|
| **1. Who is the current creditor?** | KeyBank N.A. <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor _____ |
| **2. Has this claim been acquired from someone else?** | ☑ No <br> ☐ Yes.  From whom? _____ |

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| KeyBank N.A. <br> Name | KeyBank N.A. <br> Name |
| 4910 Tiedeman Road <br> Number      Street | PO Box 94968 <br> Number      Street |
| Brooklyn      OH      44144 <br> City      State      ZIP Code | Cleveland      OH      44101 <br> City      State      ZIP Code |
| Contact phone  877-338-9436 | Contact phone  877-338-9436 |
| Contact email  bk_specialists@keybank.com | Contact email  bk_specialists@keybank.com |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

| | |
|---|---|
| **4. Does this claim amend one already filed?** | ☑ No <br> ☐ Yes.  Claim number on court claims registry (if known) _____    Filed on ____ / ____ / _____ <br>                                                 MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No <br> ☐ Yes.  Who made the earlier filing? _____ |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _4_ _9_ _5_ _0_

**7. How much is the claim?**

$_____ 66,130.48. **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection: Recorded Mortgage

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $_____

Amount of the claim that is secured: $_____ 66,130.48

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $_____ 29,166.01

Annual Interest Rate (when case was filed) 6.6000 %

☐ Fixed

☑ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

☑ No

☐ Yes. *Check one:*

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

| | Amount entitled to priority |
|---|---|

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). — $_____

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). — $_____

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). — $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). — $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). — $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. — $_____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

| Part 3: | Sign Below |
|---|---|

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  09/10/2019
            MM / DD / YYYY

/s/Christine Banaszak
_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Christine Banaszak | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Bankruptcy Specialist | | |
| Company | KeyBank N.A. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 4910 Tiedeman Road | | |
| | Number      Street | | |
| | Brooklyn | OH | 44144 |
| | City | State | ZIP Code |
| Contact phone | 877-338-9436 | Email | bk_specialists@keybank.com |

# Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

## Part 1: Mortgage and Case Information

| | |
|---|---|
| Case number: | 19-11441 |
| Debtor 1: | Shane Christopher Buczek |
| Debtor 2: | |
| Last 4 digits to identify: | 4 9 5 0 |
| Creditor: | KeyBank, NA |
| Servicer: | n/a |
| Fixed accrual/daily simple interest/other: | variable |

## Part 2: Total Debt Calculation

| | |
|---|---|
| Principal balance: | $49,947.46 |
| Interest due: | $13,809.02 |
| Fees, costs due: | $2,374.00 |
| Escrow deficiency for funds advanced: | |
| Less total funds on hand: | – |
| Total debt: | $66,130.48 |

## Part 3: Arrearage as of Date of the Petition

| | |
|---|---|
| Principal & interest due: | $26,792.01 |
| Prepetition fees due: | $2,374.00 |
| Escrow deficiency for funds advanced: | |
| Projected escrow shortage: | |
| Less funds on hand: | – |
| Total prepetition arrearage: | $29,166.01 |

## Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & interest: | |
| Monthly escrow: | |
| Private mortgage insurance: | |
| Total monthly payment: | Variable |

## Part 5: Loan Payment History from First Date of Default

| | | Account Activity | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount Incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |

Official Form 410A

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
| 4/6/2014 | 389.86 | | | Monthly Payment | 4/6/2014 | 389.86 | | | | | | 49,947.46 | | | - | - |
| 4/17/2014 | | | 30.00 | Late Fee | 4/6/2014 | 389.86 | | | | | (30.00) | 49,947.46 | | | 30.00 | - |
| 5/6/2014 | 386.64 | | | Monthly Payment | 4/6/2014 | 776.50 | | | | | | 49,947.46 | | | 30.00 | - |
| 5/17/2014 | | | 30.00 | Late Fee | 4/6/2014 | 776.50 | | | | | (30.00) | 49,947.46 | | | 60.00 | - |
| 6/6/2014 | 392.64 | | | Monthly Payment | 4/6/2014 | 1,169.14 | | | | | | 49,947.46 | | | 60.00 | - |
| 6/17/2014 | | | 30.00 | Late Fee | 4/6/2014 | 1,169.14 | | | | | (30.00) | 49,947.46 | | | 90.00 | - |
| 7/6/2014 | 386.69 | | | Monthly Payment | 4/6/2014 | 1,555.83 | | | | | | 49,947.46 | | | 90.00 | - |
| 7/17/2014 | | | 30.00 | Late Fee | 4/6/2014 | 1,555.83 | | | | | (30.00) | 49,947.46 | | | 120.00 | - |
| 8/6/2014 | 392.64 | | | Monthly Payment | 4/6/2014 | 1,948.47 | | | | | | 49,947.46 | | | 120.00 | - |
| 8/15/2014 | | | 100.00 | BPO | 4/6/2014 | 1,948.47 | | | | | (100.00) | 49,947.46 | | | 220.00 | - |
| 8/17/2014 | | | 30.00 | Late Fee | 4/6/2014 | 1,948.47 | | | | | (30.00) | 49,947.46 | | | 250.00 | - |
| 9/6/2014 | 392.64 | | | Monthly Payment | 4/6/2014 | 2,341.11 | | | | | | 49,947.46 | | | 250.00 | - |
| 9/17/2014 | | | 30.00 | Late Fee | 4/6/2014 | 2,341.11 | | | | | (30.00) | 49,947.46 | | | 280.00 | - |
| 10/6/2014 | 386.69 | | | Monthly Payment | 4/6/2014 | 2,727.80 | | | | | | 49,947.46 | | | 280.00 | - |
| 10/17/2014 | | | 30.00 | Late Fee | 4/6/2014 | 2,727.80 | | | | | (30.00) | 49,947.46 | | | 310.00 | - |
| 11/6/2014 | 392.64 | | | Monthly Payment | 4/6/2014 | 3,120.44 | | | | | | 49,947.46 | | | 310.00 | - |
| 11/17/2014 | | | 30.00 | Late Fee | 4/6/2014 | 3,120.44 | | | | | (30.00) | 49,947.46 | | | 340.00 | - |
| 12/6/2014 | 386.69 | | | Monthly Payment | 4/6/2014 | 3,507.13 | | | | | | 49,947.46 | | | 340.00 | - |
| 12/17/2014 | | | 30.00 | Late Fee | 4/6/2014 | 3,507.13 | | | | | (30.00) | 49,947.46 | | | 370.00 | - |
| 1/6/2015 | 392.64 | | | Monthly Payment | 4/6/2014 | 3,899.77 | | | | | | 49,947.46 | | | 370.00 | - |
| 1/17/2015 | | | 30.00 | Late Fee | 4/6/2014 | 3,899.77 | | | | | (30.00) | 49,947.46 | | | 400.00 | - |
| 2/6/2015 | 392.64 | | | Monthly Payment | 4/6/2014 | 4,292.41 | | | | | | 49,947.46 | | | 400.00 | - |
| 2/17/2015 | | | 30.00 | Late Fee | 4/6/2014 | 4,292.41 | | | | | (30.00) | 49,947.46 | | | 430.00 | - |
| 3/6/2015 | 374.79 | | | Monthly Payment | 4/6/2014 | 4,667.20 | | | | | | 49,947.46 | | | 430.00 | - |
| 3/17/2015 | | | 30.00 | Late Fee | 4/6/2014 | 4,667.20 | | | | | (30.00) | 49,947.46 | | | 460.00 | - |
| 4/6/2015 | 392.64 | | | Monthly Payment | 4/6/2014 | 5,059.84 | | | | | | 49,947.46 | | | 460.00 | - |
| 4/8/2015 | | | 120.00 | BPO | 4/6/2014 | 5,059.84 | | | | | (120.00) | 49,947.46 | | | 580.00 | - |
| 4/17/2015 | | | 30.00 | Late Fee | 4/6/2014 | 5,059.84 | | | | | (30.00) | 49,947.46 | | | 610.00 | - |
| 5/6/2015 | 386.69 | | | Monthly Payment | 4/6/2014 | 5,446.53 | | | | | | 49,947.46 | | | 610.00 | - |
| 5/17/2015 | | | 30.00 | Late Fee | 4/6/2014 | 5,446.53 | | | | | (30.00) | 49,947.46 | | | 640.00 | - |
| 6/6/2015 | 392.64 | | | Monthly Payment | 4/6/2014 | 5,839.17 | | | | | | 49,947.46 | | | 640.00 | - |
| 6/17/2015 | | | 30.00 | Late Fee | 4/6/2014 | 5,839.17 | | | | | (30.00) | 49,947.46 | | | 670.00 | - |
| 7/6/2015 | 386.69 | | | Monthly Payment | 4/6/2014 | 6,225.86 | | | | | | 49,947.46 | | | 670.00 | - |
| 7/17/2015 | | | 30.00 | Late Fee | 4/6/2014 | 6,225.86 | | | | | (30.00) | 49,947.46 | | | 700.00 | - |
| 8/6/2015 | 392.64 | | | Monthly Payment | 4/6/2014 | 6,618.50 | | | | | | 49,947.46 | | | 700.00 | - |
| 8/17/2015 | | | 30.00 | Late Fee | 4/6/2014 | 6,618.50 | | | | | (30.00) | 49,947.46 | | | 730.00 | - |
| 9/6/2015 | 392.64 | | | Monthly Payment | 4/6/2014 | 7,011.14 | | | | | | 49,947.46 | | | 730.00 | - |
| 9/17/2015 | | | 30.00 | Late Fee | 4/6/2014 | 7,011.14 | | | | | (30.00) | 49,947.46 | | | 760.00 | - |
| 10/6/2015 | 386.69 | | | Monthly Payment | 4/6/2014 | 7,397.83 | | | | | | 49,947.46 | | | 760.00 | - |
| 10/17/2015 | | | 30.00 | Late Fee | 4/6/2014 | 7,397.83 | | | | | (30.00) | 49,947.46 | | | 730.00 | - |
| 10/20/2015 | | | 120.00 | BPO | 4/6/2014 | 7,397.83 | | | | 30.00 | (120.00) | 49,947.46 | | | 850.00 | - |
| 11/6/2015 | 392.65 | | | Monthly Payment | 4/6/2014 | 7,790.48 | | | | | | 49,947.46 | | | 850.00 | - |
| 11/17/2015 | | | 30.00 | Late Fee | 4/6/2014 | 7,790.48 | | | | | (30.00) | 49,947.46 | | | 880.00 | - |

| Date | Amount | Description | Charge | Credit | Date | Balance | Loan Amount | Total |
|---|---|---|---|---|---|---|---|---|
| 12/6/2015 | $ 386.69 | Monthly Payment | | | 4/6/2014 | $ 8,177.17 | $ 49,947.46 | $ 880.00 |
| 12/17/2015 | | Late Fee | $ 30.00 | $ (30.00) | 4/6/2014 | 8,177.17 | 49,947.46 | 910.00 |
| 1/6/2016 | 392.64 | Monthly Payment | | | 4/6/2014 | 8,569.81 | 49,947.46 | 910.00 |
| 1/16/2016 | | Late Fee | $ 30.00 | $ (30.00) | 4/6/2014 | 8,971.48 | 49,947.46 | 940.00 |
| 2/6/2016 | 401.67 | Monthly Payment | | | 4/6/2014 | 8,971.48 | 49,947.46 | 940.00 |
| 2/17/2016 | | Late Fee | $ 30.00 | $ (30.00) | 4/6/2014 | 9,361.64 | 49,947.46 | 970.00 |
| 3/6/2016 | 390.16 | Monthly Payment | | | 4/6/2014 | 9,361.64 | 49,947.46 | 970.00 |
| 3/17/2016 | | Late Fee | $ 30.00 | $ (30.00) | 4/6/2014 | 9,764.35 | 49,947.46 | 1,000.00 |
| 4/6/2016 | 402.71 | Monthly Payment | | | 4/6/2014 | 9,764.35 | 49,947.46 | 1,000.00 |
| 4/17/2016 | | Late Fee | $ 30.00 | $ (30.00) | 4/6/2014 | 10,160.79 | 49,947.46 | 1,030.00 |
| 5/6/2016 | 396.44 | Monthly Payment | | | 4/6/2014 | 10,160.79 | 49,947.46 | 1,030.00 |
| 5/17/2016 | | Late Fee | $ 30.00 | $ (30.00) | 4/6/2014 | 10,563.50 | 49,947.46 | 1,060.00 |
| 6/6/2016 | 402.71 | Monthly Payment | | | 4/6/2014 | 10,563.50 | 49,947.46 | 1,060.00 |
| 6/17/2016 | | Late Fee | $ 30.00 | $ (30.00) | 4/6/2014 | 10,959.94 | 49,947.46 | 1,090.00 |
| 7/6/2016 | 396.44 | Monthly Payment | | | 4/6/2014 | 10,959.94 | 49,947.46 | 1,090.00 |
| 7/17/2016 | | Late Fee | $ 30.00 | $ (30.00) | 4/6/2014 | 11,362.65 | 49,947.46 | 1,120.00 |
| 8/6/2016 | 402.71 | Monthly Payment | | | 4/6/2014 | 11,362.65 | 49,947.46 | 1,120.00 |
| 8/17/2016 | | Late Fee | $ 30.00 | $ (30.00) | 4/6/2014 | 11,362.65 | 49,947.46 | 1,150.00 |
| 8/29/2016 | | BPO | 120.00 | $ (120.00) | 4/6/2014 | 11,765.37 | 49,947.46 | 1,270.00 |
| 9/6/2016 | 402.72 | Monthly Payment | | | 4/6/2014 | 11,765.37 | 49,947.46 | 1,300.00 |
| 9/17/2016 | | Late Fee | $ 30.00 | $ (30.00) | 4/6/2014 | 12,161.80 | 49,947.46 | 1,330.00 |
| 10/6/2016 | 396.43 | Monthly Payment | | | 4/6/2014 | 12,161.80 | 49,947.46 | 1,330.00 |
| 10/17/2016 | | Late Fee | $ 30.00 | $ (30.00) | 4/6/2014 | 12,161.80 | 49,947.46 | 1,347.00 |
| 10/27/2016 | | BPO | 17.00 | $ (17.00) | 4/6/2014 | 12,161.80 | 49,947.46 | 1,502.00 |
| 10/27/2016 | | BPO | 125.00 | $ (125.00) | 4/6/2014 | 12,564.52 | 49,947.46 | 1,502.00 |
| 11/6/2016 | 402.72 | Monthly Payment | | | 4/6/2014 | 12,564.52 | 49,947.46 | 1,532.00 |
| 11/17/2016 | | Late Fee | $ 30.00 | $ (30.00) | 4/6/2014 | 12,960.95 | 49,947.46 | 1,532.00 |
| 12/6/2016 | 396.43 | Monthly Payment | | | 4/6/2014 | 12,960.95 | 49,947.46 | 1,562.00 |
| 12/17/2016 | | Late Fee | $ 30.00 | $ (30.00) | 4/6/2014 | 13,363.67 | 49,947.46 | 1,562.00 |
| 1/6/2017 | 402.72 | Monthly Payment | | | 4/6/2014 | 13,363.67 | 49,947.46 | 1,592.00 |
| 1/17/2017 | | Late Fee | $ 30.00 | $ (30.00) | 4/6/2014 | 13,776.49 | 49,947.46 | 1,592.00 |
| 2/6/2017 | 412.82 | Monthly Payment | | | 4/6/2014 | 13,776.49 | 49,947.46 | 1,622.00 |
| 2/17/2017 | | Late Fee | $ 30.00 | $ (30.00) | 4/6/2014 | 14,170.44 | 49,947.46 | 1,622.00 |
| 3/6/2017 | 393.95 | Monthly Payment | | | 4/6/2014 | 14,170.44 | 49,947.46 | 1,652.00 |
| 3/17/2017 | | Late Fee | $ 30.00 | $ (30.00) | 4/6/2014 | 14,584.29 | 49,947.46 | 1,652.00 |
| 4/6/2017 | 413.85 | Monthly Payment | | | 4/6/2014 | 14,584.29 | 49,947.46 | 1,682.00 |
| 4/17/2017 | | Late Fee | $ 30.00 | $ (30.00) | 4/6/2014 | 14,584.29 | 49,947.46 | 1,767.00 |
| 4/27/2017 | | Equity Report | 85.00 | $ (85.00) | 4/6/2014 | 14,584.29 | 49,947.46 | 1,784.00 |
| 4/27/2017 | | BPO | 17.00 | $ (17.00) | 4/6/2014 | 15,000.74 | 49,947.46 | 1,784.00 |
| 5/6/2017 | 416.45 | Monthly Payment | | | 4/6/2014 | 15,000.74 | 49,947.46 | 1,814.00 |
| 5/17/2017 | | Late Fee | $ 30.00 | $ (30.00) | 4/6/2014 | 15,425.20 | 49,947.46 | 1,814.00 |
| 6/6/2017 | 424.46 | Monthly Payment | | | 4/6/2014 | 15,425.20 | 49,947.46 | 1,844.00 |
| 6/17/2017 | | Late Fee | $ 30.00 | $ (30.00) | 4/6/2014 | 15,842.68 | 49,947.46 | 1,844.00 |
| 7/6/2017 | 417.48 | Monthly Payment | | | 4/6/2014 | 15,842.68 | 49,947.46 | 1,874.00 |
| 7/17/2017 | | Late Fee | $ 30.00 | $ (30.00) | 4/6/2014 | 16,276.71 | 49,947.46 | 1,874.00 |
| 8/6/2017 | 434.03 | Monthly Payment | | | 4/6/2014 | 16,764.79 | 49,947.46 | 1,904.00 |
| 8/17/2017 | | Late Fee | $ 30.00 | $ (30.00) | 4/6/2014 | 17,199.86 | 49,947.46 | 1,904.00 |
| 9/6/2017 | 435.07 | Monthly Payment | | | 4/6/2014 | 17,199.86 | 49,947.46 | 1,934.00 |
| 9/17/2017 | | Late Fee | 30.00 | | 4/6/2014 | | 49,947.46 | |

| Date | Amount | Fee | Description | Orig. Date | Balance | Adjustment | | Total | | Fees | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/6/2017 | $ 427.74 | | Monthly Payment | 4/6/2014 | $ 17,627.60 | | $ | $ 49,947.46 | $ | $ 1,964.00 | $ - |
| 10/17/2017 | | $ 30.00 | Late Fee | 4/6/2014 | $ 17,627.60 | $ (30.00) | $ | $ 49,947.46 | $ | $ 1,994.00 | $ - |
| 10/30/2017 | | $ 100.00 | BPO | 4/6/2014 | $ 17,627.60 | $ (100.00) | $ | $ 49,947.46 | $ | $ 2,094.00 | $ - |
| 11/6/2017 | $ 435.06 | | Monthly Payment | 4/6/2014 | $ 18,062.66 | | $ | $ 49,947.46 | $ | $ 2,094.00 | $ - |
| 11/16/2017 | | $ 30.00 | Late Fee | 4/6/2014 | $ 18,062.66 | $ (30.00) | $ | $ 49,947.46 | $ | $ 2,124.00 | $ - |
| 12/6/2017 | $ 427.74 | | Monthly Payment | 4/6/2014 | $ 18,490.40 | | $ | $ 49,947.46 | $ | $ 2,124.00 | $ - |
| 12/17/2017 | | $ 30.00 | Late Fee | 4/6/2014 | $ 18,490.40 | $ (30.00) | $ | $ 49,947.46 | $ | $ 2,154.00 | $ - |
| 1/6/2018 | $ 435.07 | | Monthly Payment | 4/6/2014 | $ 18,925.47 | | $ | $ 49,947.46 | $ | $ 2,154.00 | $ - |
| 1/17/2018 | | $ 30.00 | Late Fee | 4/6/2014 | $ 18,925.47 | $ (30.00) | $ | $ 49,947.46 | $ | $ 2,184.00 | $ - |
| 2/6/2018 | $ 445.32 | | Monthly Payment | 4/6/2014 | $ 19,370.79 | | $ | $ 49,947.46 | $ | $ 2,184.00 | $ - |
| 2/17/2018 | | $ 30.00 | Late Fee | 4/6/2014 | $ 19,370.79 | $ (30.00) | $ | $ 49,947.46 | $ | $ 2,214.00 | $ - |
| 3/6/2018 | $ 422.68 | | Monthly Payment | 4/6/2014 | $ 19,793.47 | | $ | $ 49,947.46 | $ | $ 2,214.00 | $ - |
| 3/17/2018 | | $ 30.00 | Late Fee | 4/6/2014 | $ 19,793.47 | $ (30.00) | $ | $ 49,947.46 | $ | $ 2,244.00 | $ - |
| 4/6/2018 | $ 445.67 | | Monthly Payment | 4/6/2014 | $ 20,239.14 | | $ | $ 49,947.46 | $ | $ 2,244.00 | $ - |
| 4/17/2018 | | $ 30.00 | Late Fee | 4/6/2014 | $ 20,239.14 | $ (30.00) | $ | $ 49,947.46 | $ | $ 2,274.00 | $ - |
| 4/19/2018 | | $ 100.00 | BPO | 4/6/2014 | $ 20,239.14 | $ (100.00) | $ | $ 49,947.46 | $ | $ 2,374.00 | $ - |
| 5/6/2018 | $ 445.19 | | Monthly Payment | 4/6/2014 | $ 20,684.33 | | $ | $ 49,947.46 | $ | $ 2,374.00 | $ - |
| 6/6/2018 | $ 456.27 | | Monthly Payment | 4/6/2014 | $ 21,140.60 | | $ | $ 49,947.46 | $ | $ 2,374.00 | $ - |
| 7/6/2018 | $ 448.27 | | Monthly Payment | 4/6/2014 | $ 21,588.87 | | $ | $ 49,947.46 | $ | $ 2,374.00 | $ - |
| 8/6/2018 | $ 466.20 | | Monthly Payment | 4/6/2014 | $ 22,055.07 | | $ | $ 49,947.46 | $ | $ 2,374.00 | $ - |
| 9/6/2018 | $ 466.88 | | Monthly Payment | 4/6/2014 | $ 22,521.95 | | $ | $ 49,947.46 | $ | $ 2,374.00 | $ - |
| 10/6/2018 | $ 458.53 | | Monthly Payment | 4/6/2014 | $ 22,980.48 | | $ | $ 49,947.46 | $ | $ 2,374.00 | $ - |
| 11/6/2018 | $ 472.35 | | Monthly Payment | 4/6/2014 | $ 23,452.83 | | $ | $ 49,947.46 | $ | $ 2,374.00 | $ - |
| 12/6/2018 | $ 468.79 | | Monthly Payment | 4/6/2014 | $ 23,921.62 | | $ | $ 49,947.46 | $ | $ 2,374.00 | $ - |
| 1/6/2019 | $ 477.49 | | Monthly Payment | 4/6/2014 | $ 24,399.11 | | $ | $ 49,947.46 | $ | $ 2,374.00 | $ - |
| 2/6/2019 | $ 485.69 | | Monthly Payment | 4/6/2014 | $ 24,884.80 | | $ | $ 49,947.46 | $ | $ 2,374.00 | $ - |
| 3/6/2019 | $ 461.00 | | Monthly Payment | 4/6/2014 | $ 25,345.80 | | $ | $ 49,947.46 | $ | $ 2,374.00 | $ - |
| 4/6/2019 | $ 488.09 | | Monthly Payment | 4/6/2014 | $ 25,833.89 | | $ | $ 49,947.46 | $ | $ 2,374.00 | $ - |
| 5/6/2019 | $ 479.06 | | Monthly Payment | 4/6/2014 | $ 26,312.95 | | $ | $ 49,947.46 | $ | $ 2,374.00 | $ - |
| 6/6/2019 | $ 488.08 | | Monthly Payment | 4/6/2014 | $ 26,312.95 | | $ | $ 49,947.46 | $ | $ 2,374.00 | $ - |
| 7/6/2019 | $ 479.06 | | Monthly Payment | 4/6/2014 | $ 26,792.01 | | $ | $ 49,947.46 | $ | $ 2,374.00 | $ - |
| 7/19/2019 | $ 479.06 | | Bankruptcy Filing | 4/6/2014 | $ 26,792.01 | | $ | $ 49,947.46 | $ | $ 2,374.00 | $ - |

```
AMAI           09/10/19          ACCOUNT INQUIRY          13:03:17
CUR
CTL2 000  CTL3 000  CTL4 0000  ACCT ████████4950    EFF DATE      07/19/19
CTL2 000  CTL3 000  CTL4 0000  CUST ██████3444      LEGAL STAT = 13
                  PRIVACY: REGP Y  FCRA N  FACT-M N  SIMPLE INT - VAR RATE
PAYOFF        RESTRICTED      ******** RATES ********  AUTO DR             N
LINE AMOUNT       50000.00    PRIMARY RATE  6.6000000  PROD TYPE        KEOP
AVAILABLE AMT         0.00    CURR RATE     6.6000000  PRIM OFFICER    AEH0D
LT CHG DUE         1470.00    ORIG RATE     6.1000000  █████████████
FEES DUE           4804.56    PER DIEM      9.0315955  CALL CODE        01C1
CURRENT PRIN      49947.46    ********* DATES ********  ***** REPAYMENTS *****
CURRENT INT       13809.02    CONTRACT DATE  10/07/08  CURR TERM           0
SCH PYMT AMT                  CURR MATURITY  12319999  PYMTS MADE         64
CUR PYMT AMT        488.09    CLOSED DATE              PYMTS REM         999
PAST DUE AMT      26792.01    SCHED DUE DATE 08/06/19  MONTHS EXTD  0 REN 000
PARTIAL PAID          0.00    PAST DUE DATE  04/06/14  YTD INT COLL     0.00
**************************    LAST MAINT DT  05/17/19  INT COL PREV     0.00
DEBORAH A BUCZEK              LST BAL CHG DT 03/14/14  ***** CREDIT HIST *****
7335 DERBY RD                                          011 031 061 091 121 151
                                      COLLATERAL       001 001 001 001 001 059
DERBY             NY 14047-9636 CODE: 824   RELATIONSHIP  B
PH (   ) ( ████████████              DESC: 7335 DERBY RD
PF3-ADDL INFO  PF6-ESCROW
```

```
AMPP          09/10/19      PAYOFF PROCESSING       13:06:00
CUR     DEPT 000 BATCH 00000 SUB 00000
CTL2 000 CTL3 000 CTL4 0000 ACCT ▓▓▓▓▓▓4950 BUCZEK DEBORA EFF DT 07/19/19
PAYOFF AMT        RESTRICTED        TAKEDOWN ID
ENTER 'Y' TO PROCESS          N       PAYOFF CHANGE DT           07/22/19
PD BY COMAKER   RECAP FEE         0.00  DAILY INT AMOUNT          9.03159
CHECK NBR
ENTER 'Y' TO PAYDOWN ONLY   N     RECONVEYANCE FEE               50.50
C/O APPLIED TO PO              .00   RECON FEE COUNTY ERIE
TYPE/CD        AMOUNT TO APPLY      CURRENT BALANCE       ENDING BALANCE
  PRD01               .00                .00                  .00
  PRI01          49,947.46          49,947.46                 .00
  FLG00           4,704.56           4,704.56                 .00
  F7V00             100.00             100.00                 .00
  LTC00           1,470.00           1,470.00                 .00
  INT01          13,809.02          13,809.02                 .00
  INT02               .00                .00                  .00
  FRV01              50.50              50.50                 .00


COMMENT              REFERENCE NUMBER          REASON
PF1-NEXT  PF2-PREV  PF3-AMF1  PF10-AMAF
```



## KEY EQUITY OPTIONS AGREEMENT

**Meaning of Words:** In this Agreement the words "we" "us" and "our" mean KeyBank National Association ("KeyBank") 4910 Tiedeman Road, Suite C, Brooklyn, OH 44144 ˙ The words "you" and "your" mean jointly and severally˙
DEBORAH A. BUCZEK

7335 DERBY RD     DERBY, NY 14047
(Borrower(s) Name(s) and Residence) and the word "Agreement" means this Key Equity Options Agreement.

**Terms of Agreement:** This Agreement governs the use of your Key Equity Options line of credit account (the "Account") with us  It describes your variable rate, open-end, revolving line of credit with us (the "Variable Rate Portion") and the Fixed Rate Option by which you may elect to repay certain advances against your line ("Line") of credit at a fixed interest rate for a specified term.

### I. KEY EQUITY OPTIONS AGREEMENT

**1. Credit Limit:** An approved Line of $ 50,000.00 ("Credit Limit") is established for your Key Equity Options Account.  During the draw period, you may obtain advances ("Advance"), repay and then obtain additional Advances, provided such Advances would not cause your Credit Limit to be exceeded  Your Credit Limit will be reduced by Advances taken against your Account and by the amount of any Fixed Rate Option(s) which you elect to take  During the draw period, any amount(s) you repay against the outstanding principal balance of the Variable Rate Portion or any Fixed Rate Option will increase the amount of credit available to you accordingly. During the repayment period, you will no longer be entitled to obtain Advances.  You agree not to request an Advance which would cause the total of Advances outstanding, together with all other sums owed under this Agreement (including finance charges and other charges), to exceed the Credit Limit  You further agree not to use any such Advances for any purpose expressly prohibited in any Rider to this Agreement which is incorporated into this Agreement.

**2. Access to Your Account:** You may obtain and direct Advances from your Account, up to your Credit Limit, as follows

 **A. Cash Advance**  You may request a Cash Advance in person at designated branches during normal business hours,

 **B. Telephone Transfer** You may request an Advance from us if you have a deposit account with us and have been approved for telephone transfers, by making a telephone transfer request for a specified sum to be advanced under your Account and deposited in a deposit account that is maintained with us.  In order to access your Account by telephone transfer you must maintain one or more eligible deposit accounts with us throughout the term of this Agreement, including the term of any Fixed Rate Option.  No separate minimum balance or usage requirements for those deposit accounts are imposed under this Agreement;

 **C. Overdrafts-Linked Account (NOT AVAILABLE IN CONNECTICUT AND NEW YORK)** If you have a demand deposit account with us that is linked to your Account, you may access your Account by an overdraft of that linked deposit account (the "Linked Account") up to the amount of your Credit Limit. Only one deposit account may be linked to your Account for the overdraft protection.

 The linking of a deposit account to your Account is optional, but you will not enjoy any overdraft privileges unless you do link a deposit account to your Account.  If the Linked Account becomes overdrawn, funds will automatically be transferred to the Linked Account in an amount sufficient to cover the overdraft.  Overdrafts of the Linked Account will be covered up to the amount of your available Credit Limit whether the overdraft occurs through charges or other debits to the Linked Account or your accessing the Linked Account.  The person(s) who signed the Agreement as Borrower(s) must also be the same and only person(s) who are identified as owners of the Linked Account;

☐ If this box is checked, you elect to use your Key Equity Options Account as overdraft protection on your KeyBank Checking Account Number _____ ; and

 **D. KeyEquity Card.  (THE KEYEQUITY CARD IS NOT AVAILABLE IN CONNECTICUT OR NEW YORK)** You will be issued and agree to accept a KeyEquity Card credit card.  All transactions you make with the Key Equity Card will be treated as an Advance and posted to your Account as of the date of the transaction, and

 **E. Equity Line Checks.** Your Account may be accessed by special Equity Line Checks ("Checks") provided by us. You will receive these Checks imprinted with your Account number.  The amount of each Check will be treated as an Advance and posted to your Account.

**3. Promise to Pay:** You promise to pay all amounts outstanding on your Account, including any fees and charges we impose.  If more than one person signs this Agreement, you agree that (i) we can enforce our rights against each of you individually or against all of you together and (ii) we can send Account statements, notices and any other correspondence to either of you.

**4. Security:** You are giving us the right of setoff and a mortgage/deed of trust security interest on your Residence or the real estate located at 7335 DERBY RD   DERBY, NY 14047 _____ ("Property") (Address if different than above)  You agree to execute a mortgage deed or deed of trust ("Security Instrument") giving us a security interest in this real estate.  All Advances up to the Credit Limit, which we are obligated to make under this Agreement, will be secured by the Security Instrument.  Except for the liens described in the Security Instrument, you will not permit, create or allow any other encumbrance or lien on this real estate without our prior written consent  We will consider any default by you under the Security Instrument a default in the material obligations under this Agreement.  You could lose your Property if you don't meet the obligations in your Agreement with us.  Other property held by us as

UN_KBNA KEOP/KEOH Agreement          Page 1          Line #          4950
Rev 09/2008   Case 1-19-11441-CLB    Claim 1-1    Filed 09/16/19   Document    Page 10 of 25

Case 1-19-11441-CLB,   Doc 279,   Filed 06/24/20   Entered 06/24/20 14:50:24,
Description: Main Document  , Page 56 of 96

collateral securing other loans (unless the other property is the principal residence of any person having an ownership interest in that property) may also secure your Account.

**5. Key Protect:** You are not required to obtain accidental loss of life, natural loss of life or accidental disability debt cancellation protection (collectively referred to as "debt cancellation protection") as a condition of obtaining credit under this Agreement. If we have offered you debt cancellation protection and you have elected to purchase it from us, you authorize us to add the cost of the debt cancellation protection fee to your Account each monthly billing cycle. If you want this optional protection, you must complete a separate application. We may allow you to exceed the Credit Limit temporarily from time to time to accommodate these debt cancellation fee amounts and you may be charged an Over Limit fee. The amount of debt cancellation protection available for purchase may not be sufficient to cover the entire outstanding balance of your Account.

**6. Term/Minimum Monthly Payment:** *Draw Period.* The length of the Draw Period during which you can obtain Advances against your Account is Twenty (20) _____ years / 240 months. During the Draw Period, payments are due monthly. You agree that during the Draw Period you will make payments equal to the required minimum payment for both the Variable Rate Portion and any Fixed Rate Option(s) ("Minimum Monthly Payment"). In addition to the required minimum payment for both the Variable Rate Portion and any Fixed Rate Option(s), your Minimum Monthly Payment will also include any past due amounts, and any fees, charges or debt cancellation fees. The Minimum Monthly Payment may not fully repay the principal outstanding on your Account.

You are required to pay us immediately all amounts exceeding your Credit Limit. The amount of your payment may change because the Annual Percentage Rate ("APR") is variable on the Variable Rate Portion. You promise to pay us the unpaid balance of Advances plus the Finance Charges, calculated at the daily periodic rate, and any additional charges permitted by this Agreement. Rate information will be provided on the monthly statements that we send you.

**A. Variable Rate Portion:** Required Minimum Payment (Select one of the following payment options.)

☐   Interest Only        An amount equal to accrued Finance Charges. (Not available in Connecticut.)

☒   Regular Payment      An amount equal to the greater of (a) 1/240th of the unpaid balance of Advances plus accrued Finance Charges or (b) $100.00, and all previously billed but unpaid minimum payments to your Account. Balances of less than $100.00 must be paid in full.

**B. Fixed Rate Option:** You agree to repay any Fixed Rate Option ("Option") in consecutive, substantially equal monthly payments at the interest rate, for the term, and with such other conditions as agreed upon at the time you exercise the Option. The monthly payment due on any Option will be an amount of principal and interest sufficient to amortize the Option over the term selected by you at the time the Option is exercised. This payment will be in addition to and combined with the required minimum payment due for your Variable Rate Portion as described in the Agreement. Disclosure of the required minimum payment due on the Option will be based on an estimated disbursement date.

If at the time that the Variable Rate Portion of your Account matures you still owe money under the terms of any Option(s), you shall continue to make payments on such Option(s) according to the terms and conditions of the Option confirmation notice(s) (which are incorporated into this Agreement by reference) and according to this Agreement.

**7. Term/Minimum Monthly Payment:** *Repayment Period.* The Repayment Period begins the first day after the Draw Period ends and continues for Fifteen (15) _____ years / 180 months. After the Draw Period ends, you will not be able to obtain any more Advances or exercise any Options and you will begin to repay the outstanding balance on your Variable Rate Portion by making consecutive monthly payments. During the Repayment Period, payments will be due monthly. Your monthly payment for the Variable Rate Portion will be computed, at the beginning of the Repayment Period and each year thereafter, to yield the monthly payment amount necessary to fully amortize the outstanding balance, together with Finance Charges, over the remaining term at the then current APR. There will be a minimum payment of $100 for the Variable Rate Portion during the Repayment Period and if your principal balance is less than $100, the full amount will be due. If the accrued Finance Charges for any given billing period on the Variable Rate Portion exceed the monthly payment for that same billing period, your monthly payment will be equal to the accrued Finance Charges for that billing period. The Minimum Monthly Payment due on your Account during the Repayment Period will include any monthly payment due on your Variable Rate Portion, any payments due on your Option(s), any past due amounts, any fees charged to your Account, and any debt cancellation fees.

**8. Variable Rate Portion. Prime Rate Index:** You must pay a Finance Charge on all Advances from the date each Advance is made until we receive payment in full. The Finance Charge is figured separately for both the Variable Rate Portion and any Fixed Rate Option(s). The Index used by us to determine the Finance Charge for the Variable Rate Portion is the "Prime Rate" as published in the Wall Street Journal "Money Rates" table ("Index"). The Index is published in each edition of the Wall Street Journal. Where more than one Prime Rate is published in any edition, the Index will be the highest of the Prime Rates set forth. The Prime Rate is just a pricing index and is not necessarily the lowest rate charged by us or any other lender. If the Index becomes unavailable for whatever reason, we will choose another Index which is also readily available and verifiable by you and which is beyond our control. We will notify you of the substitute or replacement Index. We may also change the margin if the Index becomes unavailable. The selection of any replacement Index and margin will be done in compliance with applicable law.

**9. Fixed Rate Option. Fannie Mae Index:** You must pay a Finance Charge on the Option from the date you exercise the Option until we receive payment in full. The Index used by us to determine the Finance Charge for the Option(s) is equal to Fannie Mae's required net yield, as of the business day prior to the date that you exercise the Option, for-30-year fixed rate mortgages covered by applicable 30-day mandatory delivery commitments as published in the Wall Street Journal "Money

## KEY EQUITY OPTIONS AGREEMENT

e ("FRO Index"). The FRO Index is published in each edition of the Wall Street Journal. If the FRO Index
navailable for whatever reason prior to the date you exercise an Option, we will chose another FRO Index which
dily available and verifiable by you and which is beyond our control We will notify you of the substitute or
nt FRO Index. We may also change the margin(s) disclosed below if the FRO Index becomes unavailable The
selection of any replacement FRO Index and Margin(s) will be done in compliance with applicable law.

**10 Maximum Annual Percentage Rate:** Your maximum APR is 18 0%, which is a **Daily Periodic Rate** of .049315%
( 049180% in a leap year) Your APR may change by any amount on any Change Date not to exceed the maximum APR.

**11. Minimum Annual Percentage Rate:** Your minimum APR is 3 49%, which is a **Daily Periodic Rate** of 009561%
(.009536% in a leap year) Your APR may change by any amount on any Change Date, but will not be less than the
minimum APR.

**12. Variable Annual Percentage Rate:** *Variable Rate Portion* Your Account has a variable rate feature The APR and
the minimum payment can change as a result The APR is based on the value of the index ("Index") described above. To
determine the APR that applies to your Account we ☒ add ☐ subtract a Margin of 1.10 % to the value of the Index.
The APR does not include costs other than interest. The APR on your Account may change daily If the Index increases in
value (assuming the same outstanding balance), the APR and minimum payment will also increase If the Index decreases
in value (assuming the same outstanding balance) the APR and minimum payment may decrease, but the minimum
payment during the Draw Period will always be at least the accrued Finance Charges, if you chose the interest only payment
option, or the lesser of $100 or the outstanding balance, if you chose the principal plus interest payment option. During the
Repayment Period, the minimum payment will always be at least the lesser of $100 or the outstanding balance If the Daily
Periodic Rate increases, a lesser portion of your minimum payment may be applied to principal and a greater portion will be
applied to Finance Charge The APR does not take into account your optional Linked Account.

The date on which your APR could change is called "Change Date"

**13. Finance Charge:** *Variable Rate Portion* We figure the daily Finance Charge on your Account by multiplying the
Daily Balance by the Daily Periodic Rate then in effect. Then we add all of the daily Finance Charges together to get the
total accrued Finance Charge for the billing cycle. The Daily Balance is figured this way we take the beginning principal
balance (which excludes unpaid Finance Charges [except for financed closing costs, if any]), each day and add to it any new
debit amounts (each of which is posted as of the effective date of the transaction). The principal balance includes the
amount of the Advance and any other items that are financed, such as closing costs, if any Next we subtract payments and
credits posted to the Account's principal balance (each of which is posted as of the effective date of the transaction) This
gives us your Daily Balance. (For purposes of figuring the Daily Balance, we will not subtract any payment or portion
thereof, that is in excess of the principal balance For each day there is a balance in excess of the principal balance ("credit
balance"), we will use zero in place of the credit balance.) We determine a daily periodic rate by dividing the "Annual
Percentage Rate" by the number of days in a year (365 or 366) Your periodic rates may vary
    The Finance Charge does not include costs other than interest. The Finance Charge does not take into account
your optional Linked Account. Payment in full of the new balance by the due date will not avoid the assessment of Finance
Charges on the balances from the date shown on your monthly statement through the date paid Finance Charges begin to
accrue as of the effective date of the Advance or charge There is no grace period.

**14. Initial Disclosure:** *Variable Rate Portion.*

☒ If this box is checked, the APR as of 10/05/08 is 6.10 %, which is a **Daily Periodic Rate** of
0.01666667 %. This rate may change daily

The initial APR is based on the Index and margin used for later rate adjustments.

    **A. Promotional Rate Discount**
☐ If this box is checked, the initial APR is n/a %, which results in a Daily Periodic Rate of
n/a %. The initial APR is "discounted." This initial APR is based on the Index ☐ plus ☐ minus a
margin of n/a %. The initial index plus/minus a margin will remain in effect through
n/a After the discounted period, the APR that will apply is the Index then in effect ☐ plus
☐ minus a margin of n/a % which, as of n/a , is n/a % APR and a Daily Periodic Rate of
n/a %.

The initial APR is not based on the margin used for later rate adjustments.

☐ If this box is checked, you must agree to take a minimum initial advance of n/a at the time the Account
    is opened in order to obtain the promotional rate discount. We reserve the right to apply the initial,
    non-discounted rate to the Account if the required minimum initial advance is not taken

☐ If this box is checked, you must have, or agree to open, a deposit account with us in order to obtain the
    promotional rate discount. We reserve the right to apply the initial, non-discounted rate to the Account if you do
    not have the required deposit account.

**15. Nature of a Fixed Rate Option:** During the Draw Period, you may use the Fixed Rate Option to convert amounts you
owe under the Variable Rate Portion of your Account from a variable to a fixed rate of interest. An Option will have a fixed
interest rate and specified term, and allows you to repay a specified amount in substantially equal consecutive monthly
payments that will be in addition to and combined with any minimum payment on your Variable Rate Portion. An Option

UN_KBNA KEOP/KEOH Agreement          Page 3          Line #          4950
Rev. 09/2008                                                ACAPS #

## KEY EQUITY OPTIONS AGREEMENT

may be for any amount between $5,000 and the amount of the credit remaining on the Variable Rate Portion of your Account. If there is an Option outstanding, your Account will consist of a Variable Rate Portion (reflecting the Advance(s) against the Line) and an Option portion (reflecting the Advances(s) against the Line which you have elected to repay at a fixed rate over a specified term). Your monthly statement will reflect both portions of your Account. You may choose a term between 12 and 180 months. The term of the Option may extend beyond the maturity of the Variable Rate Portion of your Account.

**16. Conditions for Exercising a Fixed Rate Option:** You may exercise an Option if a) you are in the Draw Period; b) no default exists under the terms of the Agreement; c) there are not more than three Fixed Rate Options outstanding after you exercise the Option, d) you have not exercised more than two Options within the previous 365 day period, and e) you sign any request forms that may be required by us to confirm your decision to exercise the Option. In no case may you exceed your Credit Limit by exercising the Option.

**17. Exercising the Fixed Rate Option:** To exercise the Fixed Rate Option call 1-800-KEY2YOU at such times or locations as we tell you.

**18. Finance Charge:** *Fixed Rate Option.* The Finance Charge on the Fixed Rate Option Portion of your Account is made up of the sum of two components as follows A. The first component is calculated by multiplying the Daily Balance for each day by the Daily Periodic Rate then in effect. (The Daily Periodic rate is determined by taking the FRO Index in effect, adding the appropriate Margin as described below, and dividing by the number of days in the year (365 or 366).) Then we add all of the daily Finance Charges together to get the total accrued Finance Charge for the statement cycle. B. The second component is the Fixed Rate Option Fee, whether financed or separately paid. (Finance Charge = A+B). The Daily Balance is figured this way we take the beginning principal balance (which excludes unpaid Finance Charges [except for any financed Fixed Rate Option fee]) and certain other charges, if any. The principal balance includes the amount of the Option and any other items that are financed, such as the Fixed Rate Option fee, if any. Next we subtract any payments and credits posted to the Account's principal balance (each of which is posted as of the effective date of the transaction). This gives us your Daily Balance.

**19. Initial Disclosure:** *Fixed Rate Option.* To the FRO Index value we will add a Margin of <u>1.010</u> % for Options between 12 and 60 months, <u>1.260</u> % for Options of more than 60 months to 120 months, and <u>2.010</u> % for Options of more than 120 and 180 months. As of <u>10/06/08</u>, the **Daily Periodic Rate** for an Option of 12 to 60 months is <u>0.01874317</u> %. This is an **APR** of <u>6.860</u> %. As of <u>10/06/08</u>, the **Daily Periodic Rate** for an Option of more than 60 to 120 months is <u>0.01942623</u> %. This is an **APR** of <u>7.110</u> %. As of <u>10/06/08</u>, the **Daily Periodic Rate** for an Option of more than 120 to 180 months is <u>0.02147541</u> %. This is an **APR** of <u>7.860</u> %. Once an Option has been established, the Daily Periodic Rate for that Option *will not change* However, if the Daily Periodic Rate quoted to you for an Option changes before you exercise the Option, the corresponding minimum payment and APR may be different than the one quoted to you. An increase in the Daily Periodic Rate may increase the minimum payment. Notwithstanding any other provision in this Agreement, we do not intend the interest we charge to exceed the maximum rate allowed under applicable law. The APR (shown here) does not include costs other than interest. Finance Charges begin to accrue as of the effective date your Advance is converted to an Option.

    **A. Promotional Rates.** We may, in our discretion, offer a promotional rate from time to time to apply to any Option that meets the criteria for the promotional offer and is exercised during the promotional period. If we, in our discretion, choose to offer a promotional rate, the rate will be based on the FRO Index and will be equal to either the FRO Index, the FRO Index plus a reduced Margin, or the FRO Index minus a Margin. Any promotional rate offered will be set by us but will never exceed the rate determined by adding the Margin, stated above, to the FRO Index. We will tell you the FRO Index and Margin, if any, that will apply to your Option at the time you exercise the Option.

**20. Fixed Rate Option Fee. Finance Charge:** You will pay a Fixed Rate Option fee of $ <u>50.00</u> when you elect to exercise an Option. The APR shown on your monthly statement may increase for the month in which the fee is imposed. It may exceed the maximum APR shown above because it includes costs other than interest. This is the second component of the Finance Charge.

**21. Annual Membership Fee:** Your Key Equity Options Account may be charged an annual membership fee of $ <u>0.00</u> during the Draw Period whether or not you use the Account. If a membership fee is charged, the membership fee will be charged to your Account upon signing the Agreement and will automatically be charged to your Account annually in the month of the anniversary date of the opening of your Account. The membership fee is non-refundable and you will owe it once it is charged to your Account whether or not your Account is subsequently changed, suspended or terminated for any reason.

☐ If this box is checked, the Annual Membership Fee is waived for the first year

**22. Other Fees:** In addition to the Annual Fee, Fixed Rate Option Fee, and Closing Costs described in this Agreement, we charge the following fees.

    (a) <u>Late Fee</u>. We charge a late fee if we do not receive at least the Minimum Monthly Payment within ten (10) days after the payment due date, as stated on your monthly statement. The late fee for each late Payment will be ten percent (10%) of the Minimum Monthly Payment amount, not to exceed $30.00

    (b) <u>Returned Item Fee</u>. We may charge a returned item fee if any check or other instrument given for payment on the Account is dishonored for any reason. The returned item fee may be $20.00

    (c) <u>Overline Fee</u>. In the event you incur charges in amounts exceeding your Credit Limit, an overline fee in the amount of $20.00 may be charged for each instance where your Credit Limit is exceeded.

    (d) <u>Check Stop Payment Fee</u>. A fee of $20.00 may be charged in connection with each Check stop payment order placed by you. A Check Stop Payment Fee is not charged if your Account was opened in Indiana or Maine.

## KEY EQUITY OPTIONS AGREEMENT

(e) **KeyEquity Card Replacement Charge.** A fee of $10 00 may be charged to replace a KeyEquity Card for any reason.

(f) **Discharge Fee.** When we discharge or otherwise release the Security Instrument, you will be charged a fee for recording the discharge or satisfaction subject to any limitations applicable law imposes. Based upon current costs, we estimate the fee to be $ 43.50 .

You also agree to pay, if applicable law permits and subject to any limitations applicable law imposes, all costs we incur in collecting amounts owed under this Agreement or in enforcing or defending our rights under this Agreement. These costs may include collection agency fees, attorneys' fees, (which may exceed two percent (2%) of the total principal, interest and costs due), filing fees and court costs.

The above fees will be added to the Minimum Monthly Payment due

**23. Additional Charges:** You agree to pay the following charges

| | | | | |
|---|---|---|---|---|
| (a) Filing Fees | $ 0.00 | (f) Flood Hazard Determination | $ 0.00 |
| (b) Title Search/Title Insurance | $ 0.00 | (g) Life of Loan Flood Tracking | $ 0.00 |
| (c) Property Appraisal | $ 0.00 | (h) Mortgage Tax | $ 0.00 |
| (d) Credit Report | $ 0.00 | (i) Closing Agent Fee | $ 0.00 |
| (e) Notary | $ | (j) | $ 0.00 |
| | | TOTAL | $ 0.00 |

**24. Account Termination Fee:** If you voluntarily terminate this Agreement at any time prior to three (3) years from the date hereof, we charge and you agree to pay us a termination fee of $ 450.00

**25. Insurance:** In connection with the Security Instrument, we require fire and extended Property insurance in an amount equal to all liens on the Property described in the Security Instrument with a mortgagee payable clause in our favor. In addition, we require flood insurance, if applicable, as described in the Security Instrument. Your failure to meet this requirement will constitute an inaction by you that adversely affects our security thereby creating an event of default. This Property insurance will not be provided nor financed by us but may be obtained by you through any insurer acceptable to us. You will deliver to us copies of the insurance policy or policies or a certificate of insurance within thirty (30) days of the date of this Agreement. If you fail to do so or fail to pay the insurance premiums, we may obtain the insurance covering our interest. If we do this, any such amounts shall be assessed to your Account as Advances which will reduce the amount of available credit and you agree to pay such additional Advances. Such amounts may not be covered by the Security Instrument you have granted to us

**26. Reappraisal:** You agree that we have the right to inspect and reappraise any Property which secures Advances made under this Agreement, for as long as the Agreement is in effect or as long as any balance owed under the Agreement is still outstanding. If requested, you will give us permission to enter your dwelling and other Property to inspect and reappraise. We will conduct our inspection upon reasonable notice and at reasonable times. We may charge your Account for any costs that we incur in obtaining any reappraisal or in the appraisal review process, even if performed by our employees, up to a maximum of $ 400.00

**27. Liability:** We have no responsibility for the refusal of any merchants, banks or others to honor the KeyEquity Card and Checks or for any goods or services purchased through the use of your Account.

**28. Events of Default:** The entire Account balance including any amount owing on the Variable Rate Portion and all Fixed Rate Options will, at our option, become immediately due and payable, after any notice to you required by applicable law, in the event that (a) you fail to meet the repayment terms of this Agreement for any outstanding balance, or (b) there is any fraud or misrepresentation by you at any time in connection with this Account or (c) any action or inaction by you adversely affects our security or any of our rights in such security Any action or inaction by you which adversely affects our security, includes, but is not limited to, transfer of title to the Property, sale of the Property without our prior written consent, failure to maintain required insurance on the Property, commission of waste or destructive use of the Property, failure to maintain the Property such that it adversely affects our security, failure to pay taxes on the Property or other action which results in the filing of a senior lien on the Property, your death (in the state of Connecticut, the death of all Borrowers who signed this Agreement), the taking of the Property through eminent domain or illegal use of the Property. (If your Account is secured by a junior or secondary lien on property located in Connecticut and you have paid loan fees, points or similar prepaid finance charges, then any amount owing under this Agreement will, at our option, become immediately due and payable, without notice to you, if a required payment for any outstanding balance is more than sixty (60) days late or any other event described above occurs.)

Our failure to immediately and permanently terminate the Account or accelerate payment or take other permitted actions set forth above shall not prohibit us from taking such action at a later time, as long as the condition still exists at that time. We may prohibit additional Advances or reduce your Credit Limit in the event that (a) the value of the dwelling that secures the Account declines significantly below the Property's appraised value for purposes of the Account. For purposes of this paragraph, a decline in value shall be significant if the value of the dwelling declines such that the initial difference between the Credit Limit and the available equity (based on the Property's appraised value for purposes of the Agreement) is reduced by fifty percent (50%) or more. For example, assume a house with a first mortgage/deed of trust of $50,000 appraised at $100,000 and the credit limit is $30,000 The difference between the credit limit and the available equity is $20,000 ($50,000 - $30,000) If the Property value declines from $100,000 to $90,000, we could prohibit further Advances, (b) we reasonably believe you will be unable to fulfill the repayment obligations under this Agreement due to a material change in your financial circumstances, (c) you are in default of any material obligations under this Agreement; (d) we are precluded by government action from imposing the APR provided for in the Agreement, (e) the priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than 120% of

UN_KBNA KEOP/KEOH Agreement
Rev 09/2008
Page 5
Line # ____ 4950
ACAPS # ____

Case 1-19-11441-CLB   Claim 1-1   Filed 09/16/19   Desc Main Document
25
Page 14 of

Case 1-19-11441-CLB,   Doc 279,   Filed 06/24/20,   Entered 06/24/20 14:50:24,
Description: Main Document , Page 60 of 96

## KEY EQUITY OPTIONS AGREEMENT

the Credit Limit, (f) we are notified by our regulatory agency that continued Advances constitute an unsafe or unsound practice; or (g) the maximum APR is reached.

In order to reinstate the Agreement, you must send us a written request to that effect. We will only reinstate the Account if we determine to our satisfaction that the condition or reason which caused us to prohibit Advances or to reduce the Credit Limit either no longer exists or has been corrected. If an appraisal or title report is required to make such determination, we may charge you for any such fee(s), which will be billed to your Account as an Advance and will not exceed $400.00

**29. No Waiver of Rights:** We may accept late payments or partial payments marked "payment in full" without losing any of our rights under this Agreement. The waiver of any of our rights and remedies at any time will not mean that we have given up or lost the right to exercise any of our rights and remedies at any later time. We may delay in enforcing any of our rights and remedies under this Agreement without losing them. Failure by us to assert any of our rights shall not waive such rights. We may also take any collection action allowed by law.

**30. KeyEquity Card Access: (THE KEY EQUITY CARD IS NOT AVAILABLE IN CONNECTICUT OR NEW YORK.)** If you received a KeyEquity Card with this Agreement, you may access credit available under the Account by using the KeyEquity Card to make purchases, obtain Advances, or obtain cash from automated teller or cash dispensing machine(s) ("Terminal"), subject to the following restrictions.

    **A.** If we issue you a personal identification number ("PIN") to you, you may use the KeyEquity Card at a Terminal identified by a service mark appearing on the KeyEquity Card to obtain cash advances only, subject to the limits on amount and frequency, and payment of any surcharge, imposed by the Terminal owner/operator from time to time

    **B.** You may be liable for the unauthorized use of the KeyEquity Card. You agree to notify us promptly, orally or in writing, if the KeyEquity Card is lost or stolen. You may notify us by writing to. Card Service Center, P. O. Box 810012, Toledo, Ohio 43081, or by calling us at 1-800-KEY2YOU (1-800-539-2968). We may charge a fee to replace your KeyEquity Card. Your KeyEquity Card is a credit card, and your liability for unauthorized use of the KeyEquity Card will be limited to the amount of money, property, labor or services obtained by unauthorized use before you notify us, up to a maximum of $50.00. Your liability may be reduced under a network rule of MasterCard International Inc. This rule currently provides that a Cardholder's liability for unauthorized use of a MasterCard-branded credit card or debit card issued by KeyBank may be reduced to zero dollars ($0) if (a) the cardholder (i) has reported to KeyBank the loss or theft of the MasterCard-branded card within twenty-four hours of the Cardholder's discovery of such loss or theft, (ii) has exercised reasonable care in safeguarding the Card from risk of loss or theft, and (iii) has not reported two or more incidents of unauthorized use in the immediately preceding twelve-month period, and (b) the Cardholder's account (to which Card transactions are posted) is in good standing. Under this rule, "unauthorized use" means use of this Card by a person, other than the Cardholder, who does not have actual, implied, or apparent authority for such use, and from which the Cardholder receives no benefit. This rule does not apply to a Card issued (i) to an entity other than a natural person, (ii) primarily for business, commercial, or agricultural purposes, or (iii) outside the U.S.A.

    **C.** You agree not to assert against us any claims or defenses you may have against any person who honors the KeyEquity Card which arise out of an unresolved dispute as to Property or services rented or purchased with the KeyEquity Card in any credit card transaction (as that term is defined in Federal Reserve Board Regulation Z), unless all of the following conditions are met. (1) the claim is not a tort claim, (2) you have made a good faith attempt to resolve the dispute with the person who honored the KeyEquity Card, (3) the amount of the credit extended to obtain the property or services that resulted in the claim or defense exceeds $50.00, and (4) the purchase or rental transaction occurred in the same state as your current designated mailing address or, if not within the same state, within one hundred miles of that address. You hereby agree transactions made by telephone use of a KeyEquity Card will be deemed to have occurred at the merchant's sales location rather than at your mailing address or the location of the telephone used to make the phone call. You further agree not to assert against us any claim based on anyone's refusal to honor the KeyEquity Card.

    **D.** We are not responsible if a merchant, another bank, or a Terminal refuses to honor the KeyEquity Card or transaction. Such refusal may also be due to our inability or unwillingness to authorize the transaction for any reason. The limits on amount and frequency of transactions that we may authorize may be changed by us, and we may impose other conditions from time to time for security reasons to protect and benefit you. We will not be responsible if authorization for any transaction is not given, and you agree not to assert any claim against us based on any such refusal to honor the KeyEquity Card. Your KeyEquity Card will expire upon the earlier of the expiration date specified on said Card or expiration of the draw period for available credit under the Agreement

    **E.** Use of the KeyEquity Card is subject to all procedures established by us, or by a participating merchant or bank, or owner or operator of a Terminal which honors the KeyEquity Card. We have the right, at our sole discretion, to deny any transaction which would result in an outstanding principal balance in excess of the Credit Limit. You agree that any KeyEquity Card(s) issued remain our Property and shall be destroyed by you, or may be retrieved by us or our agent, upon cancellation of the Agreement or cancellation of credit available on the Account.

    **F.** Each credit extension made in connection with any transaction at a merchant or cash advance at a Terminal will be an Advance under the Account and will be repayable by all who have signed or otherwise agreed to this Agreement as a "borrower". You and each other borrower will be jointly and severally liable regardless of how many KeyEquity Card(s) are issued and regardless of whether all applicants receive KeyEquity Cards. If anyone uses your KeyEquity Card with actual, apparent or implied authority, or you benefit from the use of the KeyEquity Card, you will be liable for all Advances extended to or for the benefit of that person.

    **G** We reserve the right, from time to time and without notice to you, to limit, restrict, terminate or otherwise modify the KeyEquity Card access to your Account, as well as the terms and conditions in this Agreement governing such access, as long as we allow you to continue to have the right to obtain cash advances on your Account in those other methods and procedures further described in Agreement and to the extent permitted by applicable law.

**31. Cancellation:** You may close your Account as to future transactions at any time by giving us written notice at the address printed on page one of this Agreement. If we issue you a KeyEquity Card or Checks to use to obtain Advances, you agree to be liable for all Advances obtained by any person who uses the KeyEquity Card or Checks with your permission. If

**KEY EQUITY OPTIONS AGREEMENT**

te your Account or you close your Account, you must cut up your KeyEquity Card and return the KeyEquity Card ls to us. We may cancel your Account pursuant to the terms and conditions of the Agreement set forth above

ng or cancellation of your Account for whatever reason will not affect your obligations prior to such closing or cancellation. The terms of the Agreement shall continue to apply to the outstanding balance on your Account until paid in full, except that the Repayment Period will commence at the time of closing or cancellation. Use of the Account after termination or notice of cancellation is fraudulent and you may be subject to legal proceedings.

**32. Tax Deductibility:** You should consult a tax advisor regarding the deductibility of interest and charges under the Account.

**33. Disclosure of Account Information:** We may share information within the KeyCorp family of companies as well as with unaffiliated third parties external to Key as described in our Privacy Policy. **You specifically consent to us sharing information within the KeyCorp family of companies and with external unaffiliated third parties.** You may elect to opt out of information sharing as described in our Privacy Policy. If you elect to opt out, that election will override this consent to share, except for those instances in which we are otherwise permitted to share by law without your consent.

**34. Review of Credit Line:** You agree to provide us with updated financial information including but not limited to personal financial statements, upon request. This requirement constitutes a material obligation under this Agreement. Failure to provide any such requested updated financial information to us within thirty (30) days of the request shall constitute a default under this Agreement. You agree to inform us in writing of any material change in your financial situation, or any change of your home or mailing address, or if you change your name, within thirty (30) days after such change. You agree we may, from time to time, obtain an updated credit report on you without first notifying you or obtaining your consent.

**35. Stop Payment Procedures:** At your risk and written request, we will, without responsibility on our part so far as we may lawfully limit our liability, accept a stop payment on your Account. An oral stop payment order is binding for only fourteen (14) days unless confirmed in writing within that period. No revocation of the request to stop payment shall be valid unless delivered to us in writing. In order to place a written stop payment request, you must inform us of the exact amount of the item, the number of the check, the date of the check, your Account number, and any other information requested. A stop payment request is effective for only six (6) months, unless you renew it. We are not liable for payment of a check or if a stop payment request has expired and not been renewed, if you have not given us sufficient information or if your stop payment request comes too late for us to act on it. We are entitled to a reasonable period of time after we receive your stop payment request to notify our employees and take other action needed to stop payment. You agree that "reasonable time" depends on the circumstances but that we will have acted within a reasonable time if we make your stop payment request effective by the end of the next business day following the business day on which we receive your stop payment request.

**36. Monthly Statement; Limitation on Time to Report Forgeries and Errors:** We will send you a monthly statement for each monthly billing cycle when there is a debit or credit balance of more than $1.00 or when a Finance Charge has been imposed unless your Account is deemed to be uncollectible. The statement will show the number of days in the billing cycle; the beginning balance and the ending (new) balance. The statement will also show the minimum payment amount, the payment due date and your available credit. Your Advances, payments, other charges such as annual membership fees or late charges, or other adjustments will be described as applicable. Any finance charges that you owe will also be shown. You should review your statements promptly after you receive them. You must notify us as soon as possible if you believe there is an error, forgery or other problem with the information shown on your Account statement. You agree that fifteen (15) days after we mailed a statement is a reasonable amount of time for you to review your Account statement and report any errors, forgeries or other problems. This time limit will not affect any rights you may have under the Electronic Fund Transfer Act or the Fair Credit Billing Act (see "Your Billing Rights" notice in this Agreement). In addition, you agree not to assert a claim against us concerning any error, forgery or other problem relating to a matter shown on an Account statement unless you notify us of the error, forgery or other problem within sixty (60) days after we mailed you the statement.

**37. Stop Future Advances:** Each person who signs this Agreement may request us not to permit any additional Advances under the Account. We may continue to honor requests until we have had reasonable time to act upon your request. You agree that we do not guarantee that every request for a future Advance will be rejected after your request. Future Advances may not be obtained until all owners request us in writing to reactivate your Account. If your request is given by telephone, we may require you to confirm the request in writing. You will hold us harmless from any claim by any party for either stopping payment on checks or for ceasing to honor requests for Advances. You will resolve any such claims and will reimburse us for all expenses that we incur in defending any actions or claims brought against us, including reasonable attorneys' fees, whether or not a lawsuit is commenced.

**38. Giving of Notices:** Any notice that must be given under this Agreement will be delivered or mailed to your address shown on our records. Any mailed notice will be considered delivered when actually received or on the third business day after it is mailed, whichever is earlier. Any notice, other than credit card related notices, you send to us is to be sent to the address shown on your monthly statement, unless we notify you otherwise in writing.

**39. Assignment/Severability Clause:** You cannot assign or transfer your rights or obligations under this Agreement to another person. Your Account is not assumable. This is a material obligation. If you attempt to assign your rights or obligations, we can restrict your right to obtain Advances, reduce your Credit Limit; and/or terminate this Agreement and require you to pay us the outstanding balance in full at once. We may assign or transfer this Agreement and the Security Instrument to another party without your consent.

## KEY EQUITY OPTIONS AGREEMENT

If any provision of this Agreement or Security Instrument is held by a court to be invalid or unenforceable, the rest of this Agreement will remain in full force and effect and enforceable according to its terms.

**40. Taxes, Insurance and Senior Liens:** You promise to pay all senior liens (those recorded before ours), taxes, assessments and other charges on the Property when due

**41. Governing Law:** You understand that KeyBank is a national bank with its main office located in Cleveland, Ohio. Consequently, except as provided in the following sentence, this Agreement shall be governed by Federal law and the laws of the State of Ohio, without regard for conflict of law rules. The laws of the state where you opened your Account will apply as provided in Section 103(b)(1) of the Riegle-Neal Interstate Banking and Branching Efficiency Act of 1994, but only to the extent such state laws are not preempted by Federal law or a determination of a discriminatory effect by the Comptroller of the Currency

**42. Amendments:** We may amend or modify the terms and conditions of this Agreement in our sole discretion in the following ways at any time upon written notice to you (1) make specified changes provided for in the Agreement that will occur upon the happening of specified events, (2) change the Index and Margin used under the Agreement if the original Index is no longer available, (3) make a change that will unequivocally benefit you throughout the remainder of the Agreement, including but not limited to extension of the Draw Period, and (4) make insignificant changes, including, but not limited to, changes in balance computation method or payment due date

**43. Waiver of Right to Set-Off:** We waive our right to set-off your indebtedness incurred under this Agreement arising solely from use of the KeyEquity Card against any deposit account not specifically pledged to secure the Account and held by us to the extent such right to set-off is prohibited under Regulation Z adopted by the Federal Reserve Board.

**44. Notice to Alaska Customers:** The undersigned borrower has executed a Deed of Trust to the benefit of KeyBank National Association  Pursuant to Alaska Statute 34.20 160, the undersigned acknowledges and understands as follows

The "Mortgagor or Trustor" (Borrower) is personally obligated and fully liable for the amount due under the Agreement. The "Mortgagee or Beneficiary" (Bank) has the right to sue on the Agreement and obtain a personal judgment against the Mortgagor or Trustor for satisfaction of the amount due under the Agreement, either before or after a judicial foreclosure of the Mortgage or Deed of Trust under AS 09 45 170-09 45 220

As referred to herein, "Mortgagor or Trustor" is the Borrower under the Agreement and Trustor under the Mortgage or Deed of Trust, "Mortgagee or Beneficiary" is KeyBank National Association, its assignees or successor in interest.

**45. Credit Record: (Notice for Utah Customers.)** As required by Utah Law, you are hereby notified that a negative credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations

**46. Your Billing Rights:** This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act. Notify us in case of errors or questions about your bill  If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill  Write to us as soon as possible. We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared  You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information·
- Your name and account number
- The dollar amount of the suspected error
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payments your letter must reach us three (3) business days before the automatic payment is scheduled to occur

### Your Rights and Our Responsibilities After We Receive Your Written Notice.
We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.
If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is
If we don't follow these rules, we can't collect the first $50 of the questioned amount even if your bill was correct.

## KEY EQUITY OPTIONS AGREEMENT

**Special Rule for Credit Card Purchases.**
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right: (a) you must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address, and (b) the purchase price must have been more than $50.00. These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**FINAL EXPRESSION.** This written Agreement is the final expression of the agreement and understanding of the parties with respect to the general subject matter hereof and supersedes any previous understanding, negotiations or discussions, whether written or oral. This written Agreement may not be contradicted by evidence of any alleged oral agreement.

**You agree to be bound by all of the above terms and conditions as set forth in this Agreement and acknowledge receipt of a completed copy of this Agreement.**

Borrower: x _Deborah A Buczek_
DEBORAH A. BUCZEK

Borrower: _____

Date: __October 07, 2008__

Date: _____

Borrower: _____

Borrower: _____

Date: _____

Date: _____

---

**VERMONT NOTICE TO COSIGNER**
**NOTICE TO COSIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**

By signing below, you state that you have read this Note, you have received a copy of this Note for your records, you agree to the terms and conditions of this Note, and you also agree to be absolutely and unconditionally responsible for paying all amounts owed under this Note, in full, whenever such amounts become due, and for otherwise performing all obligations under this Note.

_____
Guarantor Signature

_____
Guarantor Name (Please Print)

---

Agreements secured by Property in the State of Florida only:

**STATE OF FLORIDA DOCUMENTARY STAMP TAXES IN THE AMOUNT REQUIRED BY LAW WILL BE PAID UPON THE RECORDING OF THE MORTGAGE SECURING THIS AGREEMENT.**

UN_KBNA KEOP/KEOH Agreement
Rev 09/2008

Page 9

Line # ████ 4950
ACAPS #:

Case 1-19-11441-CLB    Claim 1-1    Filed 09/16/19    Desc Main Document    Page 18 of 25

Case 1-19-11441-CLB,    Doc 279,    Filed 06/24/20,    Entered 06/24/20 14:50:24,
Description: Main Document , Page 64 of 96



## ERIE COUNTY CLERKS OFFICE
## County Clerk's Recording Page

Book: **13423**    Page: **9147**

Page Count: **7**

### Return To:

EQUITY LOAN SERVICES INC
1100 SUPERIOR AVE

CLEVELAND OH 44114

Doc Type: **MTG 1-2 BANK**

Rec Date: **10/21/2008**

Rec Time: **12:31:01 PM**

Control #: **2008213725**

User ID: *patti*

Trans Num: **610048**

Party 1:

**BUCZEK DEBORAH A**

DEED SEQ:

MTG SEQ: **MTCZ2008017839**

Party 2:

**KEYBANK NATIONAL ASSOCIATION**

UCC:

SCAR:

INDEX:

| Recording Fees: | | Consideration Amount: | $50,000.00 |
|---|---|---|---|
| RECORDING | $38.00 | BASIC | $250.00 |
| COE CO RET | 1.00 | SONYMA | $0.00 |
| BASIC | $250.00 | ADDL | $100.00 |
| ADDL | $100.00 | NFTA MT | $125.00 |
| NFTA MT | $125.00 | TRANSFER | $0.00 |
| COE STATE GENERAL | $14.25 | NFTA TT | $0.00 |
| COE STATE RM | $4.75 | | |

Total:    $533.00

**STATE OF NEW YORK**
**ERIE COUNTY CLERK'S OFFICE**

**WARNING - THIS SHEET CONSTITUTES THE CLERK'S ENDORSEMENT,**
**REQUIRED BY SECTIONS 319&316-a (5) OF THE REAL PROPERTY LAW**
**OF THE STATE OF NEW YORK.  DO NOT DETACH.  THIS IS NOT A BILL.**

**Kathleen C. Hochul**
**County Clerk**

# HOME EQUITY LINE OF CREDIT
# MORTGAGE

| BORROWER | MORTGAGOR | |
|---|---|---|
| DEBORAH A. BUCZEK | DEBORAH A. BUCZEK | MARRIED |
| Property Address is the Mailing Address | ~~▮▮▮~~ 6565 | |

| ADDRESS | ADDRESS |
|---|---|
| 7335 DERBY RD<br>DERBY, NY 14047 | 7335 DERBY RD<br>DERBY, NY 14047 |
| TELEPHONE NO. · IDENTIFICATION NO. | TELEPHONE NO. · IDENTIFICATION NO. |

THIS IS A LINE OF CREDIT MORTGAGE AS DEFINED IN SECTION 281 OF THE REAL PROPERTY LAW. THE PARTIES TO THIS MORTGAGE REASONABLY CONTEMPLATE ENTERING INTO A SERIES OF ADVANCES OR ADVANCES, PAYMENTS AND READVANCES. THE MAXIMUM AMOUNT AUTHORIZED TO BE OUTSTANDING AT ANY ONE TIME IS STATED BELOW.

**WORDS USED OFTEN IN THIS DOCUMENT**

(a) "Security Instrument." This document, which is dated _October 07, 2008_ , will be called the "Security Instrument."

(b) "Borrower." The Borrower(s) are identified above. If any or all of the Borrowers and the Mortgagors described above are the same person(s), then all references to Mortgagor in this Mortgage shall apply to such Borrower.

(c) "Lender." _KeyBank National Association_
_4910 Tiedeman Road, Suite C, Brooklyn, OH 44144_

(d) "Mortgagor." The Mortgagor(s) are identified above. If any or all of the Mortgagor(s) described above are the same person(s), then all references to Borrower in this Mortgage shall apply to such Mortgagor(s). If any one Mortgagor does not sign the promissory notes or agreements evidencing the Obligations described below:

(i) that Mortgagor is signing this Security Instrument only to give that Mortgagor's rights in the Property under the terms of this Security Agreement;

(ii) that Mortgagor is not personally obligated to pay the Obligations; and

(iii) that Mortgagor agrees that Lender may agree with the other Mortgagors to delay enforcing any of Lender's rights or to modify or to make any accommodations with regard to the terms of this Security Instrument or the Obligations without that Mortgagor's consent.

(e) "Obligations." The following promissory note(s) and other agreement(s) signed by the Borrower:

| INTEREST RATE | PRINCIPAL AMOUNT/ CREDIT LIMIT | FUNDING/ AGREEMENT DATE | MATURITY DATE | CUSTOMER NUMBER | LOAN NUMBER |
|---|---|---|---|---|---|
| VARIABLE | $50,000.00 | 10/11/08 | 10/11/43 | | |
| | | This property will be improved by<br>a 1 or 2 family dwelling only. | | | |

(f) "Property." The property that is described in Schedule A and in the section titled "Description of the Property," will be called the "Property."

(g) "Sums Secured." The amounts described below in the section titled "Mortgagor's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**MORTGAGOR'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

Mortgagor mortgages, grants and conveys the Property to Lender subject to the terms of this Security Instrument. Mortgagor is giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. Mortgagor is giving Lender these rights to protect Lender from possible losses that might result if Mortgagor or Borrower fails to:

(a) Pay, with interest, all the amounts owed Lender, as stated in the promissory notes and agreements, and any extensions, modifications and/or renewals (including any extensions, modifications and/or renewals) that amend the Draw Period) of such promissory notes and agreements, which evidence the Obligations;

(b) Pay, with interest, any amounts that Lender spends under Paragraphs 2 and 6 of this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(c) Keep all other promises and agreements under this Security Instrument.

This Mortgage shall secure existing debts Borrower may now owe Lender and any future advances under the Obligations, whether the Lender is obligated to make such future advances or whether they may be made at the Lender's option, as if such future advances were made on the date Mortgagors signed this Mortgage. The Sums Secured shall not exceed at any time the maximum principal amount of $ _50,000.00_ plus interest, plus any advances made for the payment of taxes, levies or insurance on the Property with interest. Any such future advances may be made either prior to or after the due dates of the Obligations secured by this Mortgage. This Mortgage is given for the specific purpose of securing any and all indebtedness of the Borrower and the Mortgagor to Lender (but in no event shall the secured indebtedness exceed at any time the maximum principal amount set forth in this paragraph) in whatever manner this indebtedness may be evidenced or represented until this Mortgage is satisfied of record. All covenants and agreements contained in this Mortgage shall be applicable to all advances made by Lender to Borrower or Mortgagor under this future advance clause.

**DESCRIPTION OF THE PROPERTY**

Mortgagor gives Lender rights in the Property described in Schedule A which is attached to and part of this Mortgage, and:

(a) All buildings and other improvements that are located on the Property described in Schedule A;

(b) All rights in other property that Mortgagor has as owner of the Property described in Schedule A. These rights are known as "easements and appurtenances attached to the Property";

(c) All rights that Mortgagor has in the land which lies in the streets or roads in front of, or next to, the Property described in Schedule A;

(d) All fixtures that are now or in the future will be on the Property described in Schedule A;

(e) All of the rights and Property described in subparagraphs (a) through (d) of this section that Mortgagor acquires in the future; and

(f) All replacements of or additions to the Property described in subparagraphs (a) through (e) of this section.

**MORTGAGOR'S RIGHT TO MORTGAGE THE PROPERTY AND MORTGAGOR'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**
Mortgagor promises that: (a) Mortgagor owns the Property; (b) Mortgagor has the right to mortgage, grant and convey the Property to Lender; and (c) there are no outstanding claims or charges against the Property, except for those which are of public record, which are described in Schedule B.

Mortgagor gives a general warranty of title to Lender. This means that Mortgagor will be fully responsible for any losses which Lender suffers because someone other than Mortgagor has some of the rights in the Property which Mortgagor promises that Mortgagor has. Mortgagor promises that Mortgagor will defend Mortgagor's ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**
This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary, to a limited extent, in different parts of the country. Mortgagor's promises and agreements are stated in "plain language."

COVENANTS

Mortgagor promises and agrees with Lender as follows:

**1. BORROWER'S PROMISE TO PAY**
Borrower has promised to pay to Lender on time principal and interest due under the Obligations and any prepayment and late charges due under the Obligations.

**2. PAYMENTS FOR TAXES AND INSURANCE**
Mortgagor will pay all amounts necessary to pay for taxes, assessments, water frontage charges and other similar charges, sewer rents, leasehold payments or ground rents (if any), hazard or property insurance covering the Property, and flood insurance (if any).

**3. MORTGAGOR'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**
Mortgagor will pay all taxes, assessments, water frontage charges and other similar charges, sewer rents, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. Mortgagor will also make payments due under Mortgagor's lease if Mortgagor is a tenant on the Property and Mortgagor will pay ground rents (if any) due on the Property. Mortgagor will do this either by making the payments to Lender that are described in Paragraph 2 above or, if Mortgagor is not required to make payments under Paragraph 2, by making the payments on time to the person owed them. (In this Security Instrument, the word "person" means any person, organization, governmental authority or other party.) If Mortgagor makes direct payments, then promptly after making any of those payments Mortgagor will give Lender a receipt which shows that Mortgagor has done so. If Mortgagor makes payment to Lender under Paragraph 2, Mortgagor will give Lender all notices or bills that Mortgagor receives for the amounts due under this Paragraph 3.

Mortgagor will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require Mortgagor to satisfy a superior lien if: (a) Mortgagor agrees, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which Mortgagor agrees to pay that obligation; or (b) in good faith, Mortgagor argues or defends against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced; or (c) Mortgagor secures from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Mortgagor a notice identifying the superior lien. Mortgagor shall pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**4. MORTGAGOR'S OBLIGATION TO MAINTAIN HAZARD INSURANCE OR PROPERTY INSURANCE**
Mortgagor will obtain hazard or property insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage, including floods and flooding. The insurance must be in the amounts and for the periods of time required by Lender. Mortgagor may choose the insurance company, but Mortgagor's choice is subject to Lender's approval. Lender may not refuse to approve Mortgagor's choice unless the refusal is reasonable. If Mortgagor does not maintain the insurance coverage described above, Lender may obtain insurance coverage to protect Lender's rights in the Property in accordance with Paragraph 6 below.

All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, Mortgagor will promptly give Lender all receipts of paid premiums and renewal notices that Mortgagor receives.

If there is a loss or damage to the Property, Mortgagor will promptly notify the insurance company and Lender. If Mortgagor does not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; or (b) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and Mortgagor have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that Borrower and/or Mortgagor owes to Lender under the Obligations and then to the amount Mortgagor owes to Lender under this Security Instrument. If any of the proceeds remain after any amount that Mortgagor owes to Lender has been paid in full, the remaining proceeds will be paid to Mortgagor.

If Mortgagor abandons the Property, or if Mortgagor does not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which Borrower and/or Mortgagor owes to Lender under the Obligations, that use will not delay the due date or change the amount of any of the payments under the Obligations and under Paragraphs 1 and 2 above.

If Lender acquires the Property under Paragraph 19 below, all of Mortgagor's rights in the insurance policies will belong to Lender. Also, all of Mortgagor's rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

**5. MORTGAGOR'S OBLIGATIONS TO MAINTAIN AND PROTECT THE PROPERTY, AND TO FULFILL ANY LEASE OBLIGATIONS; LOAN APPLICATION**

**(a) Mortgagor's Obligations to Maintain and Protect the Property**
Mortgagor will keep the Property in good repair. Mortgagor will not destroy, damage or harm the Property, and Mortgagor will not allow the Property to deteriorate.

Mortgagor will be "in default" under this Security Instrument if Mortgagor fails to keep any promise or agreement made in this Security Instrument. Mortgagor also will be in default under this Security Instrument if any civil or criminal action or proceeding for "forfeiture" (that is, a legal action or proceeding to require the Property, or any part of the Property, to be given up) is begun and Lender determines, in good faith, that an action or proceeding could result in a court ruling (i) that would require forfeiture of the Property or (ii) that would materially impair the lien of this Security Instrument or Lender's rights in the Property. Mortgagor may correct the default by obtaining a court ruling that dismisses the legal action or proceeding, if Lender determines, in good faith, that this court ruling prevents forfeiture of Mortgagor's interest in the Property and also prevents any material impairment of (i) the lien created by this Security Instrument or (ii) Lender's rights in the Property. If Mortgagor corrects the default, Mortgagor will have the right to have enforcement of this Security Instrument discontinued, as provided in Paragraph 16 below, even if Lender has required immediate payment in full.

LPNY508B ® Harland Financial Solutions, Inc. (8/23/06)  (800) 937-3799          Page 2 of 5

**(b) Mortgagor's Obligations to Fulfill Any Lease Obligations**
If Mortgagor does not own but is a tenant on the Property, Mortgagor will fulfill all Mortgagor's obligations under the lease. Mortgagor also agrees that, if Mortgagor acquires the fee title to the Property, Mortgagor's lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

**(c) Loan Application**
If, during the application process for the Obligations, Borrower made false or inaccurate statements to Lender about information important to Lender in determining Borrower's eligibility for the loan, Lender will treat this action as a default under this Security Instrument. Also, if during the loan application process Borrower fails to provide Lender with information important to Lender in determining Borrower's and/or Mortgagor's eligibility for the loan, Lender will treat this as a default under this Security Instrument.

**6. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**
If: (a) Mortgagor does not keep Mortgagor's promises and agreements made in this Security Instrument, or (b) someone, including Mortgagor, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or forfeiture, or to enforce laws or regulations), Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 6, Lender does not have to do so.

Mortgagor will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 6. Mortgagor will pay those amounts to Lender when Lender sends Mortgagor a notice requesting that Mortgagor do so. Mortgagor will also pay interest on those amounts at the highest rate stated in the Obligations. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and Mortgagor may agree in writing to terms of payment that are different from those in this paragraph. This Security Instrument will protect Lender in case Mortgagor does not keep this promise to pay those amounts with interest.

**7. LENDER'S RIGHT TO INSPECT THE PROPERTY**
Lender, and others authorized by Lender, may enter on and inspect the Property. Lender must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give Mortgagor notice stating a reasonable purpose for the inspection.

**8. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY**
A taking of property by any governmental authority by eminent domain is known as "condemnation." Mortgagor gives to Lender Mortgagor's right: (a) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (b) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount owed to Lender has been paid in full, the remaining proceeds will be paid to Mortgagor.

Unless Lender and Mortgagor agree otherwise in writing, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking either is equal to, or greater than, the amount of the Sums Secured immediately before the taking, the amount owed to Lender will be reduced only by the amount of proceeds multiplied by a fraction. That fraction is as follows: (a) the total amount of the Sums Secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to Mortgagor.

Unless Lender and Mortgagor agree otherwise in writing or unless the law requires otherwise, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking is less than the amount of the Sums Secured immediately before the taking, the proceeds will be used to reduce the Sums Secured.

If Mortgagor abandons the Property, or if Mortgagor does not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal owed to Lender under the Obligations, that use will not delay the due date or change the amount of any of the payments under the Obligations and under Paragraphs 1 and 2 above.

**9. CONTINUATION OF BORROWER'S AND MORTGAGOR'S OBLIGATIONS AND OF LENDER'S RIGHTS**
**(a) Borrower's Obligations**
Lender may allow a person who takes over Borrower's rights and obligations to delay or to change the amount of the payments of principal and interest due under the Obligations or under this Security Instrument. Even if Lender does this, however, that person and Borrower will both still be fully obligated under the Obligations and Mortgagor will still be fully obligated under this Security Instrument.

Lender may allow those delays or changes for a person who takes over Borrower's rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Obligations or under this Security Instrument, even if Lender is requested to do so.

**(b) Lender's Rights**
Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 19 below to demand that Mortgagor make immediate payment in full of the amount that Mortgagor owes to Lender under this Security Instrument.

**10. OBLIGATIONS OF MORTGAGOR AND OF PERSONS TAKING OVER MORTGAGOR'S RIGHTS OR OBLIGATIONS**
Any person who takes over Mortgagor's rights or obligations under this Security Instrument will have all of Mortgagor's rights and will be obligated to keep all of Mortgagor's promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Mortgagor, each Mortgagor is fully obligated to keep all of Mortgagor's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each Mortgagor individually or against all Mortgagors together. This means that any one Mortgagor may be required to pay all of the Sums Secured.

**11. LOAN CHARGES**
If an Obligation secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Obligation exceed permitted limits: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Obligations or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Obligations.

**12. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**
Any notice that must be given to Mortgagor under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to Mortgagor at the address stated in Schedule A. A notice will be given to me at a different address if Mortgagor gives Lender a notice of Mortgagor's different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to Lender's address stated in this Mortgage. A notice will be mailed to Lender at a different address if Lender gives Mortgagor a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 12 or of applicable law.

**13. LAW THAT GOVERNS THIS SECURITY INSTRUMENT**
This Security Instrument is governed by federal law and the law that applies in the place where the Property is located. If any term of this Security Instrument or of any Obligation conflicts with the law, all other terms of this Security Instrument and of the Obligation will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Security Instrument and of the Obligations which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced.

LPNY506C © Harland Financial Solutions, Inc. (8/29/08)  (800) 937-3799
Page 3 of 5

**14. MORTGAGOR'S COPY**
Mortgagor will be given one conformed copy of this Security Instrument.

**15. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**
Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Mortgagor is sold or transferred and Mortgagor is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument.

**16. MORTGAGOR'S RIGHT TO HAVE LENDER'S ENFORCEMENT OF THIS SECURITY INSTRUMENT DISCONTINUED**
Even if Lender has required immediate payment in full, Mortgagor may have the right to have enforcement of this Security Instrument discontinued. Mortgagor will have this right at any time before sale of the Property under any power of sale granted by this Security Instrument or at any time before a judgment has been entered enforcing this Security Instrument if Mortgagor meets the following conditions:

    (a)  Mortgagor pays to Lender the full amount that then would be due under this Security Instrument and Borrower pays to Lender the full amount owed under the Obligations as if immediate payment in full had never been required; and

    (b)  Mortgagor corrects Mortgagor's failure to keep any of Mortgagor's other promises or agreements made in this Security Instrument; and

    (c)  Mortgagor pays all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees to the extent permitted by law; and

    (d)  Mortgagor does whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Security Instrument, and Mortgagor's obligations under this Security Instrument continue unchanged.

If Mortgagor fulfills all of the conditions in this Paragraph 16, then the Obligations and this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, Mortgagor will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under Paragraph 15 above.

**17. HOLDER'S RIGHT TO SELL THE NOTES OR AGREEMENTS OR AN INTEREST IN THE NOTES OR AGREEMENTS**
The promissory note(s) or agreement(s) evidencing the Obligations, or an interest in such notes or agreements, together with this Security Instrument, may be sold one or more times. Mortgagor may not receive any prior notice of these sales.

**18. CONTINUATION OF MORTGAGOR'S OBLIGATIONS TO MAINTAIN AND PROTECT THE PROPERTY**
The federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety, or environmental protection are called "Environmental Laws." Mortgagor will not do anything affecting the Property that violates Environmental Laws, and Mortgagor will not allow anyone else to do so.

Environmental Laws classify certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Paragraph 18. These are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Laws and the substances considered hazardous for purposes of this Paragraph 18 are called "Hazardous Substances."

Mortgagor will not permit Hazardous Substances to be present on the Property. Mortgagor will not use or store Hazardous Substances on the Property, and Mortgagor will not allow anyone else to do so. Mortgagor also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and Mortgagor will not allow anyone else to do so. However, Mortgagor may permit the presence on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property, and Mortgagor may use or store these small quantities on the Property. In addition, unless the law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

If Mortgagor knows of any investigation, claim, demand, lawsuit or other action by the government or by a private party involving the Property and any Hazardous Substance or Environmental Laws, Mortgagor will promptly notify the Lender in writing. If the government notifies Mortgagor (or Mortgagor otherwise learns) that it is necessary to remove a Hazardous Substance affecting the Property or to take other remedial actions, Mortgagor will promptly take all necessary remedial actions as required by Environmental Laws.

**19. LENDER'S RIGHTS IF BORROWER OR MORTGAGOR FAILS TO KEEP PROMISES AND AGREEMENTS**
If Borrower or Mortgagor fails to keep promises and agreements and except as provided in Paragraph 15 above, Lender may require that Borrower pay immediately the entire amount then remaining unpaid under the Obligations and Mortgagor pay immediately the entire amount due under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full."

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of Mortgagor's remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount Mortgagor owes Lender, which fees shall become part of the Sums Secured.

**20. LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT**
When Lender has been paid all amounts due under the promissory notes or agreements evidencing the Obligations and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. Mortgagor will not be required to pay Lender for the discharge, but Mortgagor will pay all costs of recording the discharge in the proper official records.

**21. AGREEMENTS ABOUT NEW YORK LIEN LAW**
Borrower will receive all amounts lent to Borrower by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, Borrower will: (a) hold all amounts received, and which Borrower has a right to receive from Lender under the Obligations as a "trust fund"; and (b) use those amounts to pay for that construction or work before Borrower uses them for any other purpose. The fact that Borrower is holding those amounts as a "trust fund" means that for any building or other improvement located on the Property, Borrower has a special responsibility under the law to use the amount in the manner described in this Paragraph 21.

**22. ASSIGNMENT OF RENTS**
Mortgagor absolutely and unconditionally assigns and transfers to Lender all of the rents and revenues ("Rents") of the Property, regardless to whom the Rents of the Property are payable. Mortgagor authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Mortgagor shall receive the Rents until (i) Lender has given Mortgagor a notice of default pursuant to this Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

**23. ADDITIONAL TERMS:**

LPN7008D ® Harland Financial Solutions, Inc. (8/22/08) (800) 937-3799    Page 4 of 5

Mortgagor acknowledges that Mortgagor has read, understands, and agrees to the terms and conditions of this Mortgage, and acknowledges receipt of an exact copy of same.

Dated this __7th__ day of __October 2008__

MORTGAGOR  DEBORAH A. BUCZEK          MORTGAGOR

_Deborah A. Buczek_ (signature)
DEBORAH A. BUCZEK

MORTGAGOR          MORTGAGOR

MORTGAGOR          MORTGAGOR

MORTGAGOR          MORTGAGOR

STATE OF NEW YORK )
COUNTY OF __Erie__ ) SS.:
                   )

On the __7__ day of __Oct.__ in the year __2008__ before me, the undersigned, personally appeared __Deborah A. Buczek__ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public _Susan H. Cahill  11-27-2010_
              Erie County

### SCHEDULE A

The following described real property located in the County of __ERIE__, State of __New York__:

See Addendum A

SUSAN H. CAHILL
Notary Public, State of New York
My Commission Expires Nov. 27, 2010

COLLATERAL ADDRESS: 7335 DERBY RD DERBY, NY 14047

### SCHEDULE B

BORROWER AND LENDER REQUEST THE HOLDER OF ANY MORTGAGE, DEED OF TRUST OR OTHER ENCUMBRANCE WITH A LIEN WHICH HAS PRIORITY OVER THIS MORTGAGE TO GIVE NOTICE TO LENDER, AT LENDER'S ADDRESS SET FORTH ON PAGE ONE OF THIS MORTGAGE, OF ANY DEFAULT UNDER THE SUPERIOR ENCUMBRANCE AND OF ANY SALE OR OTHER FORECLOSURE ACTION.

THIS INSTRUMENT WAS PREPARED BY:          AFTER RECORDATION RETURN TO:
KeyBank National Association              KeyBank National Association
David G. Fisher                           First American ELS - Policy Dept
                                          P.O. Box 6899
                                          Cleveland, OH 44101

EXHIBIT A


ALL THAT TRACT OR PARCEL OF LAND, SITUATE IN THE TOWN OF
EVANS, COUNTY OF ERIE, STATE OF NEW YORK, AND BEING PART OF
LOTS 20 AND 30, TOWNSHIP 8, RANGE 9, OF HOLLAND LAND
COMPANY'S SURVEY BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE CENTER OF THE HIGHWAY LEADING
FROM DERBY TO THE EIGHTEEN MILE CREEK, KNOWN AS DERBY ROAD
WHICH POINT IS 635.58 FEET NORTHERLY FROM THE SOUTH LINE OF
LOT 30, AS MEASURED ALONG THE CENTER LINE OF SAID DERBY ROAD;
RUNNING THENCE NORTHERLY ALONG THE CENTER LINE OF SAID DERBY
ROAD 280 FEET; THENCE EASTERLY AT RIGHT ANGLES 651.7 FEET
MORE OR LESS TO THE LANDS NIAGARA LOCKPORT & ONTARIO POWER
CO.; THENCE SOUTHERLY ALONG THE LANDS OF SAID COMPANY 285.20
FEET; THENCE WESTERLY AT RIGHT ANGLES TO THE CENTER OF THE
DERBY ROAD, 597.3 FEET TO THE CENTER OF SAID DERBY ROAD AT
THE POINT OR PLACE OF BEGINNING. CONTAINING 4.01 ACRES BE
THE SAME MORE OR LESS.

SBL #: 206.04-2-22


Permanent Parcel Number: 206.04-2-22
DEBORAH A. BUCZEK

7335 DERBY ROAD, DERBY NY 14047
Loan Reference Number : 40607227/082731601310C
First American Order No: 38926563
Identifier: FIRST AMERICAN LENDERS ADVANTAGE

BUCZEK
38926563                          NY

FIRST AMERICAN ELS
MORTGAGE

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | Shane Christopher Buczek |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Western District of New York |
| Case number | 19-11441 |

## Official Form 410S1

# Notice of Mortgage Payment Change

12/15

If the debtor's plan provides for payment of postpetition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due. See Bankruptcy Rule 3002.1.

**Name of creditor:** KeyBank N.A.

**Court claim no. (if known):** NA

**Last 4 digits** of any number you use to identify the debtor's account: 4 9 5 0

**Date of payment change:**
Must be at least 21 days after date of this notice: 09/06/2019

**New total payment:**
Principal, interest, and escrow, if any: $ 465.31

---

### Part 1: Escrow Account Payment Adjustment

1. **Will there be a change in the debtor's escrow account payment?**

   ☑ No

   ☐ Yes. Attach a copy of the escrow account statement prepared in a form consistent with applicable nonbankruptcy law. Describe the basis for the change. If a statement is not attached, explain why: _____

   Current escrow payment: $ _____    New escrow payment: $ _____

---

### Part 2: Mortgage Payment Adjustment

2. **Will the debtor's principal and interest payment change based on an adjustment to the interest rate on the debtor's variable-rate account?**

   ☑ No

   ☐ Yes. Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law. If a notice is not attached, explain why: _____

   Current interest rate: _____ %    New interest rate: _____ %

   Current principal and interest payment: $ _____    New principal and interest payment: $ _____

---

### Part 3: Other Payment Change

3. **Will there be a change in the debtor's mortgage payment for a reason not listed above?**

   ☐ No

   ☑ Yes. Attach a copy of any documents describing the basis for the change, such as a repayment plan or loan modification agreement. *(Court approval may be required before the payment change can take effect.)*

   Reason for change: Per contract terms, days in monthly billing cycle varies month-to-month; principal balance, interest and fees change based upon debit/credit transactions

   Current mortgage payment: $ 488.09    New mortgage payment: $ 465.31

---

Case 1-19-11441-CLB,    Doc 44,    Filed 08/14/19,    Entered 08/14/19 07:27:32,
Description: Main Document  , Page 1 of 3

Case 1-19-11441-CLB,    Doc 279,    Filed 06/24/20,    Entered 06/24/20 14:50:24,
Description: Main Document  , Page 72 of 96

| Part 4: | Sign Here |
|---------|-----------|

The person completing this Notice must sign it. Sign and print your name and your title, if any, and state your address and telephone number.

*Check the appropriate box.*

☑ I am the creditor.

☐ I am the creditor's authorized agent.

**I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.**

✖ /s/Giovanna Sainato
  Signature

Date  08/14/2019

Print:  Giovanna Sainato
        First Name    Middle Name    Last Name

Title  Senior Specialist

Company  KeyBank N.A.

Address  4910 Tiedeman Road
         Number    Street

Brooklyn                    OH      44144
City                        State   ZIP Code

Contact phone  866-325-9723

Email  bk_specialists@keybank.com

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF BUFFALO

In Re: **Shane Christopher Buczek**          Case No. 19-11441

,                                      Chapter 13

                    Debtor(s).

## CERTIFICATE OF SERVICE

       I hereby certify that on <u>August 14, 2019</u>, I electronically filed a Notice of Mortgage Payment Change with the Clerk of the Bankruptcy Court using the CM/ECF system which sent electronic notification of such filing to the following:

Debtor(s) Attorney
Pro Se

Trustee
**Albert J. Mogavero**

       And, I hereby certify that I have mailed via the United States Postal Service the Notice of Mortgage Payment Change to the following non CM/ECF participants:

Debtor
**Shane Christopher Buczek**
435 Creekside Drive
Suite 200
Amherst, NY 14228

                              /s/Giovanna Sainato
                              Bankruptcy Specialist
                              KeyBank N.A.

# Exhibit (E)



*Relin, Goldstein and Crane, LLP*
*Attorneys and Counselors at Law*
*1800 First Federal Plaza*
*Rochester, New York 14614*

**TO:** Shane Christopher Buczek
435 Creekside Drive
Suite 200
Amherst, NY 14228

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re                                          Case No. 1-19-11441-CLB
    Shane Christopher Buczek               Chapter 13

                Debtor.

TO THE HONORABLE CARL L. BUCKI:

## OBJECTION TO DEBTOR'S NOTICE OF MOTION SEEKING AN INJUNCTION AND TRO PENDING APPEAL

I, David P. Case, Esq., do hereby certify as follows:

1.      I am an attorney at law of the State of New York and Partner of the law firm of Fein,

Such and Carne, LLP, attorneys for KeyBank National Association. ("Secured Creditor" herein), and

I am fully familiar with the facts and circumstances of the within matter.

2.      Secured Creditor objects to Debtor's motion for reasons including the following:

(1)     The Second Circuit established a four-pronged test for determining whether a Court

should grant a stay pending appeal:

        a)      whether the movant will suffer irreparable injury absent a stay;

        b)      whether a party will suffer substantial injury if a stay is issued;

        c)      whether the movant has demonstrated a *substantial possibility*, although less

than a likelihood, of success on appeal; and

        d)      the public interests that may be affected. *See, Hirschfeld v. Bd. of Elections*,

984 F.2d 35, 39 (2d Cir. 1993).

(2)     The burden of proof lies solely on the party moving for the stay pending appeal. *In re

Borjesson*, No. 19-0413MJP, 2019 WL 1327324 (W.D.Wash., 2019).

(3)     Debtor fails to meet his burden of proof. His personal *ad hominem* and *ipse dixit* attacks on your deponent combined with his Sovereign-Citizen fueled conspiracy theories provide absolutely nothing of substance.   KeyBank has already proven that it has final Judgment of Foreclosure and Sale in previous filings; it should not be required to constantly and repeatedly re-litigate the same facts over and over and over again.  Debtor's bald, conclusory, and self-serving nay-saying of the truth is insufficient to meet his burden of proof.

(4)     Moreover, since Gov. Cuomo has put the State on "PAUSE", the New York Courts in the Eighth Judicial District will not allow foreclosure sales to be scheduled.  See the March 16, 2020, Administrative Order of Administrative Judge Paula L. Feroleto, annexed hereto as Exhibit "A".

(5)     Upon information and belief, foreclosure auctions will not be allowed until the final phase of the Governor's plan to re-open New York since many foreclosure auctions are held in small spaces requiring Referees, bank representative, and bidders so the auction may be conducted.  Your Deponent does not expect to be able to re-schedule the foreclosure sale on the Derby Road property until at least June 20, 2020—and that is assuming that Phase II starts promptly on May 15 with no additional delay by the Governor.

(6)     Should the State-imposed ban on all foreclosures be lifted, however, Secured Creditor will continue to be damaged should a stay-pending-appeal be imposed.  Debtor and his family have litigated and stymied the foreclosure for over five years.  The foreclosure action was commenced in January 2015.

(7)     Secured Creditor is also in second-lien position behind a mortgage currently serviced by Nationstar Mortgage d/b/a Mr. Cooper.  Upon information and belief, there is no longer sufficient equity to pay both Mr. Cooper and KeyBank in full.  Every day delay constitutes mounting losses for KeyBank.

(8)     Any irreparable injury as well as his likelihood of success on appeal are negligible at best for the reasons given by this Court in granting KeyBank's motion to lift they stay with *in rem* relief.

(9)     Debtor's allegations of an Arbitration Award are misleading at best and may be fraudulent and subject to investigation by the Office of the United States Trustee.

(10)    Debtor states, on page 10 of debtor's current motion, "Shane Christopher Buczek has not Sign[ed] a Contract with KeyBank with two party signatures."

(11)    As this Court is well aware, for parties to enter into Arbitration, the parties must contractually agree to arbitration in a written contract before the parties' dispute can be arbitrated.

(12)    Upon information and belief, the basis of which is confirmation with Your Deponent's client, KeyBank does not have a contract with the debtor that would allow for arbitration, did not receive a request to Arbitrate with debtor, did not agree upon an Arbitrator, and was not noticed for an Arbitration.  Debtor also stated under oath that he has not signed a contract with KeyBank.

(13)    Upon further information and belief, the basis of which was internet research on Dalwickman Arbitration (which has since been removed from the internet), Dalwickman Arbitration was publicized on Roudenbushministries.org, one could schedule a unilateral "arbitration" for a donation of about $100.00, and the "Arbitration" would be held by Skype with a panel of people. The website has since been taken down and the IP address can no longer be found—according to Your Deponent's attempt to contact Dalwickman's website on the date this opposition is prepared.

(14)    Even if the Arbitration were legitimate, which it is not, the Arbitration Award is not the debtor's to enforce. Any post-petition arbitration award belongs to the Bankruptcy Estate—not to the debtor.

(15)   Debtor answered "No" to Questions 33 and 34 on Schedule A/B to his bankruptcy petition.  If he had a claim to assert against KeyBank, which was to be resolved through arbitration, he fraudulently omitted it in his Bankruptcy Petition.

(16)   Also, Debtor's Bankruptcy Petition was filed on July 19, 2019.  The alleged Abstract of Arbitration Award stated that the arbitration and award occurred on November 4, 2019, while Debtor's bankruptcy was active.  Accordingly, the only party who would have a right to enforce the alleged Dalwickman Arbitration Award, assuming *arguendo* that it was valid, would be the Bankruptcy Trustee.

(17)   Based upon the foregoing, there is no legal or equitable basis for this Court to grant any relief to the debtor.

WHEREFORE, Debtor's motion should be denied in its entirety.

FEIN SUCH AND CRANE, LLP.
Attorneys for Secured Creditor,

Dated: May 6, 2020

By _____
      David P. Case, Esq.



## ADMINISTRATIVE ORDER
### EIGHTH JUDICIAL DISTRICT

Pursuant to the authority vested in me, and in accordance with the recent operational protocols issued by the Chief Administrative Judge for the trial courts of the Unified Court System, I hereby order that effective 5:00 PM on March 16, 2020 the following rules be put into effect in the 8th Judicial District until rescinded.

As hereinafter used, "Assigned Judge" shall refer to the judge assigned to hear the case on and before March 16, 2020. "Designated Judge" shall refer to the judge assigned to hear the case pursuant to this Order. "Essential Staff" shall refer to chambers staff of Designated Judges or non-judicial staff as designated by the District Executive.

- No eviction orders shall be signed.
- No default judgments shall be granted.
- No foreclosure auctions shall be held.
- All Family Court and all County Court Judges are cross-assigned to the County and Family Courts in all counties of the District; and shall be designated Youth Part Judges.
- All Court proceedings will occur in the locations described in Attachment A and presided over by A "Designated Judge" unless otherwise approved by the Administrative Judge.
- Maximum occupancy of ALL courtrooms, waiting rooms and meeting rooms in Court Facilities shall be the lesser 30 people or ½ the posted room occupancy per code.
- After 5:00 PM on March 16, 2020 only Designated Judges and Essential Staff may report to the courthouse for work unless approved by the Administrative Judge.

## Supreme Civil

- All non-essential matters are administratively adjourned until a date on or after April 30, 2020 (to be determined by the Assigned or Designated Judge - Essential Staff shall be responsible for notifying attorneys or pro-se litigants of the adjourned dates).
- All civil jury trials that have commenced may continue.
- "Essential matters" is defined as urgent applications or cases in the following categories: Article 81 cases, Mental Hygiene Law applications (Retention Cases/Medication Over Objection cases), Orders to Show Cause, Extreme Risk Protection Orders, Applications for Orders of Protection, Isolation and Quarantine matters and any other matter determined to be essential by the Assigned Justice or Designated Justice in consultation with the Administrative Judge.
- All Temporary Orders of Protection and Temporary Extreme Risk Protection Orders shall be extended 90 days by the assigned or designated Supreme Court Justice, unless further emergency application is made.

## Superior Court Criminal Cases

- Any trial in which jeopardy has attached will continue.
- All non-essential matters are administratively adjourned until a date on or after April 30, 2020 (for defendants not in custody) or on or after April 15, 2020 (for defendants in custody). The adjourned date shall be determined by the Assigned or Designated Judge - Essential Staff shall be responsible for notifying attorneys or pro-se litigants of the adjourned date.
- "Essential Matters" includes arraignments, new and/or extended Orders of Protection and any other matters determined to be essential by the Assigned Judge or Designated Judge in consultation with the Administrative Judge.
- Currently seated Grand Juries may continue until the expiration of their terms. Thereafter, a District Attorney may make application to the Administrative Judge for the impaneling of a new Grand Jury.
- The Accessible Magistrate procedure (for Adolescent Offenders) currently in place shall continue.

## Treatment Courts/OIC

- Treatment courts and Opioid Intervention Courts will be subject to further order.

Exhbi,TA

## Family Court

- All non-essential matters are administratively adjourned until a date on or after April 30, 2020 (to be determined by the Assigned or Designated Judge - Essential Staff shall be responsible for notifying attorneys or pro-se litigants of the adjourned dates).
- "Essential matters" shall be defined as urgent Juvenile Delinquency proceedings, Child Protective Proceedings where there is an imminent risk of harm to a child, Family Offense matters, emergency support matters, and any other matters determined to be essential after application by the designated judge to the Supervising Judge. The Supervising Judge, in consultation with the Administrative Judge, shall permit a matter to proceed if warranted.
- All Temporary Orders of Protection shall be extended 90 days, by a designated Family Court Judge, unless further emergency application is made.

## Surrogate's Court

- All non-essential matters are administratively adjourned until a date on or after April 30, 2020 (to be determined by the assigned or designated judge - Essential Staff shall be responsible for notifying attorneys or pro-se litigants of the adjourned dates).
- Essential matters shall include urgent guardianships, urgent adoptions, and other essential matters as determined by the Surrogate in consultation with the Administrative Judge.

## City Court

- All non-essential matters are administratively adjourned until a date on or after April 30, 2020 (for defendants not in custody and for civil matters) or on or after April 15, 2020 (for defendants in custody). The adjourned date shall be determined by the Assigned or Designated Judge - Essential Staff shall be responsible for notifying attorneys or pro-se litigants of the adjourned date.
- Staff designated to work shall be responsible for notifying attorneys or pro-se litigants/defendants of the adjourned dates.
- Essential matters shall include arraignments, applications for Orders of Protection, and any matter deemed to be essential by the Supervising Judge in consultation with the Administrative Judge.

## Town and Village Courts

- All non-essential matters are administratively adjourned until a date on or after April 30, 2020 (for defendants not in custody and for civil matters) or on or after April 15, 2020 (for defendants in custody). The adjourned date shall be determined by the Assigned or Designated Judge - Town and Village staff shall be responsible for notifying attorneys or pro-se litigants/defendants of the adjourned dates.
- Essential Town and Village Matters include arraignments, applications for Orders of Protection and any matter deemed to be essential by the Supervising Judge in consultation with the Administrative Judge.
- Immediate Arraignments that occur during the day shall occur at the County Courthouse by the designated County Court Judge.
- After hours arraignments shall be heard by the CAP judge in counties with a CAP court.
- For all non- CAP counties after hours arraignments shall be heard by current procedure according to existing law.

Dated: Buffalo, New York

March 16, 2020

Hon. Paula L. Feroleto
Administrative Judge Eighth Judicial District

Distribution:
HON. VITO CARUO

| | |
|---|---|
| Seneca County | Seneca County Courthouse, Waterloo |
| | Seneca CAP |
| Steuben County | Steuben County Courthouse, Bath |
| | Steuben CAP |
| Corning City Court | Steuben County Courthouse, Bath |
| | Steuben CAP |
| Hornell City Court | Steuben County Courthouse, Bath |
| | Steuben CAP |
| Wayne County | Wayne County Courthouse, Lyons |
| | Wayne CAP |
| Yates County | Yates County Courthouse, Penn Yan |
| | Yates CAP |

## 8th District

| | |
|---|---|
| Allegany County | Allegany County Courthouse, Belmont |
| Cattaraugus County | Cattaraugus County Courthouse, Little Valley |
| Olean City Court | Cattaraugus County Courthouse, Little Valley |
| Salamanca City Court | Cattaraugus County Courthouse, Little Valley |
| Chautauqua County | Chautauqua County Courthouse, Mayville |
| Dunkirk City Court | Chautauqua County Courthouse, Mayville |
| Jamestown City Court | Chautauqua County Courthouse, Mayville |
| Erie County | Erie County Courthouse, Buffalo |
| Buffalo City Court | Erie County Courthouse, Buffalo |
| Lackawanna City Court | Erie County Courthouse, Buffalo |
| Tonawanda City Court | Erie County Courthouse, Buffalo |
| Genesee County | Genesee County Court Facility, Batavia |
| Batavia City Court | Genesee County Court Facility, Batavia |
| Niagara County | Niagara County Courthouse, Lockport |
| Lockport City Court | Niagara County Courthouse, Lockport |
| Niagara Falls City Court | Niagara County Courthouse, Lockport |
| North Tonawanda City Court | Niagara County Courthouse, Lockport |
| Orleans County | Orleans County Courthouse, Albion |
| Wyoming County | Wyoming County Courthouse, Warsaw |

## 9th District

Exhibit A

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re

    Shane Christopher Buczek

           Debtor.

Case No. 1-19-11441-CLB
Chapter 13

AFFIDAVIT OF SERVICE
BY MAIL

STATE OF NEW YORK )
COUNTY OF MONROE )

_Angelina J. Micciche_, being duly sworn, deposes and says:

I am not a party to the action, am over 18 years of age, and am employed in Rochester, New York.

    On May _6th_, 2020, I served the within Objection by mailing the same in a sealed envelope, with postage prepaid thereon, in a post office or depository of the United States Postal Service within the State of New York, addressed to the last known address of the addressee (s) as indicated below.

Shane Christopher Buczek
435 Creekside Drive
Suite 200
Amherst, NY 14228

Julie Philippi
Chapter 13 Trustee
110 Pearl Street, 6th Floor
Ste 6th Floor
Buffalo, NY 14202-4111

Office of the United States Trustee
Joseph W. Allen, Esq.
Olympic Towers
300 Pearl Street, Suite 401
Buffalo, NY 14202

_Angelina J Micciche_

Sworn to before me this _6th_ day
of May, 2020.

_[signature]_
Notary Public

LESLIE A. WIGHT
Notary Public, State of New York
Qualified in Monroe County
No. 01WI6106604
Commission Expires March 8, 20_24_

# Exhibit (F)

Thank you for shipping with the United States Postal Service!
Check the status of your shipment on the USPS Tracking® page at usps.com

UNITED STATES
POSTAL SERVICE®

**Instructions**

1. Each Click-N-Ship® label is unique. Labels are to be used as printed and used only once. DO NOT PHOTO COPY OR ALTER LABEL.

2. Place your label so it does not wrap around the edge of the package.

3. Adhere your label to the package. A self-adhesive label is recommended. If tape or glue is used, DO NOT TAPE OVER BARCODE. Be sure all edges are secure.

4. To mail your package with PC Postage®, you may schedule a Package Pickup online, hand to your letter carrier, take to a Post Office™, or drop in a USPS collection box.

5. Mail your package on the "Ship Date" you selected when creating this label.

---

**Click-N-Ship® Label Record**

**Signature Confirmation™**

**9410 8036 9930 0114 9401 64**

| | | |
|---|---|---|
| Trans. #: | 47604939 | |
| Priority Mail® Postage: | | $7.35 |
| Signature Confirmation: | | $2.60 |
| | | (Electronic Rate) |
| Print Date: | 11/01/2019 | |
| Ship Date: | 11/01/2019 | |
| Expected Delivery Date: | 11/04/2019 | |
| **Total:** | | **$9.95** |

From:  SHANE C BUCZEK
435 CREEKSIDE DR STE 200
EAST
AMHERST NY 14228-2135

To:  KEY BANK, N.A.
4910 TIEDEMAN RD
BROOKLYN OH 44144-2338

* Retail Pricing Priority Mail rates apply. There is no fee for USPS Tracking® service on Priority Mail service with use of this electronic rate shipping label. Refunds for unused postage paid labels can be requested online 30 days from the print date.

---

Cut on dotted line.

✂ - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -



UNITED STATES
POSTAL SERVICE®

**Click-N-Ship®**

usps.com
**$9.95**
US POSTAGE
Flat Rate Env
Signature
Confirmation
11/01/2019

9410 8036 9930 0114 9401 64  0099 5000 0074 4144

Mailed from 85364   062S000001307

Expected Delivery Date: 11/04/19

**0006**

**PRIORITY MAIL 2-DAY™**

SHANE C BUCZEK
435 CREEKSIDE DR STE 200
EAST
AMHERST NY 14228-2135

**C009**

SIGNATURE REQUIRED

SHIP
TO:

KEY BANK, N.A.
4910 TIEDEMAN RD
**BROOKLYN OH 44144-2338**

**USPS SIGNATURE TRACKING #**

**9410 8036 9930 0114 9401 64**

Electronic Rate Approved #038555749

# Exhibit (G)



STATE OF NEW YORK
DEPARTMENT OF STATE
ONE COMMERCE PLAZA, 99 WASHINGTON AVENUE
ALBANY, NY 12231-0001

ANDREW M. CUOMO
GOVERNOR

ROSSANA ROSADO
SECRETARY OF STATE

# FILING ACKNOWLEDGMENT
May 4, 2020

SHANE: CHRISTOPHER
435 CREEKSIDE DRIVE SUITE 200 EAST
AMHERST NY 14228

Attached is the acknowledgment copy of your recently submitted filing. This filing consists of a total of 47 pages; however, only the first page of the filed document is returned as part of this acknowledgment. This document has been filed with the New York State Department of State, Uniform Commercial Code Division.

The Financing Statement Amendment has been assigned Filing Number:202004290224943 , Filing Date:04/29/2020 . This document has been appended to initial Financing Statement Filing Number: 201312200706329, which was filed on 12/20/2013. This action added the following as a Secured Party of Record on this Financing Statement.

**Secured Party's Name & Address**
SHANE CHRISTOPHER BUCZEK
435 CREEKSIDE DRIVE SUITE 200 EAST
AMHERST NY 14228

The initial Financing Statement will lapse on 01/01/9999 unless continued.

If you have any concerns regarding the way this document is recorded, please contact one of our Customer Service Representatives at (518) 473-2492, or respond in writing to the UCC Data Processing Unit at the address indicated above.

Sincerely,

Uniform Commercial Code Division
Data Processing Unit

REF #: 008337

████████
████████
████████
████████

## UCC FINANCING STATEMENT AMENDMENT

008337       2020 APR 29  AM 9: 00

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

**Shane Christopher : Buczek**

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

> **Shane: Christopher**
> **435 Creekside Drive Suite 200 East**
> **Amherst New York [14228]**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
201312200706329

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☑ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.   ☐ DELETE name: Give record name to be deleted in item 6a or 6b.   ☑ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|  | Shane | Christopher | |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| Buczek | Shane | Christopher | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 435 Creekside Drive Suite 200 East | Amherst | NY | [14228] | USA |

7d. SEE INSTRUCTIONS  Not Applicable  ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☑ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

Nationstar Mortgage LLC d/b/a Mr. Cooper AND KeyBank N.A."Jointly and severely of both parties: cash, bank accounts, assets, judgments, and securities held jointly or severely in the names of either or both parties up to $8,520,000.00 and additional interest of 6% per annum from November 4, 2019 until paid; payable to the above listed creditor, from the Arbitration Award of November 4, 2019 which is reflected in the Abstract of Award." $ 51,120 @ 6% per year! See Abstract of Arbitration Award By Dalwickman Panel 201911-4950-KEY BANK N .A. EIN 346514544 4910 TIEDEMAN ROAD BROOKLYN OH 44114 :(This Lien is not dischargeable for 100 years and cannot be extinguished due to Claimant's death or by Claimant's heirs, assigns, or executors.) See UCC Filing 202003020129068 and ERIE COUNTY CLERK'S OFFICE Book Type: V Book:107 Page: 3515This is filed under necessity to add an additional LIEN Award in FAVOR of Shane Christopher Buczek owner to 7335 Derby Road Derby New York SBL 206.04-2-22. See Attachment (1)

9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| Buczek | Shane- | Christopher: | |

10. OPTIONAL FILER REFERENCE DATA
PARCEL NO: SBL 206.04-2-22 7335 Derby Road Derby New York Abstract of Arbitration Award ($8,520,000.00)Lien

FILING OFFICE COPY — UCC FINANCING S

## FILING NUMBER: 202004290224943

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

In re:

Shane Christopher Buczek
      Debtor(s)

Case No. **1-19-11441- CLB**
Chapter 13

## CERTIFICATE OF SERVICE

7019 1640 0000 8514 6514

I, Shane Christopher Buczek certify that on, May 18th ,2020, I served true correct copies of:

**NOTICE OF MOTION and MOTION SEEKING SANCTIONS AGAINST Dave P. Case the LAW FIRMOF Relin,Goldstein & Crane LLP 28 East Main St. Ste 1800 Rochester, New York PURSUANT Federal Rules of Civil Procedure Rule 11 (b) and (c) (2) Federal Rules Civil Procedure Rule 5 BY CERTIFIED MAIL 7019 1640 0000 8514 6514 PS Form 3811 Temporary date for hearing is set for July 27th 2020 at 11:30 AM.**

Sent to Mark K. Broyles Dave P. Case and Craig K. Beideman Non-Party- disinterest Party Fein, Such & Crane LLP 28 East Main Street Suite 1800 Rochester, New York 14614 by Served by US mail in a postage paid envelope placed in the care and custody of the United States Postal Service by CERTIFIED MAIL:

I certify under penalty of perjury that the above documents were sent using the by CERTIFIED MAIL 7019 1640 0000 8514 6514 PS Form 3811

Dated: May 18, 2020

                                      _Shane Christopher Buczek_

                                        Shane Christopher Buczek

**ALERT: DUE TO LIMITED TRANSPORTATION AVAILABILITY AS A RESULT OF NATIONWI...**

# USPS Tracking®

**FAQs >**

## Track Another Package  +

### Track Packages
### Anytime, Anywhere

Get the free Informed Delivery® feature to receive automated notifications on your packages

**Learn More**

**(https://reg.usps.com**
/xsell?app=UspsToc s&ref=homepageBanner&appURL=https%3A%2F%2Finformeddelivery.usps.com/box/pages/intro
/start.action)

**Tracking Number:** 9507106581210140160742

Remove ✕

Feedback

Your item was delivered at 10:15 am on May 22, 2020 in ROCHESTER, NY 14614.

## ⊘ **Delivered**

May 22, 2020 at 10:15 am
Delivered
ROCHESTER, NY 14614

---

### Text & Email Updates                                                        ∧

**Select what types of updates you'd like to receive and how. Send me a notification for:**

**Text**  **Email**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

In re:

                                   Case No. **1-19-11441- CLB**
                                   Chapter 13

Shane Christopher Buczek
        Debtor(s)

## SECOND CERTIFICATE OF SERVICE

I, Shane Christopher Buczek certify that on, June 2nd ,2020, I served true correct copies of:

**NOTICE OF MOTION and MOTION SEEKING SANCTIONS AGAINST Dave P. Case the LAW FIRM OF Relin,Goldstein & Crane LLP 28 East Main St. Ste 1800 Rochester, New York PURSUANT Federal Rules of Civil Procedure Rule 11 (b) and (c) (2) Federal Rules Civil Procedure Rule 5 BY CERTIFIED MAIL 7019 1640 0000 8514 6514 PS Form 3811 Temporary date for hearing is set for July 27th 2020 at 11:30 AM.**

Sent to Mark K. Broyles Dave P. Case and Craig K. Beideman Non-Party- disinterest Party Fein, Such & Crane LLP 28 East Main Street Suite 1800 Rochester, New York 14614 by Served by US mail in a postage paid envelope placed in the care and custody of the United States Postal Service by <u>CERTIFIED MAIL</u>: **7019 1640 0000 8514 6514 PS Form 3811 Sent May 19,2020**

Chapter 13 Trustee
**Julie Philippi**
110 Pearl St.
Ste 6th Floor
Buffalo, NY 14202
716-854-5636
ecf@buffalo13.com

Office of the United States Trustee
**Joseph W. Allen, Esq**
Olympic Towers
300 Pearl Street, Suite 401
Buffalo, New York 14202

**No Power of Attorney**
Shapiro, DiCaro & Barak, LLC
175 Mile Crossing Boulevard
Rochester, NY 14624
ROCbkcourt@logs.com
(Notice of **disinterest Party**)

**Beth Elaine Mooney**
Chairman and Chief Executive Officer, KeyCorp
127 Public Square,
Cleveland, Ohio 44114
Phone (216) 689-4107
Phone (216) 689-6300
Fax (216) 689-4121

**Internal Revenue Service**
**Whistleblower Office - ICE**
**1973 N. Rulon White Blvd.**
**M/S 4110**
**Ogden, UT 84404**

I certify under penalty of perjury that the above documents were sent using the by CERTIFIED
MAIL and Served by US mail in a postage paid envelope placed in the care and custody of the
United States Postal Service on June 2nd ,2020

Dated: June 2nd, 2020

Shane Christopher Buczek

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NEW YORK

In re:

CASE NO. 1-19-11441- CLB

Shane Christopher Buczek

(Filed 07/19/2019)

ORDER

The Court, having considered the debtors MOTION SEEKING SANCTIONS AGAINST Dave P. Case the LAW FIRM OF Relin, Goldstein & Crane LLP PURSUANT Federal Rules of Civil Procedure Rule 11 (b) and (c) (2) Federal Rules Civil Procedure Rule 5 BY CERTIFIED MAIL 7019 1640 0000 8514 6514 PS Form 3811 filed by Shane Christopher Buczek, hereby grants the motion. Where the Debtor has demonstrated good cause in this matter.

GRANTED

So, ordered.

**Dated:** _____

**BY THE COURT**

Honorable Judge Carl L. Bucki
United States Bankruptcy Court
For the Western District of New York